**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **ERICSSON INC. AND TELEFONAKTIEBOLAGET LM ERICSSON,**<br><br>     **Plaintiffs,**<br><br>**v.**<br><br>**SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., AND SAMSUNG RESEARCH AMERICA,**<br><br>     **Defendants.** | **Civil Action No.  2:20-cv-380** |

## ORIGINAL COMPLAINT

Plaintiffs Ericsson Inc. and Telefonaktiebolaget LM Ericsson ("Ericsson" is used herein to collectively refer to Telefonaktiebolaget LM Ericsson and/or Ericsson Inc.) file this Complaint against Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Research America ("Samsung" is used herein to collectively refer to Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and/or Samsung Research America) and hereby allege as follows:

## NATURE OF ACTION

1.     For more than four decades, Ericsson has pioneered the development of the modern cellular network. Ericsson develops infrastructure equipment that makes up the backbone of modern networks; that is, the base stations and cell tower equipment that mobile phones communicate with. Major mobile network operators all over the world buy solutions and/or services from Ericsson, and Ericsson manages networks that serve more than one billion

subscribers globally. Ericsson's equipment is found in more than one hundred and eighty countries.

2.     Ericsson is widely viewed as one of the leading innovators in the field of cellular communications. Due to the work of more than twenty-five thousand Ericsson research and development (R&D) employees, Ericsson's inventions are a valuable part of the fundamental technology that connects phones, smartphones, and other mobile devices seamlessly using cellular networks worldwide and provides increased performance and new features for the benefit of consumers. As a result of its extensive research and development efforts, Ericsson has been awarded more than fifty-four thousand patents worldwide. Many of Ericsson's patents are essential to the 2G (GSM, GPRS, and EDGE), 3G (UMTS/WCDMA and HSPA), 4G (LTE, LTE-Advanced, and LTE-Advanced Pro) and/or 5G (NR, New Radio) telecommunications standards, which are used by Samsung's products.  Ericsson's infrastructure products likewise utilize these standards.

3.     Ericsson has voluntarily and publicly committed that it is prepared to grant licenses under its portfolio of patents that are essential to practice the 2G, 3G, 4G, and/or 5G standards (Essential Patents) on fair, reasonable, and non-discriminatory (FRAND) terms. Ericsson's FRAND commitment is set forth in its intellectual property right (IPR) licensing declarations to the European Telecommunications Standards Institute (ETSI) in accordance with ETSI's IPR Policy. Ericsson's commitment is subject to reciprocity—Ericsson can, and does, insist on a reciprocal license to a potential licensee's Essential Patents to cover Ericsson's cellular equipment.  Consistent with its FRAND commitment, Ericsson has widely licensed its portfolio of Essential Patents in over one hundred agreements with members of the telecommunications industry who have agreed to pay royalties to Ericsson for a global portfolio

license. Ericsson reinvests much of the licensing revenue it receives under these global agreements into inventing future generations of standardized telecommunication technologies, spending nearly five billion dollars annually on research and development.

4.      The popularity and proliferation of cellular smartphones, tablets, watches, and other connected devices is based on the development of the 2G, 3G, and especially the 4G, and now 5G, communication standards. Without 4G and 5G technology and Ericsson's inventions incorporated therein, smartphones and other mobile devices would not be able to provide the constant on-the-go access to video, streaming media, and gaming that consumers expect today. Furthermore, the widespread adoption of large screen smartphones, tablets, and corresponding applications are dependent on the performance that 4G and 5G technology—and Ericsson's inventions—provide.

5.      Samsung is the largest smartphone manufacturer in the world, and also manufactures cellular network infrastructure equipment. Samsung is also involved in standardization, and through its own research and development efforts, has a portfolio of patents that it contends are essential to the 2G, 3G, 4G, and 5G communications standards.  Samsung, like Ericsson, has committed that it is prepared to grant licenses under its Essential Patents on FRAND terms. Samsung's FRAND commitment is set forth in its IPR licensing declarations to ETSI in accordance with ETSI's IPR Policy.

