**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **ERICSSON INC. AND TELEFONAKTIEBOLAGET LM ERICSSON,** | |
| **Plaintiff,** | **Civil Action No.  2:20-cv-380-JRG** |
| **vs.** | |
| **SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., AND SAMSUNG RESEARCH AMERICA,** | **JURY TRIAL** |
| **Defendants.** | |

**EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER AND
ANTI-INTERFERENCE INJUNCTION RELATED TO SAMSUNG'S LAWSUIT FILED
IN THE WUHAN INTERMEDIATE PEOPLE'S COURT OF CHINA**

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................... 2

    A.   Ericsson's Breach of FRAND and Declaratory Judgment Suit in This Court. .................. 2

    B.   Samsung Files a Secret Lawsuit In Wuhan. ........................................................... 4

    C.   On Christmas Morning, the Wuhan Court Issues an Antisuit Injunction Seizing Jurisdiction Away from This Court. ................................................................... 4

III.  LEGAL STANDARD ................................................................................. 6

IV.   ARGUMENT ............................................................................................... 7

    A.   The Court Should Issue an Anti-Interference Injunction. ..................................... 8

        1.   Samsung Cannot Use the Wuhan Suit to Divest This Court's Jurisdiction and Frustrate United States Policies. ..................................................................... 8

        2.   It Is Not Vexatious and Oppressive for Samsung to Litigate Here. ..................... 9

        3.   Samsung's Receipt of an Antisuit Injunction in the Wuhan Suit Prejudices Other Equitable Considerations. ..................................................................... 11

        4.   The Present Dispute Does Not Concern International Comity. ........................... 12

            a)   Private Contract Disputes Do Not Concern International Comity. ..................... 13

            b)   An Anti-Interference Injunction Promotes Comity. ....................................... 13

    B.   The Court Should Issue an Emergency TRO to Preserve the Status Quo. .................. 13

V.    CONCLUSION ........................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Better Keiki, LLC v. HOUSEWARE*,
    18-CV-226, 2018 WL 3603065 (E.D. Tex. May 14, 2018)....................................................13

*Donovan v. City of Dallas*,
    377 U.S. 408 (1964).............................................................................................................11

*E. & J. Gallo Winery v. Andina Licores S.A.*,
    446 F.3d 984 (9th Cir. 2006) ................................................................................................7

*First Tech. Safety Sys., Inc. v. Depinet*,
    11 F.3d 641 (6th Cir. 1993) ................................................................................................14

*Huawei Tech., Co, et al. v. Samsung Elecs. Co, et al.*,
    Case No. 3:16-cv-02787, 2018 WL 2187773 (N.D. Cal.) ......................................................13

*In re Unterweser Reederei GMBH*,
    428 F.2d 888 (5th Cir. 1970), *aff'd on reh'g*, 446 F.2d 907 (5th Cir. 1971) (en banc)
    (per curiam), *rev'd on other grounds sub nom. M/S Bremen v. Zapata Off–Shore Co.*,
    407 U.S. 1 (1972).............................................................................................................7, 9

*Kaepa, Inc. v. Achilles Corp.*,
    76 F.3d 624 (5th Cir. 1996) ............................................................................................6, 13

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
    335 F.3d 357 (5th Cir. 2003) ...............................................................................6, 7, 10, 12

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*,
    731 F.2d 909 (D.C. Cir. 1984).......................................................................................9, 13, 14

*Lam Yeen Leng v. Pinnacle Performance Ltd.*,
    474 F. App'x 810 (2d Cir. 2012) ...........................................................................................6

*Little Tor Auto Ctr. v. Exxon Co., USA*,
    822 F. Supp. 141 (S.D.N.Y. 1993)......................................................................................13

*May v. Wells Fargo Home Mortg.*,
    No. 3:12-CV-4597-D, 2013 WL 2367769 (N.D. Tex. May 30, 2013)...................................15

*Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*,
    361 F.3d 11 (1st Cir. 2004)...................................................................................................7

*Teck Metals Ltd. v. Certain Underwriters at Lloyd's, London*,
   No. CV-05-411-LRS, 2009 WL 4716037 (E.D. Wash. Dec. 8, 2009) ........................... passim

**OTHER AUTHORITIES**

FED. R. CIV. P. 65(b)(1) ...............................................................................................................14

## I.     INTRODUCTION

Plaintiff Ericsson, Inc. ("Ericsson") respectfully requests an emergency ex parte temporary restraining order and an anti-interference injunction (i.e., an anti-anti-suit injunction) ordering Samsung not to take any further action to divest this Court's jurisdiction or to prevent Ericsson Inc., and all of its corporate parents, subsidiaries, and affiliates, from asserting the full scope of its patent rights against Samsung in the United States.

