# EXHIBIT 5

The People's Republic of China

Wuhan Intermediate People's Court, Hubei Province

Civil Order

E 01 Zhi Min Chu No. 743 (2020)

Applicant I: Samsung Electronics Co., Ltd.   Address: 129 Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-do, Republic of Korea.

Legal Representative: Kim Ki-nam, representative director and vice chairman.

Attorney: Xie Guanbin, Lifang & Partners.

Attorney: Jiao Shan, Lifang & Partners.

Applicant II: Samsung (China) Investment Co., Ltd.   Address: Nei 15, 1001, 1002, 1003, 10th Floor, Building 2, No. 15, Guanghua Road, Chaoyang District, Beijing, People's Republic of China.

Legal Representative: Choi Seungsik, general manager.

Attorney: Zhou Yigang, employee of the company.

Attorney: Jiao Shan, Lifang & Partners.

Applicant III: Samsung (China) Investment Co., Ltd Wuhan Branch.   Address: Room 1901-B and Room 1902, 19th Floor, Wuhan Poly Culture Plaza, 99 Zhongnan Road, Wuchang District, Wuhan City, Hubei Province, the People's Republic of China.

Person in charge: Kim Kye Hyeon, general manager.

Attorney: Xie Guanbin, Lifang & Partners.

Attorney: Jiao Shan, Lifang & Partners.

Respondent: Telefonaktiebolaget LM Ericsson.   Address: SE-16483, Stockholm, Kingdom of Sweden.

Legal Representative: Börje Ekholm, CEO.

A dispute over royalty rate for standard essential patents (hereinafter referred to as SEPs) filed by Applicant I Samsung Electronics Co., Ltd. (hereinafter referred to as Samsung Co., Ltd.), Applicant II Samsung (China) Investment Co., Ltd. (hereinafter referred to as Samsung China) and Applicant III Samsung (China) Investment Co., Ltd

Wuhan Branch (hereinafter referred to as Samsung Wuhan) against Respondent Telefonaktiebolaget LM Ericsson was accepted by the Wuhan Intermediate People's Court (hereinafter referred to as "this court") on December 7, 2020.

On December 14, 2020, Samsung Co., Ltd., Samsung China, and Samsung Wuhan filed an application for act preservation with this court, requesting:

1. prohibit the Respondent and its affiliates from seeking preliminary injunction or permanent injunction reliefs or administrative measures against the applicants, its affiliates or other entities involved in manufacturing, using, offering to sell, selling, and importing Samsung communications products based on the 4G and 5G SEPs involved in this case with the courts, customs, administrative authorities of China or other countries/regions, or through any other procedures during the proceeding of this case until the judgment/ruling of this case taking effect, and order the Respondent and its affiliates to immediately withdraw or suspend such applications that have been filed;

2. prohibit the Respondent and its affiliates from applying with the courts, customs, administrative authorities of China or other countries/regions, or through any other procedures for enforcement of any preliminary injunction or permanent injunction reliefs or administrative measures that has been or may be obtained against the applicants, its affiliates or other entities involved in manufacturing, using, offering to sell, selling, and importing Samsung communications products based on the 4G and 5G SEPs involved in this case during the proceeding of this case until the judgment/ruling of this case taking effect;

3. prohibit the Respondent and its affiliates from applying with the courts of China or other countries/regions for the determination of license conditions (including royalty rates) and royalty regarding the 4G and 5G SEPs involved in this case during the proceeding of this case until the judgment/ruling of this case taking effect, and order the Respondent and its affiliates to immediately withdraw or suspend such applications that have been filed;

4. prohibit the Respondent and its affiliates from applying with the courts of China or other countries/regions for determining whether the Respondent and its affiliates

have satisfied FRAND obligation in legal procedures in the current negotiations regarding the 4G and 5G SEPs involved in this case, during the proceeding of this case until the judgment/ruling of this case taking effect, and order the Respondent and its affiliates to immediately withdraw or suspend such applications that have been filed;

