**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ERICSSON INC. AND<br>TELEFONAKTIEBOLAGET LM ERICSSON,<br><br>        Plaintiffs,<br><br>    vs.<br><br>SAMSUNG ELECTRONICS CO. LTD.,<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br>AND SAMSUNG RESEARCH AMERICA<br><br>        Defendants | **Civil Action No. 2:20-cv-380-JRG** |

**SAMSUNG'S OPPOSITION TO ERICSSON'S APPLICATION FOR ANTI-
INTERFERENCE INJUNCTION RELATING TO SAMSUNG'S LAWSUIT IN CHINA**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND ............................................................................................... 3

III. ARGUMENT ................................................................................................... 6

    A.   The Chinese Court Properly Issued an Anti-Suit Injunction to Protect Its Jurisdiction Over Samsung's First-Filed Action. ............................................................... 6

    B.   The Scope of Relief Sought by Ericsson Is Overbroad and Legally Defective. ............... 12

    C.   Ericsson Inc. Lacks Standing to Seek the Requested Relief. .............................. 15

IV. CONCLUSION ............................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Christianson v. Colt Indus. Operating Corp.*,
   486 U.S. 800 (1988) ............................................................................................ 12

*Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*,
   569 F.3d 189 (4th Cir. 2009) ............................................................................. 11

*FDIC v. Maxxam, Inc.*,
   523 F.3d 566 (5th Cir. 2008) ............................................................................. 14

*Huawei Techs. Co. v. Samsung Elecs. Co.*,
   2018 WL 2187773 (N.D. Cal. Feb. 1, 2018) .................................................... 11

*Huawei Techs. v. Samsung Elecs Co.*,
   2018 WL 1784065 (N.D. Cal. 2018) .................................................................. 8

*Huawei Techs., Co. v. Samsung Elecs. Co.*,
   2018 WL 1784065 (N.D. Cal. Apr. 13, 2018) .................................................. 15

*Huawei Techs., Co. v. Samsung Elecs. Co.*,
   No. 3:16-cv-02787-WHO (N.D. Cal. Apr. 13, 2018) ........................................ 5

*Infinite Fin. Sols., Inc. v. Strukmyer, LLC*,
   2014 WL 12586282 (N.D. Tex. July 29, 2014) ................................................ 15

*Innovation First Int'l v. Zuru, Inc.*,
   513 F. App'x 386 (5th Cir. 2013) ...................................................................... 11

*Kaepa, Inc. v. Achilles Corp.*,
   76 F.3d 624 (5th Cir. 1996) ............................................................................... 11

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
   335 F.3d 357 (5th Cir. 2003) ....................................................................... passim

*Laker Airways, Ltd. v. Sabena, Belgian World Airlines*,
   731 F.2d 909 (D.C. Cir. 1984) .......................................................................... 12

*MacPhail v. Oceaneering Int'l, Inc.*,
   302 F.3d 274 (5th Cir. 2002) ............................................................................. 10

*Microsoft Corp. v. Motorola, Inc.*,
   696 F.3d 872 (9th Cir. 2012) ......................................................................... 9, 13

*Positive Software Sols., Inc. v. New Century Mortg. Corp.*,
   619 F.3d 458 (5th Cir. 2010) ....................................................................... 13, 14

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007) ........................................................................................... 11

*TCL Commc'n Tech. Holdings v. Telefonaktiebolaget LM Ericsson*,
  S.D. Cal. No. 14-CV-341 (July 10, 2015) (Dkt. 284) .................................... 8

*TCL Commc'n Tech. Holdings v. Telefonaktiebolaget LM Ericsson*,
  S.D. Cal. No. 14-CV-341 (June 29, 2015) (Dkt. 279-1) ............................... 8

*Teck Metals Ltd. v. Certain Underwriters at Lloyd's, London*,
  2009 WL 4716037 (E.D. Wash. Dec. 8, 2009) ............................................ 12

*The Salvore*,
  36 F.2d 712 (2d Cir. 1929) ............................................................................ 11

*Unwired Planet Int'l Ltd. v. Huawei Tech. Co.*,
  [2017] EWHC (Pat) 711 (Eng.), aff'd, [2018] EWCA (Civ) 2344 ............... 8

*Voda v. Cordis Corp.*,
  536 F.3d 1311 (Fed. Cir. 2008) ..................................................................... 15

**Other Authorities**

*Black's Law Dictionary* (11th ed. 2019) ("inquisitorial system") ................................ 11