6.      Samsung and Ericsson have in the past executed global cross-licenses, covering both parties' patents related to the 2G, 3G, and/or 4G cellular standards.  Most recently, Samsung and Ericsson executed a multi-year agreement in January 2014. In February 2019, in advance of the expiration of the existing cross-license, Ericsson took steps to initiate negotiations with Samsung towards a new license.

7.      To renew the existing license upon expiration, Ericsson proposed a global cross-license, with Samsung taking a license to Ericsson's Essential Patents and with Ericsson taking a license to Samsung's Essential Patents. Both Samsung and Ericsson understood that Samsung would owe Ericsson a substantial balancing payment as part of the cross-license. Ericsson made a cross-license offer under which Samsung would make a balancing payment consistent with the value of Ericsson's Essential Patents as compared to Samsung's. All of the terms of Ericsson's offer, including the balancing payment component, were consistent with Ericsson's FRAND obligation. Samsung did not accept Ericsson's offer, and provided a counteroffer that evidenced Samsung was not negotiating in good faith towards a cross-license on FRAND terms. Instead, Samsung insisted it would only be willing to a cross-license if Ericsson agreed to accept a royalty for Ericsson's Essential Patents significantly below FRAND rates. By insisting Ericsson accept a balancing payment in a global cross-license substantially less than the value of Ericsson's Essential Patents, and less than FRAND, Samsung violated its FRAND commitment by effectively depriving Ericsson of its right to a reciprocal license to Samsung's Essential Patents on FRAND terms. At this point, it is clear that Samsung is not willing or committed to negotiating a global cross-license on FRAND terms and conditions.

8.      Samsung's FRAND commitment is a contract between Samsung and ETSI, and Ericsson has the right to enforce it as a third-party beneficiary. In addition, when Samsung commenced negotiations with Ericsson, it was obligated under French law, which governs the FRAND commitment, to negotiate in good faith with Ericsson, yet Samsung has failed to do so. Ericsson has filed this suit against Samsung to remedy these breaches.  Ericsson also seeks a declaration that it has complied with its FRAND commitment, and that Samsung has not.

## PARTIES

9.      Ericsson Inc. is a Delaware corporation with its principal place of business at 6300 Legacy Drive, Plano, Texas 75024.

10.     Plaintiff Telefonaktiebolaget LM Ericsson ("LME") is a corporation organized under the laws of the Kingdom of Sweden with its principal place of business at Torshamnsgatan 21, Kista, 164 83, Stockholm, Sweden.

11.     Defendant Samsung Electronics Co., Ltd. ("SEC") is a Korean company with its principal place of business in Suwon, South Korea. SEC has an "Information Technology & Mobile Communications" division that is responsible for the design, manufacture, and sale of mobile devices, such as smartphones that operate on cellular networks around the world and in the United States.

12.     Defendant Samsung Electronics America, Inc. ("SEA") is a New York corporation with its principal place of business in Ridgefield Park, New Jersey, and it is a wholly-owned subsidiary of SEC. SEA imports into the United States and sells in the United States, including in this District, smartphones that operate on cellular networks in the United States. SEA imports into the United States and sells in the United States, including in this District, cellular network infrastructure equipment that operates on cellular networks in the United States. SEA is also responsible for research and development related to the cellular standards, smartphones, cellular network infrastructure equipment, and other mobile devices, and has many employees involved in standardization.

13.     Defendant Samsung Research America ("SRA") is a California corporation with its principal place of business in Mountain View, California, and is a wholly-owned subsidiary of SEA. SRA is also responsible for research and development related to the cellular standards,

smartphones, cellular network infrastructure equipment, and other mobile devices, and has many employees involved in standardization.