Ericsson publicly filed this case on December 11, 2020 to resolve a FRAND[1] dispute between Ericsson and Samsung. Ericsson filed this suit in Texas, at the epicenter of the parties' worldwide licensing dispute and in a District where both parties maintain a strong presence. Because the United States is Ericsson's and Samsung's largest product market, this dispute implicates billions of dollars of cellular technology sold in this country each year.

In secret, Samsung filed a more limited FRAND lawsuit in Wuhan. The Wuhan court is an odd choice, as neither Ericsson nor Samsung have a strong connection there. Wuhan is not a corporate home to either company. China is Samsung's *30th* largest market for cellular devices, behind both Canada and Poland. None of the parties' licensing negotiators reside in Wuhan, and none of the parties' licensing negotiations had any connection to Wuhan. It is particularly surprising that Samsung, a Korean company, would file a suit in China to seek a FRAND adjudication. Less than two years ago, Samsung told a U.S. federal court, on the public record in a hearing in a breach of FRAND case, that Chinese courts are "antithetical to the United States

---

[1] The FRAND commitment is a voluntary contractual commitment made by Ericsson and Samsung under which each is prepared to grant licenses on fair, reasonable, and non-discriminatory terms. *See* Dkt. #1 ¶¶ 3, 5, 27.

judicial system," "inquisitorial," have "no due process requirements," and that as a result, Samsung could not receive a "full and fair FRAND determination."

The only plausible explanation for Samsung's choice of forum was revealed on Christmas morning, when the Wuhan Court issued a broad antisuit injunction preventing Ericsson from prosecuting this action or seeking injunctive relief on its 4G and 5G standard-essential patents. Ericsson had no advance notice of the Wuhan antisuit injunction until the moment it was issued early in the morning on December 25, 2020. At this point, Samsung's strategy is clear—it plans to use Wuhan to neutralize Ericsson's global patent rights and otherwise bar Ericsson from protecting its intellectual property outside of China.

The Federal Judiciary has the power and the duty to protect its jurisdiction to provide full justice to litigants. This includes the power to enjoin persons from requesting or enforcing injunctions from foreign courts that would divest jurisdiction from U.S. courts. Because the Wuhan court is working quickly to divest this Court's jurisdiction, Ericsson requests an emergency TRO and an anti-interference injunction ordering Samsung not to further pursue or enforce any order in the Wuhan court, or any other court or agency, that would: (1) interfere with this Court's jurisdiction over this matter, or (2) deprive Ericsson Inc., and all of its corporate parents, subsidiaries, and affiliates, of its right to assert the full scope of its U.S. patent rights.

## II.    STATEMENT OF FACTS

### A.    Ericsson's Breach of FRAND and Declaratory Judgment Suit in This Court.

Ericsson and Samsung both manufacture cellular technology. Both also have substantial global patent portfolios and have declared numerous patents as essential to the 2G, 3G, 4G, and 5G cellular standards. Ericsson and Samsung have executed global patent licenses in the past,

most recently in 2014, following extensive litigation in this Court. Over the past year, the parties have been negotiating the terms of a renewal global cross-license.

Confronted with large differences on the royalty terms and Samsung's rejections of Ericsson's various offers, Ericsson filed this suit on December 11, 2020. Ericsson's suit seeks, *inter alia*, a finding that Samsung breached its FRAND contract as a result of its cross-licensing demands for its essential patents, failed to negotiate a cross-license in good faith, and that Ericsson did not breach its FRAND commitment. *See generally* Dkt. No. 1.