5. prohibit the Respondent and its affiliates, during the proceeding of this case until the judgment/ruling of this case taking effect, from applying with the courts of China or other countries/regions for rulings that order the applicants to withdraw this application for act preservation or prohibit the applicants and its affiliates from applying for the enforcement of the civil ruling on act preservation of the above-mentioned items 1-4, and order the Respondent and its affiliates to immediately withdraw or suspend such applications that may or have been filed, immediately withdraw such judgment/ruling that may be or have been obtained and not apply for enforcement of such judgment/ruling that may be obtained against the Applicants and its affiliates.

The Applicants are making the requests based on the following facts and grounds: 1. If preservation items in this case are filed, they would severely affect the manufacture and operation of the Applicants and affiliates thereof, and they would incur irreparable damages. Besides, these items would also force the Applicants to accept the unreasonable royalty rate offer, and the present case would not proceed. Therefore, it is necessary and urgent to take the act preservation. 2. The crucial dispute between the Applicants and the Respondent is over how much royalty for global wireless communication SEPs should be paid to the Respondent. The Applicants has filed the case over the dispute to this court, asking to decide a global license condition, including royalty rate, in accordance with the fair, reasonable, and non-discriminatory ("FRAND") doctrine. As a result, the Respondent has no ground to apply for an injunction or file lawsuit over royalty rate. An act preservation would not impose an unreasonable limitation on the litigation right of the Respondent. 3. If the Respondent applies for an injunctive remedy or files another lawsuit over the royalty, or applies for the enforcement of injunction order or judgment over royalty issued by another court in China or other jurisdictions, it would intervene in the adjudication of the present case,

and thus render the judgment of the present case hard to enforce. 4. The court taking act preservation measures against the Respondent would not undermine the international comity. Before the filing of the present case, the Respondent had not filed an injunction or royalty lawsuit over the same issue in the present case before other courts. Therefore, an act preservation by the court against the Respondent is appropriate in respect of the influence on the proceedings and adjudications of a court of China or other jurisdictions. 5. An act preservation by the court against the Respondent would not detrimental to the social public interests. In contrast, if the court does not ban the Respondent from applying for an injunction remedy or filing another lawsuit over the royalty, it would put the Applicants in an extremely disadvantageous position in negotiations, and the Applicants might be forced to accept unreasonable patent license conditions. As a result, the operation costs of the Applicants would increase, which would impair Applicants' market competitiveness. The consumer's interests would ultimately be impacted by cost transfer and other factors.

On December 22, 2020, the Applicants submitted Samsung's Supplementary Statement on the Requests for an Act Preservation to this court, undertaking to provide bonds for the application of an act preservation. On December 23, 2020, Samsung China submitted a credit certificate and a letter of commitment for act preservation.

After review, the preliminary evidence in the present case shows that, the Applicants Samsung Co., Ltd., was established in 1969 and is headquartered in Suwon City, Gyeonggi Province, South Korea. Samsung Co., Ltd. is mainly engaged in businesses in the fields of semiconductors, display equipment, information and communication technology, and life technology. The Applicants Samsung China, was established in Beijing, China in 1996, and represented Samsung Co. Ltd. in its investment and related product production and sales in China. The Applicants Samsung Wuhan, was established in Wuhan, China in 2011. Samsung Wuhan is a branch of Samsung China in Wuhan and is responsible for the sales of Samsung products in Wuhan and surrounding areas. The Respondent, Ericsson, was founded in 1876 and is