## I.      INTRODUCTION

Ericsson's motion paints an incomplete picture of the facts surrounding the parties' worldwide licensing dispute and invites the Court to issue a vastly overbroad injunction. Samsung's first-filed action is proper for this global licensing dispute between a *Korean* company and a *Swedish* company, regarding the appropriate worldwide royalty rate for Ericsson's 4G and 5G standard essential patents (SEPs), pursuant to a *contractual* obligation under *French* law. Samsung followed well-established procedures in filing its action in one of the few courts in the world willing to resolve contractual FRAND disputes on a global basis—in a country where both parties have substantial commercial activities.  Notwithstanding Ericsson's rhetoric, nothing about Samsung following Chinese civil procedure is improper.  Nor, contrary to Ericsson's representations, is there anything unusual or untoward about a foreign court issuing an order that protects its jurisdiction, particularly against actions for patent injunctions that would interfere with setting a royalty rate and resolving that case—indeed, that is exactly what courts in this country have done in analogous circumstances.  Ericsson's requested injunction would offend international comity, improperly exceed the scope of this action, and wrongly punish Samsung for a foreign court's enforcement of its own orders—including, potentially, without Samsung doing anything that is prohibited by the requested injunction.  Ericsson failed to meet its burden to show it is entitled to any preliminary injunction, much less the extraordinary remedies it now seeks.

Indeed, Ericsson faces no vexatious or oppressive circumstances, much less irreparable harm, from the Chinese court's order.  Because Samsung agreed to be bound by the Chinese court's findings and has posted a substantial bond, there is no need for parallel patent actions involving the same SEPs around the world.  Ericsson, of course, freely undertook the contractual obligation that encumbers its SEPs—it cannot now complain about restrictions flowing from adjudication of those obligations by the Chinese court.  In any event, at most, the Chinese court's order sequences

the timing of certain remedies for Ericsson; it does not deny Ericsson any right to seek patent remedies that remain relevant after resolution of the global royalty dispute by the Chinese court. In its opening brief, Ericsson does not show that the Chinese court lacks jurisdiction or will fail to properly resolve the parties' global licensing dispute; indeed, it has no excuse for violating the Chinese court's order without even first availing of itself of the process to seek relief from the order in China, other than asking this Court to essentially disregard it.  Ericsson's request for a preliminary injunction should be rejected and is, at a minimum, impermissibly overbroad.

*First*, Ericsson's motion would require this Court to find that the Chinese court is not a legitimate forum for the parties' worldwide royalty dispute, or that its order protecting its own jurisdiction from undue interference is not enforceable—either of which would raise serious international comity concerns.  Ericsson complains of lack of notice before the action was filed, but ignores the rules and procedures in Chinese courts, as well as its own conduct here.  Although Ericsson disparages Chinese courts and procedures, it offers no argument that the Chinese court cannot properly set a worldwide royalty rate, or that this action would fail to resolve the parties' worldwide patent licensing dispute.  Because Ericsson concedes—as it must—that the Chinese action can go forward, that should be dispositive.

*Second*, the sweeping indemnification requested by Ericsson not only lacks legal basis, but improperly seeks relief far beyond what would be necessary to effectuate this Court's jurisdiction, while depriving another sovereign's court of the ability to enforce its orders.  Samsung would be subject to the unprecedented punishment of potentially indemnifying Ericsson for actions another sovereign's courts may take, including *sua sponte,* in response to Ericsson's violation of that court's orders.  Imposing such sanctions raises serious comity and due process concerns. Moreover, the requested injunction would extend far beyond protecting jurisdiction of this court

2

over the claims in this case and would allow Ericsson to bring new patent actions in other forums.

## II.    BACKGROUND

This action arises from an expiring 2014 global patent cross-license agreement between Telefonaktiebolaget LM Ericsson, a Swedish company, and Samsung Electronics Co., Ltd., a Korean company.  The U.S. subsidiaries named as parties in this lawsuit are covered as affiliates under the license, but are not parties to it.  The 2014 License agreement, like the one before it, was the outcome of hard-fought litigation, including actions seeking patent injunctions in district courts and exclusion orders at the U.S. International Trade Commission.  To avoid a repeat, the parties engaged in discussions for a new cross license before the old one expired.  The parties were unable to agree on royalties because Ericsson demanded excessive and unsupported worldwide royalty rates for a license to its 4G and 5G SEPs (and gave no proper value to Samsung SEPs, without even requesting rates).  In contrast, Samsung's proposed cross-license offered payments consistent with the parties' relative patent strength and sales exposure.