14.     SEA and SRA maintain an office in this District at 6625 Excellence Way, Plano, Texas 75023, with more than 1,000 employees. Defendants SEA and SRA employ engineers— including in this District—that attend standardization meetings and work on research and development related to the cellular standards, smartphones, and other mobile devices. These engineers are the inventors on a variety of patents eventually assigned to Defendant SEC. SEC has included these patents in declarations to ETSI that form the basis of SEC's FRAND commitment, contractually committing that SEC is prepared to grant licenses on FRAND terms and conditions to the extent such patents are and remain essential to the 2G, 3G, 4G, and/or 5G standards.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332 and 1338(a), and 1367.

16.     The amount in controversy exceeds $75,000.

17.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

18.     This Court has personal jurisdiction over Defendants Samsung. Samsung has continuous and systematic business contacts with the State of Texas. Samsung, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), has negotiated with Ericsson in this District, and also conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising (including the provision of an interactive web page) its products and/or services in the State of Texas and the Eastern District of Texas. SEA and SRA, SEC's wholly-owned subsidiaries, maintain an office

in Plano, Texas, and are responsible for (1) importing and selling smartphones, tablets, other mobile devices, and cellular network infrastructure equipment that operate on cellular networks in the United States, (2) research and development related to the cellular standards, smartphones, cellular network infrastructure equipment, and other mobile devices, and (3) patent development activities related to such research and development. SEC, SEA, and SRA regularly do business or solicit business, engage in other persistent courses of conduct, and/or derive substantial revenue from products and/or services provided to individuals in the State of Texas.

19.     SEC, SEA, and SRA, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), have purposefully and voluntarily placed one or more products and/or services in the stream of commerce related to this dispute with the intention and expectation that they will be purchased and used by consumers in the Eastern District of Texas. These products and/or services have been and continue to be purchased and used by consumers in the Eastern District of Texas.

20.     Ericsson Inc. is a corporation with its principal place of business in the Eastern District of Texas. Ericsson Inc. is a wholly-owned subsidiary of LME, and is responsible, among other things, for importing and selling cellular network infrastructure equipment to cellular carriers in the United States. Ericsson Inc. requires a license on FRAND terms to the Essential Patents of Samsung.

21.     Samsung has purposefully directed its licensing activities into the Eastern District of Texas as to its portfolio of Essential Patents, as well as for Ericsson's portfolio of Essential Patents. Samsung employees have communicated, met, and engaged in patent licensing negotiations with Ericsson employees living and working in this District.

## FACTUAL BACKGROUND

**A.      Ericsson's Investment in Telecommunications**

22.      Telefonaktiebolaget LM Ericsson was founded in 1876, and Ericsson Inc. is a wholly owned subsidiary of Telefonaktiebolaget LM Ericsson based in Plano, Texas.  Ericsson supplies the cellular network infrastructure equipment used to build mobile networks across the world, serving more than one billion mobile subscribers in over 180 countries.  In the United States, Ericsson's equipment is used by individuals utilizing AT&T, Verizon, Sprint, T-Mobile, and other cellular networks.

23.      Ericsson has a long history of innovation in the telecommunication industry and in the creation of the cellular standards.  In addition to supplying equipment for 2G, 3G, 4G, and 5G networks, Ericsson was also well-known for its mobile phone business—ending in 2012 with the divestment of the popular "Sony Ericsson" brand.  Years earlier, Ericsson coined the "smartphone" term when unveiling its GS88 handset in 1997 and showcased an early version of a tablet with its Cordless Web Screen in 2000.

24.      Ericsson prioritizes innovation and has invested $4-5 billion annually in research and development.  These research and development activities include participating in the development of the 2G, 3G, 4G, and 5G cellular standards over the last 30+ years.  Ericsson's engineers have attended hundreds of standardization meetings and made tens of thousands of technical contributions to the standards.