This Court is a natural forum to resolve this dispute. Ericsson maintains its U.S. headquarters in the Eastern District of Texas. Many of Ericsson's employees involved in the Samsung license negotiations work in this District. Ericsson conducted its licensing negotiations with Samsung from this District, and the Ericsson persons participating in licensing meetings participated from this District. Samsung itself has a large presence in this District, maintaining a large cellular research and development operation here. Many of the Ericsson and Samsung patents subject to the parties' licensing negotiations were invented in this District. The United States is both Ericsson's and Samsung's largest product market. Mathews Dec., Exs. 3–4, 9.

Within hours of filing this case on December 11, Ericsson issued a public statement disclosing the suit to the markets. Maharaj Declaration ¶ 4. And, one of Ericsson's license negotiators contacted his counterpart at Samsung to immediately provide further notice of the suit and a copy of the Complaint. *Id.* Over the course of the next week, Ericsson and Samsung licensing personnel communicated on multiple occasions, yet Ericsson was given no indication that Samsung may have already filed a different lawsuit in another jurisdiction. *Id.* ¶¶ 4–6.

3

**B.**      **Samsung Files a Secret Lawsuit In Wuhan.**

On December 17 (nearly a week after Ericsson's case was filed), Samsung informed Ericsson that it had initiated a lawsuit against Ericsson in the Wuhan Intermediate People's Court in China (the Wuhan suit). *Id.* ¶ 6. Samsung claimed that the Wuhan suit was filed on December 7, 2020. *Id.* Unlike Ericsson's lawsuit in this Court, which was publicly filed and promptly disclosed, Samsung filed its Wuhan suit secretly. *Id.* ¶¶ 4–6. Samsung continued to keep the Wuhan suit secret, even after Ericsson provided notice that this case had been filed. *Id.* ¶¶ 4–5. Because the Wuhan Court does not have an electronic docket and filings are made in paper form, Ericsson had no way of independently learning about the Wuhan suit. *See id.* ¶ 7.

**C.**      **On Christmas Morning, the Wuhan Court Issues an Antisuit Injunction Seizing Jurisdiction Away from This Court.**

On December 25, the Wuhan Court emailed Ericsson an antisuit injunction order, which Samsung had secretly requested on December 14—three days *after* Ericsson initiated this Eastern District of Texas lawsuit. Maharaj Dec. ¶ 8; Mathews Declaration, Exs. 7–8. Samsung and the Wuhan Court did not give Ericsson (or this Court) notice or any indication that the motion had been filed or was under consideration. Maharaj Dec. ¶ 8. Generally, the Wuhan injunction (1) bars Ericsson from seeking injunctive relief on 4G and 5G SEPs around the world (including in this Court); (2) bars Ericsson from seeking a FRAND adjudication anywhere other than Wuhan (including in this Court); and (3) bars Ericsson from seeking an anti-anti-suit injunction requiring Samsung to stop using the Wuhan Court to neutralize Ericsson's legal remedies in other forums, including this one. Mathews Dec., Ex. 5, at pp. 13–14.

This is not the first time the Wuhan Court has quickly seized jurisdiction over a global patent dispute. In *Xiaomi v. InterDigital*, a Chinese phone manufacturer, Xiaomi, filed a

4

preemptive FRAND suit against InterDigital, a U.S. cellular patent holder, in the Wuhan Court. *See* Mathews Dec., Ex. 6. Shortly after Xiaomi filed its preemptive suit, InterDigital filed a patent infringement suit against Xiaomi in the Delhi High Court of India, where Xiaomi has significant sales (Xiaomi does not sell in the U.S.). Mathews Dec., Ex. 1. Immediately after the Delhi suit was filed, Xiaomi secretly filed for, and obtained, an antisuit injunction ordering InterDigital to dismiss its India patent infringement case and barring InterDigital from initiating additional suits involving its standard-essential patents. Mathews Dec., Ex. 6 at p. 3, 10–11. To ensure compliance, the Wuhan Court fined InterDigital 1 million Renminbi (approximately $150,000 USD) *per day* for as long as any suits outside of Wuhan remained pending. *Id.* at p. 11. Like Ericsson, InterDigital was not given notice of the antisuit injunction motion or an opportunity to be heard until the order was issued by the Wuhan Court. Mathews Dec., Ex. 1 ¶ 56; Ex. 6 at p. 3, 10–11