headquartered in Stockholm, Sweden. Ericsson is a provider of communications solutions and professional services. The Respondent has joined a number of wireless communication standard organizations, participated in the formulation of 2G, 3G, 4G and 5G wireless communication standards, and has a large number of SEPs under wireless communication standards such as GSM/GPRS/EDGE, WCDMA/HSPA, LTE and NR.  The Respondent promised to ETSI, TIA, TTA, ARIB and other standards organizations that it would license others to implement its wireless communication SEPs under FRAND conditions. In 2007 and 2014, Samsung and Ericsson entered licensing agreements over 2G, 3G, and 4G SEPs. The 2014 license agreement will expire at the end of 2020. In January 2020, Samsung and Ericsson started licensing negotiations over the 4G and 5G SEPs held or controlled by the Respondent after the expiration of the 2014 license agreement. After many rounds of negotiations, Samsung and Ericsson failed to reach a license agreement over the relevant 4G and 5G SEPs, nor reached an agreement on submitting the dispute to a third-party arbitration. Therefore, the Applicants filed a complaint with this court on December 7, 2020, requesting the court to determine, based on FRAND principle, the global license conditions, including royalty rates, of 4G and 5G SEPs held or controlled by the Respondent for the Applicants' communications products. After the present case was accepted, Ericsson and its wholly-owned subsidiary in the United States sued the Applicants Samsung Co., Ltd. and its US subsidiary in the Eastern District Court of Texas on December 11, 2020, requesting the court to determine the Ericsson's offer complies with FRAND principle, and to determine the negotiation activity of Ericsson is compatible with FRAND commitments and ETSI intellectual property policy.

The Court is of the view that this case is about a foreign-related dispute over a contract of intellectual property, and the application for act preservation is a procedural matter, which should be examined and adjudicated in accordance with the law of the place where this court is located, that is, the law of the People's Republic of China.

Paragraph 1 of Article 100 of the Civil Procedure Law of the People's Republic of

China provides that when the enforcement of a judgment may be difficult or other damages may be caused due to the conduct of one party or for other reasons, the people's court may, upon the application of the other party, order to preserve its property, order it to perform certain acts or prohibit it from performing certain acts; if the other party does not make an application, the People's Court may also order to take preservation measures when necessary. The Provisions of the Supreme People's Court on Several Issues Concerning the Application of Law to the Examination of Cases of Act Preservation for Intellectual Property Disputes (hereinafter referred to as "Act Preservation Provisions"), which came into effect on January 1, 2019, provide special provisions on the examination and processing of applications for act preservation for intellectual property disputes. According to the above-mentioned laws and judicial interpretations, the Court will analyze the application from the following aspects, and then decide whether to approve the application for act preservation: first, whether there are any case scenarios in this case in which it would be difficult to enforce the judgment due to the conduct of the Respondent; second, whether there would be any irreparable harm to be suffered by the applicants in the absence of the preservation measures; third, whether the harm the applicants might suffer in the absence of the preservation measures would outweigh the harm the respondent might suffer as a result of the preservation measures; fourth, whether the public interests and international order of civil proceedings would be disserved by the preservation measures; and fifth, whether the applicant has provided sufficient security for the application for act preservation.

1. Whether there are any case scenarios in this case in which it would be difficult to enforce the judgment due to the conduct of the Respondent

According to the Applicants' claims in this case, its main pleading is to request this court to determine the global license terms and conditions, including royalty rates, over the 4G and 5G SEPs held or controlled by the respondent and its subsidiaries for the Applicants' communication products. As of the date of filing this case, except for this case, there have no any proceedings taken place between the parties over the license or infringement of the 4G and 5G SEPs in dispute. As for the issue Whether there are

any case scenarios in this case in which it would be difficult to enforce the judgment due to the conduct of the Respondent, this court is making the analysis as per the items of the preservation application as follows:

(1) About Items 1 and 2 of the preservation application. If, in the course of this case, the Respondent and its affiliates seek preliminary injunctions, permanent injunctions or administrative measures against the Applicants, their affiliates and other entities which manufacture, use, promise to sell, sell or import Samsung's communication products, or apply for enforcement of such injunctions or administrative measures already obtained or likely to obtain with the courts, customs authorities or administrative enforcement agencies in China or other countries and regions, the Applicants, while agreeing to pay the Respondent the royalties for the 4G and 5G SEPs under the terms and conditions determined by this court, will still be under the risk of injunctions or administrative measures, and thus it will make no sense to enforce the judgment rendered by this court on the global license terms and conditions where the injunctions or administrative measures are applied or enforced. Therefore, Items 1 and 2 of the act preservation application is justifiable.