In December 2020, with the parties apparently at an impasse, both Samsung and Ericsson pursued litigation without prior notice to the other—as is common practice.  On December 7, Samsung and its Chinese affiliates filed a Complaint to set a global rate for licensing Ericsson's SEPs in the Wuhan Intermediate Court of China (after initially attempting to file on December 4, the date appearing on some of the filing materials).  Exs. 1-3.  China is a natural choice to adjudicate that SEP dispute: it has not only become the world's largest consumer market for mobile handsets, but is also a significant manufacturing hub for much of the mobile industry. Exs. 4, 5. And Ericsson has an extensive footprint in China as a supplier of 4G and 5G network equipment—indeed, Ericsson recently touted that it "has increased its footprint in China through 5G contract awards from all three major operators in China." Ex. 6.  Moreover, because of China's growing influence in the handset market, China has become a frequent venue for cellular SEP

3

disputes.  *See, e.g.*, Rader Decl., ¶ 18; Ex. 7 (summarizing recent SEP litigation in China).  Chinese courts have been a world center for IP dispute resolution, offering sophisticated courts known for their quality and fairness.  Rader Decl., ¶¶ 13-18; Kong Decl., ¶¶ 6-11.  Further, the Chinese courts, like the UK courts, will decide *worldwide* SEP license rates.  *See, e.g.*, Kong Decl., ¶ 9.

Samsung filed suit in China because that court could resolve the *contractual* impasse between the parties regarding Ericsson's SEPs on a *worldwide* basis.  On December 7, the Chinese court accepted the case and on December 11, it assigned a panel.  Exs. 8, 9.  Samsung informed Ericsson of the pending lawsuit on December 17, 2020, reiterating Samsung's commitment to working on a negotiated resolution despite Ericsson's inflexibility.  Dkt. 11-13.

Ericsson likewise saw an impasse and filed suit in this Court on December 11, 2020 without prior notice to Samsung.  Dkt. 1.  Ericsson's complaint does not directly ask the Court to set a royalty rate for licensing Ericsson's SEPs.  Instead, it concerns alleged conduct during the parties' negotiations, which were global in nature and did not break out U.S. patents.  Counts I, II, IV and V allege in different variants that Samsung breached its obligation to negotiate in good faith to license Samsung's SEPs (held by Samsung's Korean entity).  Count III is the only count directed to the patents owned by Ericsson (namely, Ericsson's Swedish entity), which seeks declaratory relief that Ericsson's offer and conduct during negotiations do not breach its FRAND commitment.

On December 14, Samsung applied for an order from the Chinese court to prevent Ericsson from proliferating actions that would interfere with the Chinese court's rate setting.  Exs. 8, 10.  These orders are referred to as "anti-suit injunctions" or ASIs.  ASIs are often entered in an action that is likely to be determinative of global disputes that can arise in multiple venues.  Here, the Chinese court will decide licensing terms, including a *worldwide* rate, for Ericsson's SEPs and resolve the parties' dispute on that issue for a global license.  Ex. 8 at 11–13.  In support of its ASI

application, Samsung posted a substantial security and agreed to be bound by the result of the Chinese action.  *Id.*  Under Chinese procedure, ASI motions are filed *ex parte* and the Court gives notice to the other party.  Kong Decl., ¶¶ 15-20.  After considering the application, the Chinese court issued an ASI on December 25—which is not a legal holiday in China—serving both Ericsson and Samsung. *See, e.g.*, Dkt. 11-12 (Maharaj Decl.) at ¶ 8 (admitting receipt of service).

For the duration of the Chinese action, the ASI prohibits Ericsson and its affiliates from (1) seeking injunctive relief against Samsung under Ericsson 4G and 5G SEPs; (2) seeking to enforce any such injunctions; (3) seeking to adjudicate the licensing terms (including royalty rate) of the Ericsson 4G and 5G SEPs; (4) initiating legal proceedings to determine compliance with Ericsson's FRAND obligations for licensing 4G and 5G SEPs; and (5) requesting that any court order Samsung to withdraw the ASI or prevent Samsung from trying to enforce the ASI.  Ex. 8. The ASI provided Ericsson with the opportunity to object to the Order.  *Id.* at 13.