25.      Ericsson has been at the forefront of every step of cellular standardization: Ericsson launched 2G phones on the first 2G network in 1991, Ericsson made the first 3G call in 2001, and Ericsson built the first 4G network in 2009.  And Ericsson continues to be at the forefront:  Ericsson completed the first 5G trial system in Europe in 2016, and Ericsson's equipment has been deployed in 5G networks in the United States.

26.     Ericsson protects its investments in research and development with intellectual property.  Ericsson owns thousands of patents related to wireless telecommunication technology, and Ericsson continues to develop and secure intellectual property as it innovates in this industry. Because Ericsson chooses to voluntarily contribute many of its research and development innovations to the standard-setting process—through technical contributions in standardization meetings—Ericsson has a large number of patents essential to the cellular standards.  Industry members attending the standardization meetings, including Samsung, choose to adopt Ericsson's technology into the standard because Ericsson's technology is the best.

27.     Ericsson has committed that it is prepared to grant licenses to any patents essential to the 2G, 3G, 4G, and 5G standards on fair, reasonable, and non-discriminatory (FRAND) terms and conditions.  Knowing Ericsson's commitment to FRAND licensing, other makers of cellular devices and network equipment, including Samsung, continue to include Ericsson's technology in the 5G standard.

**B.     ETSI and 3GPP**

28.     The European Telecommunications Standards Institute (ETSI) is an independent, non-profit standard development organization (SDO) that produces globally accepted standards for the telecommunication industry. ETSI has more than 900 members from more than 60 countries across five continents, including Ericsson and Samsung. In addition to its own activities, ETSI is also one of seven SDOs that are organizational partners of the Third Generation Partnership Project (3GPP), which maintains and develops globally applicable technical specifications for the 2G (second generation, encompassing GSM, GPRS, as well as EDGE, which is considered 2.5G), 3G (third generation, encompassing WCDMA/UMTS and HSPA), 4G (fourth generation, encompassing LTE, LTE-Advanced, and LTE Advanced-Pro), and 5G (fifth generation, encompassing NR) mobile systems. Together, ETSI and its members

have developed open standards that ensure worldwide interoperability between networks, devices, and network operators.

29.     Patents play an important role in developing the telecommunication industry through standardization and licensing. Many SDO members, including Ericsson, own intellectual property rights (IPRs) related to technologies contributed to and standardized by SDOs. Thus, technical standards adopted by SDOs may implicate member or non-member IPRs such that a patent license is required from the IPR owner to implement the standard.

30.     ETSI has developed and promulgated an IPR Policy, which is a contract governed by French law. The ETSI IPR Policy is intended to strike a balance between the need for open standards on the one hand, and the rights of IPR owners on the other hand. ETSI requires its members to use reasonable endeavors to disclose patents that are essential to practice its standards or technical specifications. Clause 15.6 of the ETSI IPR Policy defines the term "ESSENTIAL" to mean that "it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR." Ericsson has fully complied with all aspects of the ETSI IPR Policy.

31.     The ETSI IPR Policy includes a form "IPR Information Statement and Licensing Declaration."  Ericsson owns patents that are essential to practice the 2G, 3G, 4G, and/or 5G standards ("Essential Patents"). Ericsson has declared to ETSI that it is prepared to grant licenses on FRAND terms and conditions under its Essential Patents. Ericsson has licensed the bulk of the industry under this commitment, previously including Samsung.  Ericsson has offered to continue to license Samsung, but Samsung has insisted on non-FRAND rates.

32.     Ericsson's commitment is subject to reciprocity, specifically, that it is prepared to grant licenses on FRAND terms and conditions under its Essential Patents subject to the "condition that those who seek licenses agree to reciprocate."  The ETSI IPR Policy explicitly provides in Clause 6.1 that "[t]he above [FRAND] undertaking may be made subject to the condition that those who seek licenses agree to reciprocate."  As a manufacturer of cellular infrastructure equipment, Ericsson typically negotiates cross-license agreements that provide Ericsson a reciprocal license to the other company's technology.  For example, Ericsson's previous licenses with Samsung were cross-licenses where Ericsson also received a cross-license to Samsung's Essential Patents.