Upon learning that InterDigital had been ordered to dismiss its case, the Delhi High Court wrote a scathing opinion about this "rather disturbing" process:

> [Xiaomi], however, appear to have been less than fair, not only to the plaintiff, but also to this Court. . . . [InterDigital] was only informed that a case had been filed, by the defendants, against the plaintiff, in China, seeking determination of FRAND terms for a license. . . . A clear intent, to keep the plaintiff unaware of the exact specifics of the litigation preferred by the defendants against the plaintiff in China, prima facie, is apparent. This impression is strengthened by the fact that (i) no copy, of the anti-suit injunction application, preferred by them before the Wuhan Court, was ever furnished, by the defendants to the plaintiff, (ii) the reply . . . makes no mention of the anti-suit injunction application and (iii) despite the present proceedings having been listed before this Court on six occasions, after the filing of the anti-suit injunction application, the defendants never thought it appropriate even to inform this Court of such an application having been filed. Prima facie, the defendants have acted with impunity, and with scant regard to this Court, or to the requirement of maintaining fairness in the proceedings before it.

5

Mathews Dec., Ex. 1 ¶ 56. Just like in *InterDigital*, neither Ericsson nor this Court was given notice that the Wuhan Court was preparing to paralyze a patent holder's ability to protect its intellectual property rights outside of China. Maharaj Dec. ¶ 8.

## III.   LEGAL STANDARD

It is well settled that a court may issue injunctions to protect its jurisdiction. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626 (5th Cir. 1996). An antisuit injunction requires a "special application" of the traditional four-factor test—the availability of an antisuit injunction "ultimately depends on considerations unique to antisuit injunctions." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 364 & n.19 (5th Cir. 2003).

Here, Ericsson seeks a more limited form of antisuit injunction. In this motion, Ericsson is not asking this Court to stop Samsung from proceeding in the Wuhan suit. Rather, Ericsson is asking this Court to order Samsung not to further pursue or enforce injunctions from other courts that would interfere with the jurisdiction of this Court or otherwise impair Ericsson's ability to assert its United States patents to the full extent permitted by law. Because an anti-interference (or anti-anti-suit injunction) is simply a "less drastic" antisuit injunction, the antisuit injunction framework is "instructive." *Teck Metals Ltd. v. Certain Underwriters at Lloyd's, London*, No. CV-05-411-LRS, 2009 WL 4716037, at *2–3 (E.D. Wash. Dec. 8, 2009); *see also Lam Yeen Leng v. Pinnacle Performance Ltd.*, 474 F. App'x 810, 813 (2d Cir. 2012).

Courts in the Fifth Circuit apply the *Unterweser* framework,[2] which establishes that an antisuit injunction is appropriate when: "foreign litigation would (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) prejudice other equitable considerations." *Unterweser*, 428 F.2d at 896. The four *Unterweser* threats are disjunctive: Proof of *just one* of the *Unterweser* threats is sufficient for a court to issue an antisuit or anti-interference injunction. *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 990 (9th Cir. 2006).

Once a court determines that the foreign litigation presents one or more of the *Unterweser* threats, the court balances the *Unterweser* threats against "international comity" before issuing an antisuit or anti-interference injunction. *Karaha Bodas*, 335 F.3d at 366. Unlike other circuits, in the Fifth Circuit, "notions of comity do not wholly dominate [the] analysis to the exclusion of . . . other concerns." *See id.* Though all courts apply a balancing test to determine the propriety of an antisuit injunction, the Fifth Circuit has adopted a more liberal version of the balancing test, which is more permissive of antisuit injunctions. *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 17 (1st Cir. 2004).