(2) About Items 3 and 4 of the preservation application. If, in the course of this case, the Respondent files actions over license terms or royalty rates for the 4G and 5G SEPs in dispute with the courts of China or other countries and regions, or files actions to request such courts to determine whether the Respondent has complied with its FRAND obligations in the negotiations, it will lead to an overlap or conflicts between the scope of trial and outcomes of this earlier filed case and the later ones, and further result in difficulties in the enforcement of the judgment rendered by this Court. Therefore, Items 3 and 4 of the act preservation application is justifiable.

(3) Regarding Item 5 of the preservation application. For the above-mentioned act preservation applications 1-4, if the Respondent files an anti-injunction case in the courts of China or other countries and regions, requiring the applicant to withdraw the act preservation application in this case or not to apply for enforcement of the above applications, it will also indirectly affect the trial and judgment enforcement of this case. Therefore, Item 5 of the Applicants' act preservation application prohibits the

Respondent and its affiliates from requesting the court to order the Applicants to withdraw the act preservation application, or request the court to prohibit the Applicants from applying for the enforcement of the orders containing preservation matters of applications 1-4, and ordering the Respondent and its affiliates to immediately withdraw or suspend possible or already filed anti-injunction requests are also justified. As for Item 5 of the Applicant's preservation application, it requires the Respondent and its affiliates to be ordered in accordance with the law to immediately vacate such court rulings that may or have been obtained, and the Applicants and its affiliates shall not apply for enforcement of such court rulings that may be obtained. In view of the fact that the court has approved that the applicant's request to the court to order the Respondent not to file an anti-injunction case is justified, given there is no evidence the Respondent has obtained such court rulings, the above part content in Item 5 of the application lacks basis, therefore which is not approved by the court at this stage.

2. Whether failure to take act preservation measures will cause irreparable damage to the Applicant's legitimate rights and interests?

For SEPs, this court recognizes and respects the rights enjoyed by SEP owners, and supports them to obtain fair and reasonable licensing fees from relevant technology implementers. At the same time, after the relevant patent technical solutions are incorporated into the technical standards, they will be more widely used due to others' following with the standards, and the patent owner will gain relatively more licensing fees and competitive advantages. Therefore, the rights of SEPs holders, especially the right of applying for injunctive relief should be imposed reasonable and necessary restrictions. In this case, the Applicants are the licensees in the implementation of SEPs, and the communication products it produces and sells may use the patents held by the Respondent. In the event of the two parties fail to reach a new license agreement, the Applicants continue to produce and sell the relevant communication products, they may face lawsuits filed by the Respondent or other legal remedies sought by the Respondent. Especially when the Respondent submits an application for a temporary injunction or a permanent injunction against the Applicants' products with the court, or seeks

administrative measures with the customs or administrative departments on the Applicants' products, the Applicants' production and sales activities will be affected as a result. In particular, the technical field involved in this case is the communications field, the relevant product cycle is relatively short, and the technology is updated and iterated quickly, therefore the enforcement of the injunction measures will block the sales of the Applicants' products and may cause the Applicants' market share to shrink irreversibly, causing its interests to suffer irreparable damage. Therefore, when the Applicants have requested this court to determine that the global licensing conditions of SEPs between the Applicants and Respondent including royalty rates in accordance with the FRAND principles, it is necessary to take corresponding act preservation measures in response to the Applicants' application.