In filing the Chinese action and seeking the ASI, Samsung fully complied with Chinese procedures.  Kong Decl., ¶ 21.  To be sure, those rules differ from typical U.S. procedures.  For example, whereas a plaintiff is responsible for ensuring service of process under the U.S. Federal Rules, in China, the Court—not Samsung—serves Ericsson with relevant filings, including for example, the ASI.  *Id.*, ¶¶ 19-21.  Ericsson has the right to object to the ASI and seek any modification it believes is appropriate.  *Id.*  But instead of first availing itself of the proper recourse under Chinese procedure, Ericsson first launched a collateral attack against the Chinese Court's ASI by having its U.S. subsidiary, Ericsson Inc., file its motion for TRO.  Ericsson supported its request by disparaging the Chinese courts.[1]  Mot. at 12.

---

[1] Ericsson mischaracterizes statements taken out of context from another case with different circumstances.  Mot. at 11.  Huawei pursued injunctions against Samsung in China *after* asking the California court to set global FRAND terms.  The California court issued an anti-suit injunction, rejecting the "parallel proceedings" argument Ericsson proposes here.  *See Huawei Techs., Co. v. Samsung Elecs. Co.*, No. 3:16-cv-02787-WHO (N.D. Cal. Apr. 13, 2018).

The TRO Ericsson sought (and seeks to extend) precludes Samsung from seeking or enforcing relief that "would prohibit or otherwise limit in any way Ericsson Inc.'s, and all of its corporate parents, subsidiaries, and affiliates, ability to file suits or administrative actions to enforce or defend its U.S. patent rights"—sweeping far beyond this action as-filed or even this Court.  Dkt. 14 at 2.  It also includes an unprecedented indemnification order that can be read as extending even further than the restrictions of the TRO itself.  In particular, it orders the Samsung defendants to "jointly and severally indemnify, within five business days" any "fines imposed" on Ericsson related to the ASI—potentially irrespective of any conduct by Samsung, where it takes place, or even if the Chinese Court imposed them on its own.  *Id.*  This can be read as requiring indemnification by Samsung if Ericsson chooses to willfully violate the Chinese Court's order.

## III.    ARGUMENT

### A.    The Chinese Court Properly Issued an Anti-Suit Injunction to Protect Its Jurisdiction Over Samsung's First-Filed Action.

To obtain an anti-suit (or anti-anti-suit) injunction, the movant—Ericsson—has the burden of showing that the "need to prevent vexatious or oppressive litigation and to protect the court's jurisdiction" outweighs "the need to defer to principles of international comity," such that the extraordinary remedy of a preliminary injunction should issue.  *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 366 (5th Cir. 2003) (citations omitted) (reversing injunction).  Ericsson cannot meet that burden so it tries to avoid it, arguing that "proof of just one" of the so-called "*Unterweser* threats" is sufficient for an injunction, and that it is enough for a court to "simply look[] to whether the party trying to divest the U.S. court of jurisdiction would suffer oppression or vexation by being required to continue litigating in the United States."  Mot. at 7, 10.  That is not the law.  *Karaha* reaffirms that an anti-suit injunction is an "extraordinary remedy" and "the exception rather than the rule."  335 F.3d at 363, 364.

6

The Chinese court's ASI was a legitimate exercise of its jurisdiction in the first-filed action between Samsung and Ericsson for their worldwide rate dispute.  Ericsson labels Samsung's China filing as "surprising," "egregious," and "secret."  But for all its rhetoric, Ericsson does not dispute that (1) Samsung complied with Chinese law and procedures in filing its action, (2) Ericsson has remedies in the Chinese courts for objecting to the ASI, (3) Ericsson is subject to jurisdiction in China (subject to an apparent argument to transfer among Chinese courts), (4) China's courts are fair and adequate, or (5) that the action in China is the first filed action with respect to Ericsson and Samsung's licensing dispute and Ericsson's *contractual* FRAND obligations.  The China court's ASI is also supported by a substantial security from Samsung to protect against any potential harm to Ericsson.  The Chinese court's order is entitled to respect.

> 1. **The Chinese Court's ASI Is Not Vexatious or Oppressive to Ericsson or a Threat to This Court's Jurisdiction.**

Foreign litigation may be "vexatious or oppressive" if it imposes "inequitable hardship," frustrates or delays the domestic suit, or is "duplicitous of the litigation in the United States." *Karaha*, 335 F.3d at 366.  The Chinese court's ASI is none of those things.  It is an ordinary aspect of global licensing disputes, and an appropriate measure to protect that court's jurisdiction as the forum of the first-filed action to resolve Ericsson and Samsung's global dispute.