33.     Like Ericsson, Samsung participates in standardization at ETSI and 3GPP. Engineers from SEA and SRA, for example, routinely attend 3GPP meetings, and also file patents related to cellular technology (which are eventually assigned to Defendant SEC). Samsung contends that it has a portfolio of Essential Patents, and Samsung has contractually committed to ETSI that it is likewise prepared to grant licenses under any such patents on FRAND terms and conditions. Ericsson is a third-party beneficiary to this contract and can enforce it.

## C.     Ericsson and Samsung's Prior Licenses

34.     Samsung designs, manufactures, and markets a portfolio of mobile devices, including in the United States and this District, that comply with the 2G, 3G, 4G, and 5G standards and utilize Ericsson's Essential Patents. Samsung also designs, manufactures, and markets cellular network infrastructure equipment, including in the United States and this District, that complies with the 2G, 3G, 4G, and 5G standards and utilizes Ericsson's Essential Patents.

35.     Ericsson designs, manufactures, and markets infrastructure equipment, including in the United States and this District, that complies with the 2G, 3G, 4G, and 5G standards and utilizes Samsung Essential Patents.

36.     The parties have signed several cross-license agreements covering their respective patents, including most recently a multi-year agreement in 2014.

**D.     The Parties' Negotiations**

37.      Ericsson reached out to Samsung in February 2019 to begin negotiations regarding a new cross-license, as is Ericsson's typical practice when an existing license is expiring. Given the lengthy negotiations (and litigation) that preceded execution of the 2014 license, Ericsson sought to start negotiations early. Cross-license negotiations of this magnitude typically involve both technical discussions—to evaluate and challenge the strength of the other party's patents—and business discussions—to negotiate the terms of the agreement, informed by the feedback from the technical discussions.

38.     The parties agreed to the objective to conclude negotiations by the end of this year and began technical discussions in the spring of 2020. The technical discussions covered both parties' portfolios of Essential Patents and spanned several meetings.

39.     Then, Ericsson provided a presentation and offer in a meeting on July 20, 2020. Ericsson's proposal covered a global cross-license to both parties' Essential Patents, covering— along with patents around the world—the U.S. patents held by the parties to which their respective U.S. entities potentially require licenses. This cross-license proposal contained a balancing payment from Samsung to Ericsson, reflecting the parties' relative sales and the value of Ericsson's Essential Patents as compared to Samsung's.

40.     All the terms of Ericsson's offer, including the balancing payment, were (and are) consistent with Ericsson's FRAND commitment.

41.     Samsung rejected Ericsson's FRAND offer, and did not provide a counteroffer in response to Ericsson's offer until September 22, 2020. Samsung's eventual counteroffer was unreasonably low. Samsung's counteroffer evidenced that Samsung was not negotiating in good faith and not willing to enter into a cross-license on FRAND terms and, rather, would only be willing to pay Ericsson a rate for Ericsson's Essential Patents that was significantly below FRAND. Samsung's counteroffer and rejection of Ericsson's FRAND offer are inconsistent with Samsung's FRAND commitment.

42.     Sensing that the parties were reaching impasse in the business negotiations, Ericsson sent Samsung an arbitration offer on September 27, 2020. This arbitration offer provided the option to resolve the global dispute between the parties via a neutral, third-party determination of the appropriate FRAND rate for a global cross-license. As is typical with such offers, it included a 45-day window for Samsung to accept the offer. In parallel, Ericsson continued to attempt to engage in negotiations with Samsung in addition to providing the arbitration offer.

43.     Samsung did not respond to Ericsson's arbitration offer until November 10, 2020—44 days after it was made. Samsung did not accept Ericsson's arbitration offer, despite the impasse the parties seemed to have reached on royalty terms.