## IV.    ARGUMENT

Ericsson requests a temporary restraining order and an anti-interference injunction preventing Samsung, and anyone in active concert with it, from filing, requesting, prosecuting, or enforcing any motion, request, or injunction (including the injunction issued in the Wuhan suit)

---

[2] *In re Unterweser Reederei GMBH*, 428 F.2d 888, 896 (5th Cir. 1970), *aff'd on reh'g*, 446 F.2d 907 (5th Cir. 1971) (en banc) (per curiam), *rev'd on other grounds sub nom. M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1 (1972).

that would have the effect of: (1) interfering with this Court's jurisdiction over this matter, or (2) depriving Ericsson Inc., and all of its corporate parents, subsidiaries, and affiliates, of its right to fully assert its U.S. patent rights against Samsung. Allowing Samsung to further pursue or enforce an antisuit injunction from the Wuhan court presents multiple *Unterweser* threats that clearly outweigh any international comity concerns.

Ericsson also requests that Samsung be ordered to promptly email copies of any papers filed in or issued by the Wuhan court. Samsung has not been transparent with the status of the Wuhan suit, and there is no indication that this will change in the future. Samsung hid the very existence of the Wuhan suit from Ericsson for ten days. Maharaj Dec. ¶ 6. It hid its antisuit injunction motion for eleven days until it issued Christmas morning. *Id.* ¶ 8; Mathews Dec., Ex. 5. There is no reason to believe that Samsung will stop until it has used the Wuhan Court to completely neutralize Ericsson's patent rights outside of China. Through its egregious conduct, Samsung has taken direct aim at the heart of both Article III and the United States patent system. Ericsson respectfully asks this Court to step in, stop the surprises, and issue a TRO to ensure this Court has a full and fair opportunity to consider the steps necessary to protect the jurisdiction of the Federal Judiciary and the United States patent system from outside interference.

A.      **The Court Should Issue an Anti-Interference Injunction.**

The Wuhan suit presents multiple *Unterweser* threats that outweigh any concerns of international comity.

1.      **Samsung Cannot Use the Wuhan Suit to Divest This Court's Jurisdiction and Frustrate United States Policies.**

The first *Unterweser* factor weighs in favor of an anti-interference injunction. For a defensive anti-interference injunction, the first factor is whether domestic interests support the

8

Court's continued exercise of its jurisdiction and whether an antisuit injunction would frustrate this forum's interest in adjudicating the case. *Teck Metals*, 2009 WL 4716037, at *3.

> Domestic interests support granting Ericsson's motion:

> Courts have a duty to protect their legitimately conferred jurisdiction to the extent necessary to provide full justice to litigants. . . . [W]hen the action of a litigant in another forum threatens to paralyze the jurisdiction of the court, the court may consider the effectiveness and propriety of issuing an injunction against the litigant's participation in the foreign proceedings.

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984). Because the Wuhan Court's Christmas-morning injunction is expressly aimed at prohibiting this Court from exercising jurisdiction, the first *Unterweser* factor is met.

The United States has a particular interest in this dispute. The United States is the largest market for both Ericsson and Samsung, and both companies have substantial engineering and sales operations in the United States. *See infra*, Section IV, Part A.3. Standardized cellular technology is critical to the United States economy, and this country has a strong interest in ensuring a fair and well-reasoned approach to SEP licensing. A case between Ericsson (owner of one of the world's strongest cellular patent portfolios) and Samsung (the world's largest cell phone maker) is immensely important to U.S. interests and warrants careful and neutral consideration by an Article III court.

### 2.   It Is Not Vexatious and Oppressive for Samsung to Litigate Here.

The second *Unterweser* threat weighs in favor of injunctive relief when the foreign litigation is vexatious and oppressive. 428 F.2d at 896. In a defensive anti-interference injunction like this, the court considers whether it would be vexatious and oppressive to require the nonmovant to litigate *here* in the United States. *Teck Metals*, 2009 WL 4716037, at *4.

9

Courts usually decide whether a foreign suit is vexatious or oppressive by examining three sub-factors. *See Karaha Bodas*, 335 F.3d at 366 (listing the three sub-factors). The analysis is slightly different with an anti-interference injunction. Because the aim of an anti-interference injunction is to *allow* parallel domestic and foreign proceedings, a court simply looks to whether the party trying to divest the U.S. court of jurisdiction would suffer oppression or vexation by being required to continue litigating in the United States. *Teck Metals*, 2009 WL 4716037, at *4.