3. Whether the harm to the Applicants caused by the failure to take act preservation measures outweighs the harm caused to the Respondent by the act preservation measures

Judging from the relationship between the parties involved in the licensing of SEPs, there is a common interest basis between the two parties, that is, the licensee obtains income through external sales of products, while the patent owner has the right to participate in the distribution of product income based on its technical contribution of the SEPs to the product. At the same time, confrontations may arise between the two parties due to their divergences on the implementation conditions of the relevant SEPs licenses. When deciding whether to take act preservation measures against SEPs owner, the interests of SEP owners and licensee should be considered in a balanced manner. In this case, for the Applicants, if the act preservation measures are not adopted, their production and sales activities will be adversely affected or even forced to stop. As far as the Respondent is concerned, if it is forbidden to seek preliminary injunctions, permanent injunctions or administrative remedies against the products produced and sold by the Applicants, the enforcement of its patent rights will be subject to certain restrictions, but it will not lead to the fundamental loss of its rights. On the contrary, after the Applicants request this court to determine the relevant conditions on SEP

license for both parties in accordance with FRAND principles, the prohibition on the Respondent from seeking preliminary injunctions, permanent injunctions or administrative remedies so that the Applicants can maintain the normal production and sales of its products, won't jeopardize the right of the Respondent to require the Applicants to pay the royalty and calculate the corresponding loss. In fact, if the Applicants can maintain or even expand the scale of production and sales of related products, the final royalty that the Respondent obtains from the Applicants may increase accordingly. Therefore, not to adopt act preservation measures in this case has a greater impact to the Applicants, while the adoption of act preservation measures has a relatively small impact on the Respondent. From the perspective of the balance of interests, the Applicants' application for act preservation should also be supported.

4. Will the adoption of act preservation measures harm the public interest and the international civil litigation order

As far as the public interest is concerned, the act preservation measures in this case will not harm the public interest. From the perspective of consumers, they can still continue to obtain the communication products produced and sold by the Applicants without encountering product bans or sold-outs. On the contrary, if the act preservation measures are not taken, the Applicants will still face the risk of being prohibited from producing and selling related products even if the Applicants agrees to the court to determine the licensing conditions between itself and the Respondent, reducing its ability to participate in market competition, and it will eventually impact consumer interests due to cost transfer and other factors.

As far as the impact to the international civil litigation order is concerned, this court is the first court to accept the dispute between the Applicants and the Respondent regarding the royalty on SEPs; when the Applicants voluntarily request the court to decide the Applicants' global licensing conditions for communication products over 4G and 5G SEPs held or controlled by the Respondent, the adoption of act preservation measures will help ensure the proceeding of this case and the enforcement of the judgement. In this way, it will not only provide way out for the disputes that the parties

have failed to resolve after multiple rounds of negotiations, but also help the parties to resolve the disputes in a package. It can also eliminate judicial litigation and jurisdiction conflicts caused by multiple lawsuits between the Applicants and the Respondent in different countries or regions to the greatest extent.

5. Whether the Applicants provided valid guarantee for the act preservation application

According to the Provision 1, Article 11 of the Regulations on Act Preservation, applicants who apply for act preservation shall provide guarantees in accordance with the law. In this case, one of the Applicants Samsung China has submitted a deposit certificate of RMB 50 million to this court and agreed to be deposited by this court as a guarantee for act preservation. In addition, the Applicants explained to this court that if this court approves its application for act preservation and the Respondent is willing to comply, it is willing to increase the amount of guarantee as required by this court. This court believes that the deposit guarantee of RMB 50 million provided by the Applicants can cover the initial losses that may be caused to the Respondent by the act preservation measures.   The Applicants' explanation about the willingness to continue to increase guarantees during the period of the Respondent's compliance with the act preservation ruling, also shows that the Applicants has the goodwill to provide full guarantee for the possible losses to be suffered by the Respondent, and also shows the Applicants' sincere willingness to resolve disputes through the litigation in this case. This practice of continuously increasing the amount of guarantee during the period of the Respondent's compliance behavior constitutes a constraint on both parties, helps to urge both parties to enter the substantive process of resolving disputes as soon as possible, and promotes the early settlement of the dispute in this case. Therefore, this court acknowledges the guarantee provided by the Applicants for act preservation.