As described above, Ericsson voluntarily contractually committed to license the patents at issue to Samsung and others on FRAND terms, through pledges to standard-setting organizations. Ericsson and Samsung negotiated for months over the terms of a worldwide cross-license, and their ultimate dispute hinges on the appropriate amount of royalties, as Ericsson's complaint acknowledges.  Ericsson contends litigation in China "would be vexatious and oppressive for both Ericsson and Samsung since neither party has a significant presence in Wuhan."  Mot. at 10.  Not so.  Only two forum in the world claim the authority to set global FRAND rates without requiring

all parties' consent:  the United Kingdom and China.  *See, e.g.*, *Unwired Planet Int'l Ltd. v. Huawei Tech. Co.*, [2017] EWHC (Pat) 711 (Eng.), *aff'd*, [2018] EWCA (Civ) 2344.  The alternative to rate setting is piecemeal litigation around the world.  China is home to most of the world's handset manufacturers who compete with Samsung (Ex. 4) and has a sophisticated, respected judiciary. Rader Decl. ¶¶ 13-19.  Further, Ericsson and Samsung both have substantial commercial activities in China (in any event, the *Unwired Planet* decision, in a case brought by an Ericsson spinoff, rejected challenges to rate setting based on allegedly limited commercial presence in the forum).

Thus, when Ericsson's and Samsung's negotiations reached an impasse, Samsung filed an action in China to exercise its rights, under Ericsson's voluntary contractual commitments. Ericsson does not dispute that Samsung filed its China case on December 7, 2020—before any other action—nor does it dispute that Samsung complied with Chinese law, which is in any event confirmed by the record.  Kong Decl., ¶¶ 12-14.  As the forum of the first-filed action concerning Ericsson and Samsung's licensing dispute, the Chinese court appropriately protected its jurisdiction by enjoining Ericsson from pursuing patent injunctions or filing duplicative actions elsewhere.  That order reflects careful consideration of factors similar to those American courts consider in issuing injunctions, Ex. 8 at 6, and the resulting injunction is similar to injunctions American courts have issued in disputes involving FRAND-encumbered SEPs.

In *TCL Commc'n Tech. Holdings v. Telefonaktiebolaget LM Ericsson*, Judge Selna enjoined Ericsson from pursuing infringement litigation on "any Ericsson patent that Ericsson contends is essential to the 2G, 3G, and/or 4G standards … anywhere in the world outside of this Court" pending a decision setting a rate.  S.D. Cal. No. 14-CV-341 (July 10, 2015) (Dkt. 284); S.D. Cal. No. 14-CV-341 (June 29, 2015) (Dkt. 279-1).  In *Huawei Techs. v. Samsung Elecs Co.*, 2018 WL 1784065 (N.D. Cal. 2018), Judge Orrick enjoined Huawei from enforcing foreign

8

injunctive orders pending resolution of claims relating to contractual licensing obligations in the first-filed forum.  And in *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872 (9th Cir. 2012), the court of appeals affirmed Judge Robart's foreign antisuit injunction.  There, as here, the first-filed litigation concerned a broader issue (FRAND royalty rates for a broad portfolio) that would potentially moot or subsume the subsidiary dispute litigated elsewhere (claims in Germany alleging infringement of individual European patents in the portfolio).  696 F.3d at 885 ("We conclude that the district court did not abuse its discretion in determining that Microsoft's contract-based claims, including its claim that the RAND commitment precludes injunctive relief, would, if decided in favor of Microsoft, determine the propriety of the enforcement by Motorola of the injunctive relief obtained in Germany.").  The Chinese court—as the site of the first-filed action—appropriately took similar action here to enjoin foreign litigation by Ericsson that would interfere with the broader issues pending in China.