44.     Negotiations have continued, but no progress has been made. It has become clear that Samsung had no intention of negotiating in good faith towards concluding an agreement with Ericsson on FRAND terms and conditions. Instead, Samsung has insisted on a below-

FRAND royalty payment in a cross-license and, by doing so, Samsung has deprived Ericsson of its right to a reciprocal global license to Samsung's Essential Patents on FRAND terms.

## COUNT I: BREACH OF CONTRACT

45.     Ericsson incorporates by reference the preceding paragraphs as though fully set forth herein.

46.     Samsung designs, manufactures, and markets products that comply with the 2G, 3G, 4G, and 5G standards. Samsung contends it owns Essential Patents.

47.     Ericsson designs, manufactures, and markets products that comply with the 2G, 3G, 4G, and 5G standards. Ericsson also owns Essential Patents.

48.     Samsung, as the owner of patents it contends are essential, and remain essential, to ETSI standards, has contractually committed to ETSI to be prepared to grant licenses to any such patents on FRAND terms and conditions to third parties, such as Ericsson, who implement equipment compliant with the standards.

49.     Ericsson, as the owner of patents it contends are essential, and remain essential, to ETSI standards, has likewise contractually committed to ETSI to be prepared to grant licenses to any such patents on FRAND terms and conditions to third parties, such as Samsung, who implement equipment compliant with the standards, subject to reciprocity.

50.     Ericsson is an intended third-party beneficiary of Samsung's contract with ETSI. Likewise, Samsung is an intended third-party beneficiary of Ericsson's contract with ETSI.

51.     Samsung is obligated to offer a license to its essential patents consistent with the ETSI IPR Policy and its contractual declarations, including that such license be on FRAND terms and conditions. Samsung has breached its contractual commitment, as set forth in Samsung's IPR licensing declarations to ETSI and the ETSI IPR Policy.

52.     Since at least late 2019, representatives from Ericsson and Samsung have been engaged in negotiations regarding a cross-license to each party's Essential Patents.

53.     Ericsson made an offer to license its Essential Patents to Samsung on FRAND terms and conditions. Consistent with the parties' FRAND commitments, Ericsson's offer was for a global cross-license that took into account both parties' Essential Patents and standard-compliant products and required Samsung to make a FRAND-compliant balancing royalty payment to Ericsson.

54.     Samsung rejected Ericsson's offer for a cross-license and instead insisted on an unreasonably low, non-FRAND rate for the cross-license. In doing so, Samsung violated its FRAND commitment by effectively depriving Ericsson of its right as a third-party beneficiary to a license to Samsung's Essential Patents on FRAND terms.

55.     Samsung's positions are inconsistent with its contractual commitment to ETSI, as set forth in Samsung's IPR licensing declarations to ETSI and the ETSI IPR Policy. Ericsson is a third-party beneficiary of that contract, which Samsung has breached in its negotiations with Ericsson.

56.     This breach has caused harm to Ericsson. Samsung's refusal to offer a cross-license on FRAND terms and conditions has caused Ericsson to expend resources in futile negotiations, deprived Ericsson of a FRAND cross-license, and threatens Ericsson with a gap in license coverage.

57.     Samsung's breach has caused Ericsson to suffer actual damages, such as Ericsson's costs and expenses in pursuing futile negotiations with Samsung in an amount to be determined at trial. In addition, Ericsson is further entitled to obtain specific performance under French law.

58.     Ericsson has suffered and will continue to suffer irreparable injury by reason of the acts, practices, and conduct of Samsung alleged above until and unless the Court enjoins such acts, practices, and conduct.