Samsung cannot meaningfully argue that it would be vexatious and oppressive for it to litigate this dispute in this Court. Samsung has a large presence in this District and litigates here frequently. If anything, litigating the ***Wuhan suit*** would be vexatious and oppressive for both Ericsson and Samsung since neither party has a significant presence in Wuhan. Further, the Wuhan suit will not resolve this matter because it only raises a subset of the issues and claims present in this case. For example, Ericsson's complaint raises a breach of FRAND claim against Samsung related to Samsung's essential cellular patents. Dkt. No. 1 ¶¶ 46–58. Samsung did not put its own standard-essential patents or its own FRAND compliance at issue in the Wuhan suit. *See* Maharaj Dec., Ex. C. Also, the Wuhan suit is limited to a FRAND determination as to Ericsson's 4G and 5G essential patents, while this case seeks a FRAND determination as to both parties' 2G, 3G, 4G, and 5G patents. Maharaj Dec., Ex. C; Dkt. No. 1 ¶¶ 46–47. This case additionally raises the issue of the parties' respective good faith in negotiations; the Wuhan suit does not. Maharaj Dec., Ex. C; Dkt. No. 1 ¶¶ 59–64. These examples illustrate the core difference between this action and the Wuhan suit: This case more broadly raises FRAND-determination and good-faith-negotiation issues and claims related to a two-way *cross-license* for both Ericsson's and Samsung's patents and products. Dkt. No. 1 at Prayer.

10

### 3. Samsung's Receipt of an Antisuit Injunction in the Wuhan Suit Prejudices Other Equitable Considerations.

The fourth[3] *Unterweser* threat counsels in favor of granting Ericsson's motion: In prior FRAND matters before U.S. courts, Samsung attacked the fairness of the Chinese court system. It is surprising that Samsung initiated a Chinese FRAND proceeding against Ericsson just two years after telling a U.S. court that Samsung did not receive a fair FRAND trial in China because Chinese courts are "inquisitorial," have "no due process," and permit ex parte communications:

> [SAMSUNG COUNSEL]: The Chinese court system, as Your Honor I'm sure knows, is antithetical to the United States judicial system. It's an inquisitorial judicial system where the judge is -- *sua sponte* will ask for witnesses, ask for things, be the investigator. And there's no due process requirements like they [sic] are in this country. The judge goes and will talk to one side without the other side being allowed to be there. There's all kinds of differences.
>
> I'm not casting aspersions on the Chinese system, I'm just saying it's completely different from the U.S. system. Our system is an adversarial system. It's set up in a completely different manner. We have a right to a jury trial in this country. We have a right to have counsel present at all times in this country, which was not the case in the Chinese action. So there's -- the notion that there's a full and fair FRAND determination is factually incorrect.

Mathews Dec., Ex. 10 at p. 4.

China itself readily acknowledges many of the points Samsung has made above. Chief Justice Zhou Qiang, China's top judicial official, stated in 2017: "We should resolutely resist erroneous influence from the West: 'constitutional democracy,' 'separation of powers' and 'independence of the judiciary,'" warning Chinese judges that they should not "fall into the 'trap' of 'Western' ideology." Mathews Dec., Ex. 2 at p. 4. This is by no means a pejorative or

---

[3] The third *Unterweser* factor—threatening this Court's in rem or quasi in rem jurisdiction—is not applicable since neither this Court nor the Wuhan Court has custody of any property. *See Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964).

disrespectful observation about Chinese courts. It is merely a factual observation that Chinese courts occupy a different role in the government than in the United States.

Given the divergence in judicial philosophy between China and the United States, equitable considerations favor ensuring that this country has a fair opportunity to adjudicate the dispute between Ericsson and Samsung, particularly where both companies have significantly stronger ties to the United States than to China. Samsung sells more phones in the United States than in any other country. According to Strategy Analytics, Samsung sold 34 million smartphones in 2019 and 16 million smartphones in 2020H1 in the U.S., representing 12% and 14% of Samsung's total smartphones sales respectively. Mathews Dec., Exs. 3–4. In contrast, China is Samsung's 30th largest market. *Id.* Samsung sold only 3 million devices in 2019 and 1 million devices in 2020H1 in China, which represent 1% of Samsung's total smartphone sales. *Id.* Samsung's sales in China are below its sales in Canada, Poland, and Spain—all significantly smaller countries. *Id.* Similarly, Ericsson's largest market is the U.S., while China only represents roughly one fifth of Ericsson's U.S. sales. Mathews Dec., Ex. 9 at p. 3.