In summary, failure to take act preservation measures will render the judgment difficult to be enforced and the Applicants will suffer irreparable damages.   Given that

taking act preservation measures will not cause substantial harm to Respondents' interests and the Applicants have provided effective guarantees, the preservation applications should be mainly approved.

After the review of the panel, according to the Articles 100, 102, and Items 4 of paragraph 1 of Article 154 of "China Civil Procedure Law" and paragraph 1 of Articles 3, 4, 7 and 13 of the Act Preservation Provisions, this court holds:

I. The Respondent Ericsson and its affiliates, during the proceeding of this case until when the judgment of this case becomes effective, shall not seek preliminary injunction or permanent injunction reliefs or administrative measures, with the courts, customs, administrative bodies in China or other countries or regions or though other procedures, against Samsung Electronics, Samsung (China) Investment, the Wuhan Subsidiary of Samsung (China) Investment and related parties who manufacture, use, offer for sale, sale, or import of Samsung telecommunication products, over the 4G and 5G SEPs involved in this case, and immediately withdraw or cease any such requests that have been raised;

II. The Respondent Ericsson and its affiliates, during the proceeding of this case until when the judgment of this case becomes effective, shall not request to enforce preliminary injunction or permanent injunction reliefs or administrative measures which have already been obtained or likely to be obtained, with the courts, customs, administrative bodies in China or other countries or regions or though other procedures, against Samsung Electronics, Samsung (China) Investment, the Wuhan Subsidiary of Samsung (China) Investment and related parties who manufacture, use, offer for sale, sale, or import of Samsung telecommunication products, over the 4G and 5G SEPs involved in this case;

III. The Respondent Ericsson and its affiliates, during the proceeding of this case until when the judgment of this case becomes effective, shall not request courts in China or other countries and regions to determine the license conditions (including the license royalty rate) or license fee, over the 4G and 5G SEPs involved in this case, and immediately withdraw or cease any such requests that have been raised;

IV. The Respondent Ericsson and its affiliates, during the proceeding of this case until when the judgment of this case becomes effective, shall not request courts in China or other countries and regions to determine whether it has satisfied FRAND obligation in the negotiations in legal procedures, over the 4G and 5G SEPs involved in this case, and immediately withdraw or cease any such requests that have been raised;

V. The Respondent Ericsson and its affiliates, during the proceeding of this case until when the judgment of this case becomes effective, shall not request the courts in China or other countries and regions to order Samsung Electronics, Samsung (China) Investment, the Wuhan Subsidiary of

       Samsung (China) Investment and related parties, to withdraw this act preservation application or prohibit them from requesting to enforce this order, and immediately withdraw or cease any such requests that have been raised;
- VI. Deposit a bond of 50 million RMB provided by Samsung (China) Investment for the act preservation for this case.
- VII. Reject the other claims by the Applicants.

If the Respondent Ericsson violates this ruling, this court will impose penalties according to relevant provisions of Chapter X of the Civil Procedure Law of the Republic of the People's Republic of China.

The application fee for act preservation in this case is RMB 5,000. The Applicants Samsung Electronics Co., Ltd. payable by Samsung (China) Investment Co., Ltd., Wuhan Branch of Samsung (China) Investment Co., Ltd.

This ruling is being enforced with immediate effect.

If the Respondent are not satisfied with this ruling, it may apply for reconsideration with this court once within 5 days from the date of receipt of this ruling. The enforcement of the order shall not be suspended during the period of reconsideration.

Chief Judge: Yin Wei
Judge: Xu Jixue
Judge: Zhao Qianxi
Judge: Jiang Lijin
Judge: Zhou Shubo

(seal)
December 25, 2020
Assistant judge: Zhong Yawei
Clerk: Tong Xiaoxue
Clerk: Zhao Danting