Ericsson's additional arguments are unsound.  Ericsson's main argument is that the Chinese court "divest[s] this Court's jurisdiction and frustrate[s] United States policies."  Mot. at 8-10.  Not so.  The Chinese court's order is an ordinary aspect of global licensing disputes when a party has voluntarily undertaken *contractual* obligations, and no more "vexatious and oppressive" than orders its American counterparts have issued in similar circumstances.  Ericsson uses harsh rhetoric to describe the action in China, as "tak[ing] direct aim at the heart of both Article III and the United States patent system," Mot. 8., and seeking to "bar Ericsson from protecting its intellectual property," Mot. 2, but never substantiates that assertion.  To the extent Ericsson's patent rights are encumbered, that is due to Ericsson's voluntary *contractual* obligation.  Regardless, the Chinese action does not eliminate Ericsson's right to assert U.S. patents.  Rather, it defers Ericsson's ability to seek certain remedies for assertions of 4G and 5G SEPs pending

resolution of the first-filed case addressing the parties' worldwide FRAND dispute.  As the order itself explains, it is consistent with Ericsson's FRAND commitments and with the commonsense need to prevent collateral piecemeal litigation in courts around the world while the parties' entire dispute is pending in a forum with competent jurisdiction.  Ericsson treats its right to immediately pursue a full range of patent litigation remedies and injunctions as absolute; it is not.  A patent is a property right that may be licensed or otherwise encumbered.  Ericsson voluntarily committed to license its global portfolio of 4G and 5G-essential patents on FRAND terms.  Its rights are not violated when a court with competent jurisdiction issues a foreign antisuit injunction while it considers the legal effect of such global contractual commitments.  *MacPhail v. Oceaneering Int'l, Inc.*, 302 F.3d 274, 277–78 (5th Cir. 2002) (rejecting argument that foreign court interferes with jurisdiction of US court by enforcing a contractual obligation entered into by a party).  The China court's ASI, moreover, does not bar four of the five counts in Ericsson's complaint (which relate to Samsung SEPs).  Ericsson's motion acknowledges none of this.

The remainder of Ericsson's arguments attack the Chinese court system.  Ericsson observes that the Chinese system differs from the American system, while simultaneously denying that its observations are "pejorative or disrespectful" toward the Chinese system.  Mot. at 11-12.  Nonetheless, Ericsson quotes out-of-context several observations by Samsung and contends that the relief issued in China "prejudices other equitable considerations."  *Id.* at 11.  Ericsson all but invites the Court to find that the Chinese courts are illegitimate, while stopping just short of saying so itself.  The Court should decline that invitation.

Ericsson notes that Chinese courts are "inquisitorial," *id.* at 12, but that simply means "[a] system of proof-taking used in civil law, whereby the judge conducts the trial, determines what questions to ask, and defines the scope and the extent of the inquiry."  *Black's Law Dictionary*

10

(11th ed. 2019) ("inquisitorial system").  "This system prevails in most of Continental Europe, in Japan, and in Central and South America." *Id.*  In *forum non conveniens* cases, the Supreme Court, the Fifth Circuit, and others have often deferred to Chinese courts.  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 435–36 (2007); *Innovation First Int'l v. Zuru, Inc*., 513 F. App'x 386, 390 (5th Cir. 2013); *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 199 (4th Cir. 2009).

## 2.   **Ericsson's Requested Injunction Would Harm Comity**

It is long-settled in the U.S. and elsewhere, that under comity a first-filed action receives deference.  *Karaha*, 335 F.3d at 371 ("We have impliedly recognized the importance of comity when a case implicates public international issues *and when prior steps in resolving a dispute have taken place in international fora*.") (emphasis added); *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 (5th Cir. 1996); *The Salvore*, 36 F.2d 712, 714 (2d Cir. 1929).  Ericsson disputes that this action implicates comity at all.  Mot. at 13.  Binding precedent is to the contrary, and Ericsson's arguments rely on distorting case-specific observations into categorical rules.

First, based on a quote from a brief filed by Samsung in another case, Ericsson contends that "private contract disputes do not concern international comity."  *Id.*  However, Samsung explained in *Huawei* that "comity is *less likely to be* threatened in the context of a private contractual dispute than in a dispute implicating public international law or government litigants." *Huawei Techs. Co. v. Samsung Elecs. Co.*, 2018 WL 2187773 (N.D. Cal. Feb. 1, 2018) (quoting *Microsoft*, 696 F.3d at 887) (emphasis added).  It does not follow that contract disputes *never* implicate comity.  Ericsson's argument is also directly contrary to *Karaha*, where the Fifth Circuit analyzed comity considerations at length in the course of *reversing* the district court's antisuit injunction arising out of a contract dispute.  335 F.3d at 371-74.