## COUNT II: BREACH OF OBLIGATION TO NEGOTIATE IN GOOD FAITH

59.     Ericsson incorporates by reference the preceding paragraphs as though fully set forth herein.

60.     French law governs the ETSI FRAND commitment, and under French law, once Samsung commenced negotiations with Ericsson for a cross-license, Samsung was obligated to negotiate in good faith. Samsung has failed to negotiate in good faith with Ericsson and thus breached its obligation. For example, rather than engage in good-faith negotiations, Samsung did not seriously engage in negotiations with Ericsson with the aim of concluding an agreement, and instead made an unreasonably low cross-license counteroffer, effectively depriving Ericsson of a license to Samsung's Essential Patents on FRAND terms.

61.     Samsung's failure to negotiate in good faith constitutes a breach of its obligations to Ericsson.

62.     There is a dispute between Ericsson and Samsung concerning whether Samsung has complied with its obligation to negotiate in good faith, and this controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

63.     Ericsson is entitled to a declaratory judgment that Samsung has not complied with its obligation to act in good faith during its negotiations with Ericsson in regard to FRAND terms for a cross-license to the parties' Essential Patents.

64.     As a result of Samsung's breach of its duty to negotiate in good faith, Ericsson has been injured in its business or property, including Ericsson's cost and expenses in pursuing futile negotiations with Samsung in an amount to be determined at trial.

## COUNT III: DECLARATORY JUDGMENT THAT ERICSSON HAS NOT BREACHED ITS FRAND COMMITMENT

65.     Ericsson incorporates by reference the preceding paragraphs as though fully set forth herein.

66.     Ericsson has fully complied with the ETSI IPR Policy, its FRAND obligations and all other applicable laws by, among other things, attempting to negotiate in good faith with Samsung and offering Samsung a cross-license to Ericsson's Essential Patents on FRAND terms and conditions.

67.     A dispute exists between Ericsson and Samsung concerning whether Ericsson's offer to Samsung for a global cross-license to the parties' Essential Patents violated Ericsson's commitment that it is prepared to grant licenses under its Essential Patents on terms and conditions consistent with Ericsson's IPR licensing declarations to ETSI and ETSI's IPR Policy. Samsung rejected Ericsson's offer. There is a case or controversy of sufficient immediacy, reality, and ripeness to warrant the issuance of a declaratory judgment.

68.     Ericsson requests a declaratory judgment that Ericsson's global, reciprocal cross-license offered during the negotiations with Samsung complied with Ericsson's FRAND commitment, as set forth in its IPR licensing declarations to ETSI, that Ericsson's conduct in negotiations with Samsung has not breached ETSI's IPR Policy or any applicable competition laws, and that Ericsson has fully complied with the ETSI IPR Policy in all respects.

## COUNT IV: DECLARATORY JUDGMENT THAT SAMSUNG HAS BREACHED ITS FRAND COMMITMENT TO ERICSSON

69.     Ericsson incorporates by reference the preceding paragraphs as though fully set forth herein.

70.     Samsung's positions are inconsistent with its contractual commitment to ETSI, as set forth in Samsung's IPR licensing declarations to ETSI. Ericsson is a third-party beneficiary of that contract, which Samsung has breached in its negotiations with Ericsson.

71.     A dispute exists between Ericsson and Samsung concerning whether Samsung has complied with its commitment to be prepared to grant licenses to its Essential Patents on terms and conditions consistent with Samsung's IPR licensing declarations to ETSI and ETSI's IPR Policy. Samsung demanded a cross-license with an unreasonably low, non-FRAND rate for Ericsson's valuable Essential Patents, thereby effectively depriving Ericsson of its rights to a license to Samsung's Essential Patents on FRAND terms. This is inconsistent with Samsung's contractual commitment, and Samsung has thus breached its contractual obligation that it be prepared to grant licenses to its Essential Patents on terms and conditions consistent with Samsung's IPR licensing declarations to ETSI and ETSI's IPR Policy. There is a case or controversy of sufficient immediacy, reality, and ripeness to warrant the issuance of a declaratory judgment.