The data confirms that Samsung's attraction to Wuhan comes from the fact that it exercises its jurisdiction quickly, unilaterally, and broadly. Allowing Samsung to further pursue and enforce an injunction in the Wuhan suit would irreparably prejudice Ericsson.

### 4.  The Present Dispute Does Not Concern International Comity.

There are multiple *Unterweser* threats here that warrant issuing an anti-interference order. Courts next ask whether the threats are outweighed by "concerns of international comity." *Karaha*, 335 F.3d at 336.  Here, they are not.

### a) Private Contract Disputes Do Not Concern International Comity.

Granting Ericsson's anti-interference injunction would not offend notions of international comity because the Texas and Wuhan suits both concern private contract disputes, which do not implicate international comity concerns. *Kaepa*, 76 F.3d at 627. Samsung itself agrees: In its recent dispute with Huawei, Samsung told the court that "[c]omity is simply not offended by this Court's exercise of jurisdiction over, and protection of, this private contractual dispute" and that "private contractual disputes have little, if any, impact on comity." *See Huawei Tech., Co, et al. v. Samsung Elecs. Co, et al.*, Case No. 3:16-cv-02787, 2018 WL 2187773, (N.D. Cal.).

### b) An Anti-Interference Injunction Promotes Comity.

Additionally, a "defensive" anti-interference injunction like this one does not negatively implicate international comity. *Laker Airways*, 731 F.2d at 938. In fact, this Court's issuance of the narrow relief sought by Ericsson actually ***promotes*** principles of international comity because it allows ***both*** cases to proceed. *See Teck Metals*, 2009 WL 4716037, at *4. Thus, "[t]he limited relief [Ericsson] seeks will permit the actions in both countries to proceed unimpeded. This is the expected outcome when principles of comity are honored." *See id.*

### B. The Court Should Issue an Emergency TRO to Preserve the Status Quo.

While the Court weighs the compelling factors for issuing an anti-interference injunction, the Court should grant Ericsson's request for an emergency TRO to preserve the status quo. The issuance of an ex parte TRO is an emergency procedure, *Little Tor Auto Ctr. v. Exxon Co., USA*, 822 F. Supp. 141, 143 (S.D.N.Y. 1993), and it serves "the underlying purpose of preventing irreparable harm just so long as is necessary to hold a hearing . . . ." *Better Keiki, LLC v. HOUSEWARE*, 18-CV-226, 2018 WL 3603065, at *1 (E.D. Tex. May 14, 2018) (granting TRO).

Under Rule 65, a court may issue an ex parte TRO where specific facts in an affidavit clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition and the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. FED. R. CIV. P. 65(b)(1). Ericsson satisfies both Rule 65 requirements. *See* Maharaj Dec.; *infra* p. 19 (Certificate of Conference). Ericsson will be immediately and irreparably harmed if Samsung seeks to enforce the antisuit injunction in Wuhan because it will face the untenable choice of vindicating its rights in this forum or being subject to severe financial penalties in China.

TROs in the anti-interference context are particularly necessary in order to preserve the status quo—otherwise, nothing stops litigants like Samsung from racing to enforce its antisuit injunction in a foreign jurisdiction while the motion for a preliminary anti-interference injunction is pending. An antisuit injunction poses an immediate and irreparable harm to Ericsson's interest in proceeding with this litigation. Maharaj Dec. ¶ 9; *see Teck Metals*, 2009 WL 4716037, at *1 (granting anti-interference injunction after entering TRO to prevent immediate harm).