Second, based on a district court decision in *Teck Metals*, Ericsson contends its purportedly

11

"defensive" injunction "actually promotes" comity.  Mot. at 13.  *Teck Metals* is not binding, and did not rely on any categorical rule that anti-anti-suit injunctions always promote comity.  *Teck Metals Ltd. v. Certain Underwriters at Lloyd's, London*, 2009 WL 4716037 (E.D. Wash. Dec. 8, 2009).  Regardless, *Laker* belies Ericsson's argument.  As the D.C. Circuit explained, anti-suit and anti-anti-suit injunctions should be exercised sparingly, precisely because they interfere with the jurisdiction of foreign courts and invite escalation.  *Laker Airways, Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984) ("If the foreign court reacts with a similar injunction, no party may be able to obtain any remedy.  Thus, only in the most compelling circumstances does a court have discretion to issue an antisuit injunction.").  If anti-suit injunctions beget anti-anti-suit injunctions, then the latter may beget anti-anti-anti-suit injunctions—resembling the "perpetual game of jurisdictional ping-pong" the Supreme Court decried in *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 818-19 (1988). The infinite escalation stops only when one court defers.  In *Christianson*, the Supreme Court held that for intercircuit transfers, priority should go to the "first [court] to decide the jurisdictional issue."  *Id.* at 802.  The first-filed principle is important to comity for similar reasons.  *Karaha*, 335 F.3d at 371.

Finally, as *Laker* underscores, Ericsson's defiance of the Chinese court's ASI, and refusal to pursue remedies in China *before* seeking this Court's intervention both amply distinguish this case from an ordinary "private contractual dispute."  Such brazen conduct threatens comity.

### B.    The Scope of Relief Sought by Ericsson Is Overbroad and Legally Defective.

For the reasons explained above, no injunction should issue.  The *scope* of Ericsson's proposed injunction, however, is independently problematic.  Ericsson's requests for indemnity and relief in other forums are overbroad and go beyond what the law permits.

     1.      **Samsung Cannot be Required to Indemnify Ericsson for Actions of the China Court Not Caused By Any Samsung Conduct in Violation of this Court's Orders.**

Ericsson's demand that Samsung "indemnify . . . Ericsson Inc. . . . for *any fines* imposed" by the Chinese court in connection with the ASI is a direct attack on that court. Dkt. 11-16, Proposed Order at 2; Dkt. 14, TRO at 2.  It can be read as punishing Samsung for future actions the Chinese court might take (i) that are not caused by any Samsung conduct that is subject to Ericsson's proposed injunction, and (ii) relating to foreign proceedings on foreign patents. Ericsson has cited no authority for that sweeping relief other than the notion that it will preserve the "status quo." Mot. at 15.  But this vague assertion fails to justify a request that not only nullifies the Chinese court's power to enforce its orders, but affirmatively *encourages* contempt by Ericsson by assuring that the consequences visit further harm on *Samsung*.  Such a request is unprecedented, and the sort of potentially-escalating threat to comity that *Laker* cautions against.  Ericsson cannot contend that the requested indemnity is "no broader than necessary to avoid the harm on which the injunction is predicated," *Microsoft*, 696 F.3d at 887, or justified by any other authority it might cite in reply.  Ericsson's indemnification provision is also overbroad because it can be read as reaching actions the Chinese court might take relating to Ericsson's actions in other forums.  The breadth of the indemnity Ericsson seeks goes well beyond defending this Court's jurisdiction, and is effectively a worldwide attack on the Chinese court's order.  *See Karaha*, 335 F.3d at 366 (legal basis for foreign anti-suit injunction is "to protect the court's jurisdiction").

Moreover, the indemnification proposed by Ericsson is a legally defective monetary sanction.  The Fifth Circuit has held that when "conduct was neither before the district court nor in direct defiance of its orders, the conduct is beyond the reach of the court's inherent authority to sanction." *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 461 (5th Cir. 2010).  There is thus no legal basis for monetary indemnification sanctions against Samsung for

actions taken against Ericsson entities by the China court either unilaterally or in connection with foreign proceedings—neither of which satisfy the necessary criteria for sanctions.  For example, in *FDIC v. Maxxam, Inc.*, 523 F.3d 566 (5th Cir. 2008), the Fifth Circuit reversed a sanction that required indemnification for expenses incurred in a different lawsuit in a different court.  The court explained that a court's inherent authority to sanction is meant to "control the litigation before [the court]" and did not reach separate proceedings.  *Id.* at 593; *see also Positive Software,* 619 F.3d at 460 (holding that sanctions cannot be imposed based upon conduct relating to a "collateral proceeding").  Thus, Ericsson's requested indemnification sanction lacks a legal basis to the extent it can be read as applying to conduct of the Chinese court or conduct in foreign proceedings independent of any violation by Samsung of the proposed injunction.