72.     Ericsson requests a declaratory judgment that Samsung has breached Samsung's FRAND commitment, as set forth in its IPR licensing declarations to ETSI, as well as ETSI's IPR Policy and any applicable laws.

## COUNT V: DECLARATORY JUDGMENT THAT SAMSUNG HAS FAILED TO NEGOTIATE IN GOOD FAITH WITH ERICSSON

73.     Ericsson incorporates by reference the preceding paragraphs as though fully set forth herein.

74.     Under French law, once Samsung commenced negotiations with Ericsson for a cross-license, Samsung was obligated to negotiate in good faith. Samsung has failed to negotiate in good faith with Ericsson and has breached its obligation. For example, Samsung did not seriously engage in negotiations with Ericsson with the aim of concluding an agreement, and instead made an unreasonably low cross-license counteroffer, effectively depriving Ericsson of a license to Samsung's Essential Patents on FRAND terms.

75.     Samsung's failure to negotiate in good faith constitutes a breach of its obligations to Ericsson.

76.     There is a dispute between Ericsson and Samsung concerning whether Samsung has complied with its obligation to negotiate in good faith, and this controversy is of sufficient immediacy, reality, and ripeness to warrant the issuance of a declaratory judgment.

77.     Ericsson is entitled to a declaratory judgment that Samsung has not complied with its obligation to act in good faith during its negotiations with Ericsson in regard to FRAND terms for a cross-license to the parties' Essential Patents, and as a consequence, that Samsung has repudiated and forfeited its right to claim rights as a third-party beneficiary of Ericsson's FRAND commitment to ETSI.

## PRAYER FOR RELIEF

WHEREFORE, Ericsson respectfully requests that this Court enter judgment in its favor as follows and award Ericsson the following relief:

(a)     adjudge and declare that Samsung did not satisfy its reciprocity obligations or otherwise comply with its FRAND commitment in its negotiations with Ericsson in regard to a cross-license to the parties' Essential Patents;

(b)     adjudge and declare that Samsung breached its duty to negotiate with Ericsson in good faith, in breach of its obligations under the ETSI IPR Policy;

(c)     adjudge and declare that Samsung has repudiated and forfeited its right to enforce Ericsson's FRAND commitment under the ETSI IPR Policy as a third-party beneficiary;

(d)     adjudge and declare that Ericsson's offer complies with FRAND, that Ericsson fully complied with its FRAND commitment and all other applicable laws in its negotiations with Samsung in regard to a cross-license to the parties' Essential Patents, and that Ericsson fully complied with the ETSI IPR Policy in all respects;

(e)     an award of the amount of damages that Ericsson proves at trial and, as appropriate, exemplary damages;

(f)     specific performance requiring Samsung make available to Ericsson a license to all of its Essential Patents on FRAND terms;

(g)     the costs of this action, including attorneys' fees;

(h)     pre-judgment and post-judgment interest at the maximum amount permitted by law; and

(i)     all other relief, in law or equity, to which Ericsson is entitled.

Dated: December 11, 2020.

**MCKOOL SMITH, P.C.**

/s/ *Theodore Stevenson, III*

Theodore Stevenson, III, Lead Attorney
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
Nicholas Mathews
Texas State Bar No. 24085457
nmathews@mckoolsmith.com
Erik B. Fountain
Texas State Bar No. 24097701
efountain@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Christine Woodin
Texas State Bar No. 24199951
California Bar No. 295023
cwoodin@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone: (213) 694-1200
Telecopier:  (213) 694-1234

Blake Bailey
Texas State Bar No. 24069329
bbailey@mckoolsmith.com
**MCKOOL SMITH, P.C.**
600 Travis Street, Suite 7000
Houston, TX 77002
Telephone: (713) 485-7300
Telecopier: (713) 485-7344

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Telecopier: (903) 923-9099

**ATTORNEYS FOR PLAINTIFFS
ERICSSON INC. AND
TELEFONAKTIEBOLAGET LM
ERICSSON**