When it is clear that a party intends to obtain or enforce foreign antisuit relief, the threat that the Court will be robbed of its jurisdiction "worsen[s] every day." *Laker Airways*, 731 F.2d at 931. Ericsson has good reason to fear that this is exactly what Samsung will do when Ericsson provides Samsung with notice of this application. Maharaj Dec. ¶ 9; *see First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) (explaining that sufficient justification exists to issue an ex parte TRO—even where it is possible to notice the adverse party—where notice would render the action fruitless). Since Ericsson meets the criteria for an emergency TRO and is

14

prepared to offer a bond should the Court require it,[4]  the Court should issue a TRO to prevent an immediate and irreparable harm to Ericsson.[5]

Finally, to preserve the status quo, Ericsson requests three additional items of relief. *First*¸ if the Wuhan Court fines Ericsson for participating in this case or asserting its United States patent rights, Ericsson asks this Court to order Samsung to, within five days, fully indemnify Ericsson for the amount of the fine. *Second*, Ericsson asks that Samsung be ordered to provide Ericsson, within 24 hours, a copy of all materials filed in the Wuhan suit. *Third*, Ericsson requests that Samsung be ordered to promptly send Ericsson, by email, all future documents filed or issued in the Wuhan suit. These are necessary steps to preserve the status quo between the parties while the Court considers Ericsson's motion for a preliminary injunction.

## V.    CONCLUSION

For these reasons, the Court should grant Ericsson's application and issue an emergency temporary restraining order and an anti-interference injunction ordering Samsung not: (1) to take actions in the Wuhan suit that would interfere with this Court's jurisdiction over this matter, or (2) to take actions in the Wuhan suit that would deprive Ericsson Inc., and all of its corporate parents, subsidiaries, and affiliates, of its right to assert the full scope of its U.S. patent rights.

---

[4] Samsung cannot conceivably suffer harm merely because it is subject to the legitimate jurisdiction of this Court.

[5] The substantive test for issuing a TRO is identical to the preliminary-injunction factors. *E.g.*, *May v. Wells Fargo Home Mortg.*, No. 3:12-CV-4597-D, 2013 WL 2367769, at *1 (N.D. Tex. May 30, 2013). As discussed above, Ericsson has shown that the *Unterweser* threats outweigh the need to defer to principles of international comity, making an anti-interference injunction— and thus, a TRO—appropriate on the merits. *See supra* Section IV, Part A.

Dated: December 28, 2020.                                 MᴄKᴏᴏʟ Sᴍɪᴛʜ, P.C.


                                        /s/ *Theodore Stevenson, III*
                                        Theodore Stevenson, III
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
Nicholas Mathews
Texas State Bar No. 24085457
nmathews@McKoolSmith.com
Erik B. Fountain
Texas State Bar No. 24097701
efountain@McKoolSmith.com
**MᴄKᴏᴏʟ Sᴍɪᴛʜ, P.C.**
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Christine Woodin
Texas State Bar No. 24199951
California Bar No. 295023
cwoodin@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone: (213) 694-1200
Telecopier: (213) 694-1234

Blake Bailey
Texas State Bar No. 24069329
bbailey@mckoolsmith.com
**MCKOOL SMITH, P.C.**
600 Travis Street, Suite 7000
Houston, TX 77002
Telephone: (713) 485-7300
Telecopier: (713) 485-7344

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@McKoolSmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@McKoolSmith.com

16

**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (903) 923-9001
Telecopier:

**ATTORNEYS FOR PLAINTIFFS
ERICSSON INC. AND
TELEFONAKTIEBOLAGET LM
ERICSSON**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on December 28, 2020.

/s/ *Nicholas Mathews*
Nicholas Mathews

**CERTIFICATE OF CONFERENCE**

Outside counsel has not yet appeared for Samsung. In any event, Ericsson did not confer this *ex parte* motion with anyone at Samsung. Given the opaque nature of the Wuhan proceedings, Samsung's initial delay in providing Ericsson with a copy of the Wuhan Complaint, and Samsung's failure to provide either Ericsson or this Court with any advance notice of its antisuit injunction application, Ericsson has reason to believe that providing advance notice of this Motion will cause Samsung to take immediate action in Wuhan that could prevent Ericsson from further availing itself of this Court's jurisdiction prior to the resolution of this Motion.

*/s/ Nicholas Mathews*
Nicholas Mathews

19