2.      **A Foreign Anti-Suit Injunction Cannot Prohibit Samsung From Enforcing the Chinese Court's Order in Other Forums.**

Ericsson's proposed injunction encompasses any "suits or administrative actions to enforce or defend its United States patent rights" Ericsson might file, in any forum, at any time.  Dkt. 11-16, Proposed Order at 2; Dkt. 14, TRO at 2.  Ericsson cites no authority for its request that this Court may preclude Samsung from enforcing the China court order in forums other than this Court.  This request is outside the scope of legal basis for issuing foreign anti-suit injunctions "to protect the Court's jurisdiction."  *See Karaha*, 335 F.3d at 366.

As with the indemnification request, the request to limit Samsung's ability to enforce another court's order in other tribunals is "broader than necessary to avoid the harm on which the injunction is predicated" and lacks legal basis.  It also runs afoul of the rule that when a "motion [for preliminary injunction] raises issues different from those presented in the complaint, the court has no jurisdiction over the motion."  *Infinite Fin. Sols., Inc. v. Strukmyer, LLC*, 2014 WL

14

12586282, at *9 (N.D. Tex. July 29, 2014).  New actions that may be brought in other forums are necessarily outside the scope of Ericsson's Complaint before this Court.

Ericsson's proposal is particularly overbroad in preventing Samsung from enforcing the ASI against Ericsson seeking patent *injunctions* in other forums.  As the Chinese court explained here, and as U.S. courts ruled previously, piecemeal injunctive requests around the world pose a particular threat to the integrity of a first-filed proceeding to set FRAND royalty rates. *See, e.g.*, *Huawei Techs., Co. v. Samsung Elecs. Co.*, 2018 WL 1784065, at *10 (N.D. Cal. Apr. 13, 2018) (finding patent injunctions elsewhere would interfere with the court's contract litigation because they "would likely force [Samsung] to accept [patentee]'s licensing terms, before any court has an opportunity to adjudicate the parties' breach of contract claims.").  That is part of why, as explained above, courts, such as in the *TCL*, *Huawei*, and *Motorola* cases often issue antisuit injunctions to protect their proceedings as the first-filed forum for claims that will resolve a global dispute.

### C.     Ericsson Inc. Lacks Standing to Seek the Requested Relief

The application for the TRO and preliminary injunction is brought by Ericsson Inc., Ericsson's U.S. subsidiary.  Mot. at 1.  Ericsson Inc., however, is neither the owner of the SEPs at issue, nor the signatory of the FRAND commitment.  Thus, the Chinese court's ASI that defers certain remedies for Ericsson SEPs—while encompassing conduct by Ericsson's affiliates—is directed to patents of Ericsson's Swedish entity.  Ericsson Inc. makes no allegations of harm independent from its parent, which did not bring the motion.  Because the party seeking the injunctive relief is not subject to the alleged harm at issue, the preliminary injunction should be denied for this reason as well.  *See Voda v. Cordis Corp.*, 536 F.3d 1311, 1329 (Fed. Cir. 2008).

## IV.     CONCLUSION

Ericsson's requested injunction should be denied, and the TRO dissolved.

15

Dated:  January 1, 2021

Respectfully submitted,


 */s/ Melissa R. Smith*
Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257
Email:  melissa@gillamsmithlaw.com

Gregory S. Arovas, P.C.
greg.arovas@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Edward C. Donovan, P.C.
edward.donovan@kirkland.com
F. Christopher Mizzo, P.C.
chris.mizzo@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave. N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200

David Rokach
david.rokach@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60645
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Kevin Hardy
kevinhardy@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP1300 I Street N.W.
Suite 900
Washington, D.C.  20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Thomas D. Pease
thomaspease@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP51 Madison Ave., 22nd
Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Paul Zeineddin
pzeineddin@axinn.com
AXINN, VELTROP & HARKRIDER LLP
950 F. Street, N.W.
Washington, DC 20004
Telephone: (202) 912-4700
Facsimile: (202) 912-4701

*Attorneys for Samsung Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on January 1, 2021.


*/s/ Melissa R. Smith*

18