# Declaration of Professor Kong Xiangjun

## CERTIFICATE OF TRANSLATION ACCURACY

I, Alex Jo, declare:

     1. I am a professional reviewer and coordinator specializing in translating Chinese, Japanese and Korean to English.

     2. I have over 25 years of experience reviewing and coordinating translations of thousands of technical, legal, and business documents from Chinese to English submitted to, among others, various U.S. federal courts and the U.S. International Trade Commission.

     3. I certify that the following Chinese to English translation of the corresponding source document titled "***Declaration of Professor Kong Xiangjun***" is a true, correct, and complete translation to the best of my knowledge and ability.

     I hereby certify under penalty of perjury that the foregoing is true and correct. Executed this 1st day of January 2021 in the Contra Costa County of the State of California.

By: _____
       Alex N. Jo
       Member, ATA

### Declaration of Professor Kong Xiangjun

I, KONG Xiangjun, declare as follows:

1.      I am currently the Dean of the KoGuan School of Law and formerly the Chief Judge of the Intellectual Property Tribunal of the Supreme People's Court. I voluntarily submit this affidavit in support of Samsung's opposition to the Temporary Restraining Order filed in the Eastern District of Texas. I have a clear understanding of the facts set forth in this affidavit and I am willing to testify under oath if required.

**Educational Background and Work Experience**

2.      I received a Juris Doctor degree from China University of Political Science and Law in 1994 and have been engaged in administrative, judicial, and academic work in intellectual property and competition law areas for more than 25 years since then.

3.      From 1996-2001, I worked for the Office of Fair Trading of the State Administration for Industry and Commerce (SAIC) of China. For the next 15 years, I have been working in the Supreme People's Court of China, where I have been involved in the adjudication of intellectual property and competition cases in China and have served as a member of the Judicial Committee of the Supreme People's Court, the Chief Judge of the Intellectual Property Tribunal, and the Vice Chief Judge of the First Circuit of the Supreme People's Court (SPC). Since September 2016, I am chair professor of KoGuan School of Law at Shanghai Jiao Tong University, where I have served as Executive Vice Dean and Dean of the Law School, as well as doctoral supervisor and Director of the Intellectual Property and Competition Law Academy of Shanghai Jiao Tong University in China.

4.      I have published a large number of monographs and articles in intellectual property law and competition law areas, including over 30 monographs such as *New Principles of Anti-Unfair Competition Law*, *Judicial Philosophy*, *Methods of Legal Interpretation and Application*, *Innovation and Upgrading of Intellectual Property Protection in Chin*a, *Basic Issues of Intellectual Property Law Application: Judicial Philosophy, Judicial Policy and Judgment Methods*, *Understanding and Application of China's Current Anti-Monopoly Law*, as well as more than 20 theses.

5.      As a result, I have in-depth expertise in the Chinese legal system, academic theory and judicial practice of intellectual property and competition law, and I also have extensive practical experience in civil litigation and administrative procedures in intellectual property and competition cases.

**Judicial System and Civil Litigation Procedures**

6.      The court system in China consists of the Grassroots People's Court, the Intermediate People's Court, the High People's Court, and the Supreme People's Court, in ascending order of hierarchy. China has a relatively centralized jurisdiction over technology-related intellectual property cases and monopoly cases. The court of first instance for patent dispute cases is the Intermediate People's Courts at the location of People's Courts at all provinces, autonomous regions and municipalities and Intermediate People's Courts designated by the Supreme People's Court[1], as well as Beijing, Shanghai and Guangzhou IP Courts[2]. The Supreme People's Court has established the Intellectual Property Tribunal to hear intellectual property appeals that require a high degree of technical expertise, such as patents.[3]

7.      Chinese courts attach great importance to the protection of legitimate rights, such as patent rights, of any party, and treat Chinese and foreign parties equally in the trial process. Foreign parties are able to defend their legitimate rights and interests through litigation in Chinese courts. Recent examples of foreign plaintiffs prevailing in intellectual property disputes include Michael Jordan v. Qiaodan Sports Company, for name right dispute, Lego v. Lepin for copyright dispute, and Jaguar Land Rover v. Jiangling for design patent dispute. Among them, the Judgement of the Jaguar case was highly recognized by the plaintiff Jaguar Land Rover, and more than 30 foreign media such as The Guardian (UK), Reuters (UK), Financial Times (UK), Voice of America, Wall Street Journal, etc. also reported on the case and spoke highly of China's intellectual property

---

[1] Article 2 of the *Several Provisions of Supreme People's Court on Issues Relating to Laws Applicable for Trial of Patent Dispute Cases*

[2] *Rules of Supreme People's Court on Jurisdiction of Beijing, Shanghai and Guangzhou Intellectual Property Courts*

[3] Article 1 of the *Regulation of the Supreme People's Court on Several Issues Concerning Intellectual Property Court*

CASE NO.
DECLARATION

protection[4]. Similarly, the judgement of the Lego case was also highly recognized by Lego. Mr. Niels B. Christiansen, CEO of the Lego Group, commented on the court's judgement that, "we welcome the court's decision. We believe the decision has sufficient factual and legal basis and clearly demonstrates the determination of the relevant Chinese government authorities to continuously protect intellectual property rights and create a favorable business environment for all companies doing business in China." [5]

8.      In China, a Chinese plaintiff does not win as a matter of course because the defendant is a foreigner. In Hytera v. Motorola for monopoly dispute, which is quite well-known, the Beijing Intellectual Property Court ruled in its first instance judgement that although Motorola had a dominant position in part of the relevant market claimed by the plaintiff, Motorola did not conduct an abusive act, and the court finally dismissed all of the plaintiff's claims.[6] Moreover, China is gradually become a preferred jurisdiction for foreign parties to resolve their disputes. For example, in a series of disputes between Apple and Qualcomm over the licensing of standard-essential patents (SEPs), Apple chose to file a lawsuit against Qualcomm in China, claiming that Qualcomm had abused its dominant market position and violated its FRAND obligations.[7]

9.      Chinese courts have routinely adjudicated disputes related to SEPs and currently a few Chinese courts have accepted to determine the global royalty rates for SEPs. For example, the Intermediate People's Court of Shenzhen accepted the lawsuit filed by OPPO against Sharp over the global licensing terms (including but not limited to royalty rates) of all Wi-Fi, 3G and 4G SEPs held by Sharp for all OPPO's smart terminal products. Facing the jurisdictional objection filed by Sharp, for the first time, the court expressed the willingness of Chinese courts to decide the global royalty rates in its ruling [8]. The Intermediate People's Court of Shenzhen believed that the determination of global royalty rates by the court can facilitate the overall effectiveness,

---

[4] Jaguar Land Rover wins legal battle over Chinese copycats, see https://www.ft.com/content/d27ce564-4c9d-11e9-bbc9-6917dce3dc62

[5] See https://mp.weixin.qq.com/s/DMD8Xp3_VfhUP0Pt8kDBFg

[6] (2017) Jing 73 Min Chu 1671 Civil Judgement

[7] (2017) Jing 73 Min Chu 47 Civil Ruling

[8] (2020) Yue 03 Min Chu 689 Civil Ruling

fundamentally resolve the disputes between two parties, avoid the repeated litigations in different countries and therefore is in accordance with the nature of FRAND principles. In addition, the Intermediate People's Court of Wuhan accepted the lawsuit filed by Xiaomi against InterDigital relating to the determination of global royalty rates and believed that "*adjudication of global royalty rates can resolve the problem of choosing and determining the scope of licensing between two parties, save the licensing cost, reduce litigation exhaustion and therefore is extremely reasonable.*"[9]

10.      In the civil litigation procedure of hearing SEP disputes, the parties' litigious rights can be fully safeguarded, which include but are not limited to the rights of hiring lawyers, making defensive arguments, hiring experts to testify before the court and submitting evidence, opinion and applications. Chinese courts accept various formalities of evidence, including the statements of parties, documentary evidence, physical evidence, audio-visual materials, electronic data, witness testimony, expert opinions and inquest records. Evidence shall be presented and cross-examined by the parties before the court[10]. In SEP cases, the typical evidence includes evidence of patent infringement, technical experts' opinions on the validity of patents and whether patents are infringed, technical experts' necessity analysis on whether the involved patents are SEPs, economists' economic analysis on the FRAND rates and the licensing agreements in history. In addition, the courts in China have set up a well-established system of confidentiality. Regarding the evidence involving business secrets of parties, the parties can apply to the court to keep it confidential. Regarding the special evidence that shall be kept confidential to the other party, the parties apply to the court to have it viewed only by the attorneys of the parties. These procedural mechanisms can protect the business secrets of the parties.

11.      China adopts a two-tier trial system, in which the first instance judgment can be appealed once. The court of first instance for standard-essential patent cases is usually the Intermediate People's Court with jurisdiction over the patent case, and the court of second instance

---

[9]  (2020) E 01 Zhi Min Chu 169 Zhi Er Civil Ruling

[10]  Article 63 and 68 of *Civil Procedure Law of the People's Republic of China*

CASE NO.
DECLARATION

is the Supreme People's Court. This means that if the Wuhan Intermediate People's Court issues a judgment of first instance, the judgment does not take effect immediately and any party may appeal to the Supreme People's Court within the appeal period, where the Supreme People's Court will conduct a full hearing on the determination of facts, application of law and procedural issues of the case and issue a second instance judgment. Once the effective judgment is made, it means that the standard essential patent license terms and conditions determined by the judgment are legally binding on the parties.

**Wuhan Litigation**

12.     I have reviewed the civil complaint filed by Samsung Electronics Co., Ltd., Samsung (China) Investment Co., Ltd., and Samsung (China) Investment Co., Ltd.'s Wuhan Branch to Wuhan Intermediate People's Court on December 7, 2020, and I understand that Samsung requested the court to: determine the global licensing terms, including the royalty rates applicable for Plaintiffs' communication products in accordance with "Fair, Reasonable and Non-discriminatory" principle for the licensing of all the 4G and 5G standard essential patents held or controlled by the Defendant and its subsidiaries; and to order Defendants to bear the litigation costs and the just and proper expenses incurred by Plaintiffs as a result of protecting its rights in these proceedings, which tentatively calculated are RMB 10 million.

13.     According to the provisions of the *Civil Procedure Law* on service, the plaintiff's complaint, evidence, court summons and other litigation documents shall be served on the defendant by the people's court[11]. According to my years of judicial experience, under the Chinese civil litigation system, the plaintiff is not obliged to notify the defendant of the fact of prosecution, nor is the plaintiff obliged to provide the defendant with the complaint and evidence it submitted.  Even if the plaintiff chooses to notify the defendant, such notification has no procedural significance under Chinese law and does not constitute service under Chinese law, because service under Chinese litigation law belongs to the authority of the court. Therefore, in practice, as far as I understand, it

---

[11] According to Article 267 of the *Civil Procedural Law*, "Service of litigation documents by People's Courts on litigants without residence in the People's Republic of China may adopt the following methods…", ONLY People's Courts in China could exercise the right to serve court papers to the litigants.

is not a common for the plaintiff to take the initiative to notify the defendant of the fact of lawsuit after filing a lawsuit. This procedure extends to other court filings as well, where generally speaking, any documents submitted to the court by both parties involved in the whole civil procedure are firstly examined by the court, and the court decides whether it is necessary to forward to the other party. In foreign-related civil proceedings, Chinese courts may use a variety of methods to serve parties who do not have domicile in the territory of the People's Republic of China, including but not limited to service by convention, diplomatic service, service by mail, service by fax or email, and service by public announcement[12].

14.     I understand that Samsung Electronics notified Ericsson of the Wuhan lawsuit on December 17, 2020. I believe that Samsung's notice in Wuhan lawsuit is consistent with the common practice under civil proceedings in China, where Samsung may choose to notify or not, or may choose to notify the other party of the lawsuit at any point in time. It is in line with the common practice of Chinese litigation.

**Antisuit Injunction**

15.     I have read the Behavior Preservation Application and Supplemental Statement on Behavior Preservation Application which were submitted to the Wuhan Intermediate People's Court by Samsung Electronics Co., Ltd., Samsung (China) Investment Co., Ltd., and Samsung (China)

---

[12] According to Article 267 of *Civil Procedure Law*, "Service of litigation documents by People's Courts on litigants without residence in the People's Republic of China may adopt the following methods:

(1) Served pursuant to the methods stipulated in an international treaty between the country of the party being served and the People's Republic of China or an international treaty for which the country of the party being served and the People's Republic of China are both participants; (2) Served through diplomatic channels; (3) Where the party being served is of Chinese nationality, the People's Court may entrust the embassy or consulate of the People's Republic of China based in the country where the party being served resides to serve on behalf; (4) Served on the agent ad litem entrusted by the party being served who has the right to receive service of documents on its behalf; (5) Served on the representative organisation established in the People's Republic of China by the party being served or the branch or business agent of the party being served which has the right to receive service of documents; (6) Where the laws of the country where the party being served resides permit service of documents by mail, the documents may be served by mail; upon expiry of a three-month period from the date of mailing and the acknowledgement of service is not being returned, but the documents may be deemed served based on the circumstances, the documents shall be deemed served on the date of expiry of the period; (7) Served via a method for which receipt by the party being served can be confirmed such as facsimile, email, etc.; and (8) Where the documents cannot be served via the aforesaid methods, the documents shall be served by way of a public announcement, and shall be deemed served upon expiry of a three-month period from the date of public announcement."

Investment Co., Ltd.'s Wuhan Branch on December 14, 2020 and December 22, 2020 respectively and the (2020) E 01 Zhi Min Chu 743 Civil Ruling issued by the Wuhan Intermediate People's Court on December 25, 2020.

16.    The anti-suit injunction system involved in this case is a type of behavior preservation measure in China. The Article 100 of the *Civil Procedure Law* stipulates: "For cases in which the action of a party to the lawsuit or any other reason causes difficulty in enforcement of a judgment or causes other harm to the litigants, a People's Court may, pursuant to an application by a counterparty litigant, rule on preservation of its property or order the counterparty to undertake certain acts or prohibit the counterparty to undertake certain acts; where the litigants do not make an application, a People's Court may rule that preservation measures be adopted where necessary." On August 28, 2020, the Supreme People's Court issued the first behavior preservation ruling with the nature of anti-suit injunction in China in *Huawei v. Conversant*[13]. According to the above-mentioned provision and case, the purpose of the anti-suit injunction system is to prevent the respondent's extraterritorial conduct that may interfere with the trial of cases in the Chinese courts or make it difficult to enforce the judgments issued by the Chinese courts.

17.    I noticed that Samsung provided Wuhan Intermediate People's Court with a deposit guarantee of RMB 50 million in the process of applying for an anti-suit injunction to cover any potential initial losses that may be caused to Ericsson by adopting the behavior preservation measures, and has made a written commitment to Wuhan Intermediate People's Court that during the period of Ericsson's compliance with the Behavior Preservation Ruling, it is willing to continue to increase the amount of guarantee per the request of the Court at the standard of US$7.5 million on a monthly basis which shows Samsung's good faith in providing full guarantees and its sincere willingness to resolve disputes through the Wuhan litigation.

18.    In addition, I also noticed that Samsung did not notify Ericsson when submitting the behavior preservation application; and the Wuhan Intermediate People's Court did not hear

---

[13] (2019) Supreme Court Zhi Min Zhong No. 732, 733, 734 Zhi Yi Civil Ruling

Ericsson's opinions before the issuance of the Behavior Preservation Ruling. According to the relevant provisions of Chinese civil litigations, when the situation is urgent or the inquiry of the respondent may affect the preservation measures, both Samsung's and the people's court's actions are consistent with and in compliance with the procedures of Chinese proceedings.[14] This is likewise easy to understand. By way of example, if the applicant notifies the respondent while submitting the application for behavior preservation, the respondent is likely to take some other actions to impede the review of the application for behavior preservation by the Chinese courts.

19.    Moreover, I noticed that Ericsson apparently complained about the Behavior Preservation Ruling issued by Wuhan Intermediate People's Court on December 25. However, there is nothing unusual for Wuhan Intermediate People's Court to issue the ruling on this day. Christmas is not a legal holiday in China and December 25 of 2020 is a Friday, which is no different from a normal working day for Chinese courts. Given that Samsung sent its Credit Certificate and Commitment Letter for the behavior preservation to Wuhan Intermediate People's Court on December 23, which, for the Chinese court, means that Samsung completed the guarantee procedures on December 23, it is completely normal for Wuhan Intermediate People's Court to make a behavior preservation ruling within 48 hours, that is, on December 25, and it is also in line with Article 100 of the *Civil Procedure Law*.

20.    However, this will not affect the legal rights and interests of the respondent. If the respondent disagrees with the preservation ruling, as set forth in the Behavior Preservation Ruling, the respondent can fully protect its legitimate rights and interests by applying for a reconsideration to the people's court that issued the ruling within five days upon receipt of the ruling. The people's court shall review the application within ten days after receiving the reconsideration application. If the ruling is correct, the party's application shall be rejected; if the ruling is improper, the original ruling shall be revised or revoked.[15] During the reconsideration procedures, the parties can submit

---

[14] Article 5 of the *Provisions of the Supreme People's Court on Several Issues Concerning the Application of Law in Reviewing the Injunction Cases involving Intellectual Property Disputes*

[15] Article 171 of the *Interpretation of the Supreme People's Court on the Application of the Civil Procedure Law of the People's Republic of China*

evidence and hire lawyers to make arguments for them. The court usually holds a hearing, organizes the evidence production and cross-examination, and hears the opinions from both parties. For instance, in Huawei v. Conversant, Conversant filed the reconsideration application on September 2, 2020 to the SPC and a hearing was held on September 4, 2020, the attorneys for both parties attended the hearing[16]. In Xiaomi v. Interdigital, InterDigital filed the reconsideration application to Wuhan Court a few days after the ASI ruling was issued on September 23, 2020 (the reconsideration ruling does not mention the specific date of the application) and a hearing was held on October 16, 2020, the attorneys for both parties attended the hearing, during which Interdigital submitted 17 copies of evidence and the Court provided Xiaomi's previous ASI application and evidence accordingly to InterDigital.[17]

21.     In summary, I believe that Samsung's application for behavior preservation complies with Article 100 of the *Civil Procedure Law* and the *Provisions of the Supreme People's Court on Several Issues Concerning the Application of Law in Reviewing the Injunction Cases involving Intellectual Property Disputes*.

22.     I attached my curriculum vitae in English in the Exhibit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 1, 2021, in Shanghai, P.R. China.

_____
*Signature*
Declarant:  KONG Xiangjun

---

[16] (2019) Zui Gao Fa Zhi Min Zhong 732, 733, 734 Zhi Er Civil Ruling

[17] (2020) E 01 Zhi Min Chu 169 Zhi Er Civil Ruling

Exhibit

**CV of Prof. Kong Xiangjun**

KONG Xiangjun, Dean of KoGuan School of Law, Chair Professor of Shanghai Jiao Tong University, Dean of the Intellectual Property and Competition Law Academy, doctoral supervisor. He was selected as one of the fifth China National Top Ten Outstanding Young Jurists, the third China Outstanding Humanities and Social Scientists and "Top 50 World's Most Influential Persons in IP" for three times. He was a member of the Judicial Committee of the Supreme People's Court, Chief Judge of the Supreme People's Court IPR Tribunal, the Deputy Secretary of Sichuan Commission for Politics and Law and the Vice Chief Judge of the First Circuit Court of the Supreme People's Court. He acted as a member of Expert Database of the CPC Central Committee Organization Department, Vice President of China Intellectual Property Law Research Association and Vice President of the China Branch of International Intellectual Property Protection Association, senior researcher of Competition Law Research Center at Peking University and also a part-time professor, doctoral supervisor and post-doctoral co-supervisor at Renmin University of China and other universities.

**ACADEMIC ACHIEVEMENTS**

**Books**

*Commentary on Chinese Entertainment Law Cases, Law Press 2020*

*New Principles of Anti-Unfair Competition Law, Law Press 2019*

*Philosophy of Justice, China Legal Publishing House 2017*

*Legal interpretation and application method, China Legal Publishing House 2017*

*Judges on How they Decide, China Legal Publishing House 2017*

*Legal Ideas and Juridical Methods of Network Copyright Protection, China*

*Legal Publishing House 2015*

*Innovation and Upgrading of China's IPR Protection, Law Press 2014*

*Innovative Application of Anti-Unfair Competition Law, China Legal*

*Publishing House 2014*

*New Thinking of Judicial Protection of Intellectual Property - Frontier Issues*

*on Intellectual Property Right, China Legal Publishing House 2013*

*Fundamental Issues on Application of Intellectual Property Law: Philosophy*

*of Justice, Policy of Justice and Juridical Methods, China Legal Publishing House*

*2013*

*Fundamental Issues on Application of Trademark Law, China Legal*

*Publishing House 2012*

*Philosophy of Justice and Juridical Methods, the People's Court Press 2010*

**Papers**

*From Policy Governance to Rule Governance——Current Transformation*

*Issues of Intellectual Property Protection in my country，Research on China Market*

*Regulation,2020*

*Application of "Internet Article" to New Types of Network Service——From*

*"Notice-and-Takedown" Rule to "Notice and Taking Necessary Measures", Journal*

*of Political Science and Law，2020*

*The New Trend of China Intellectual Property Protection——Review and*

*Prospect of China's Intellectual Property Protection in the Past 40 Years, Research*

*on China Market Regulation,2018*

*Rethinking and Prospects of Intellectual Property Protection in*

*China——Several Thinking Based on System and Idea, Intellectual Property, 2018*

*On the Basic Paradigm of Anti-unfair Competition, Jurist, 2018*

*On the Attribute and Attribution of the Legal Benefits of Packaging and Decoration of Commodity Names——Comment on the Case of "Red Pot Herbal Tea", Intellectual Property, 2017*

*Innovation on the Basis of Inheritance——Interpretation of the Newly Revised Anti-Unfair Competition Law, Research on China Market Regulation,2017*

*On the Competition Orientation of Anti-unfair Competition Law, Law Review, 2017*

*On Several Issues Concerning the Amendment of the Anti-Unfair Competition Law——Comment on "The People's Republic of China Anti-Unfair Competition Law (Revision Draft)", Oriental Law, 2017*

*On the Distinction, Significant and Distinguishing Features of Trademarks, Modern Jurisprudence, 2016*

*On Systematic Application of Trademark Law – Expansion based on Article 8 of Trademark Law, Intellectual Property, 2015*

*Discussion on Several Issues of Judicial Protection of Intellectual Property in China - Rethinking of Judicial Policy and Trend of Intellectual Property Right, Intellectual Property, 2015*

*Actively Creating "Upgraded Version" of Judicial Protection of Intellectual Property in China - New Thinking under Economic Globalization, New Scientific and Technological Revolution and Innovation-Driven Development Strategy, Intellectual Property, 2013*

*Judicial Innovation and Development of Anti-Unfair Competition Law – Written for the 20th Anniversary of Anti-Unfair Competition Law, Intellectual*

*Property, 2013*

*On Eight Relations of Trademark Judicature in China - In Commemoration of*

*the 30th Anniversary of Trademark Law, Intellectual Property, 2012*

CASE NO.

DECLARATION

本人，孔祥俊，声明如下：

1. 本人系现任中国上海交通大学凯原法学院院长，曾担任最高人民法院知识产权审判庭庭长。我自愿提交本书面证言，以支持三星向德州东区法院提交的关于临时限制令的反驳意见。我对本书面证言陈述的事实清楚了解，如需要，我愿意出庭宣誓作证。

**教育背景及工作经历**

2. 本人于1994年从中国政法大学取得法学博士学位，此后一直从事知识产权及竞争法的行政、司法和学术工作，已经超过25年。

3. 1996年至2001年，我就职于中国国家工商总局公平交易局。此后的15年，本人一直就职于中国最高人民法院，从事知识产权及竞争案件的审判工作，曾先后任最高人民法院审判委员会委员、知识产权审判庭庭长、最高人民法院第一巡回法庭副庭长。2016年9月至今，本人系上海交通大学凯原法学院讲席教授，先后任法学院常务副院长、院长，以及知识产权与竞争法研究院院长，博士生导师。

4. 本人在知识产权法及竞争法领域出版了大量专著和文章，包括《反不正当竞争法新原理》《司法哲学》《法律解释与适用方法》《中国知识产权保护的创新与升级》《知识产权法律适用的基本问题：司法哲学、司法政策与裁判方法》《中国现行反垄断法理解与适用》等30余本专著，以及20余篇论文。

5. 因此，我对于中国知识产权和竞争法法律制度、学术理论以及司法实践都都深入研究，并且我对于知识产权及竞争案件的民事诉讼及行政程序也具有丰富的实践经验。

**中国司法体系及民事诉讼程序**

6. 中国的法院体系按照级别由低到高由基层人民法院、中级人民法院、高级人民法院和最高人民法院组成。中国对于技术类知识产权案件和垄断案件实行相对集中管辖，专利纠纷第一审案件，由各省、自治区、直辖市人民政府所在地的中级人民法院和最高人民法院指定的中级人民法院管辖[1]，以及北京、上海、广州知识产权法院[2]。最高人民法院设立知识产权法庭，负责审理专利等专业技术性较强的知识产权上诉案件。[3]

---

[1] 《最高人民法院关于审理专利纠纷案件适用法律问题的若干规定》第二条

[2] 《最高人民法院关于北京、上海、广州知识产权法院案件管辖的规定》

[3] 《最高人民法院关于知识产权法庭若干问题的规定》第一条

7.　　中国法院重视对专利权等各项权利的保护，在审判过程中对中国当事人和外国当事人一视同仁，外国当事人能够通过在中国法院的诉讼维护其合法权益。举例来说，近期外国原告在知识产权案件中胜诉的案例有迈克尔·乔丹（Michael Jordan）诉乔丹体育公司等姓名权纠纷、乐高诉乐拼侵犯著作权纠纷、捷豹路虎有限公司等与江铃控股有限公司外观设计专利纠纷等。其中，捷豹案的判决得到了原告捷豹路虎公司的高度认可，英国《卫报》、英国路透社、英国《金融时报》、美国之音、《华尔街日报》等 30 余家境外媒体也对该案进行了集中报道，并对中国知识产权保护给予高度评价。[4]同样的，乐高案的判决也得到了乐高公司的认可，乐高集团首席执行官倪志伟（Niels B. Christiansen）先生表示："对于法院的判决，我们表示欢迎。我们相信该判决有着充足的事实和法律依据，明确地表明了中国政府相关部门持续保护知识产权以及为所有在华经营业务的公司创造良好营商环境的决心。"[5]

8.　　中国原告并不因被告为外国人而当然胜诉，在备受关注的海能达诉摩托罗拉垄断案中，北京知产法院一审判决认为摩托罗拉虽然在原告主张的部分相关市场中具有支配地位，但未构成滥用行为，驳回了原告海能达的全部诉讼请求。[6]不仅如此，中国法院也逐渐成为外国当事人解决争议的优选法域，例如，在苹果与高通的标准必要专利许可系列纠纷中，苹果选择在中国对高通公司提起诉讼，主张高通滥用其市场支配地位，并且违反了其 FRAND 义务。[7]

9.　　中国法院已经经常性地审理涉及标准必要专利的案件，目前已有少数中国法院明确受理了裁定标准必要专利全球许可费率的先例。例如，中国深圳市中级人民法院 2020 年 3 月 25 日受理了原告 OPPO 公司起诉被告夏普株式会社要求裁定夏普 WiFi、3G 以及 4G 标准必要专利在全球范围内针对 OPPO 的智能终端产品的许可条件（包括但不限于许可费率）的案件。针对夏普提起的管辖权异议，深圳市中级人民法院首次以裁定[8]形式明确

---

[4]　《捷豹路虎公司打赢了针对中国模仿者的诉讼》，参见 https://www.ft.com/content/d27ce564-4c9d-11e9-bbc9-6917dce3dce62

[5]　参见 https://mp.weixin.qq.com/s/DMD8Xp3_VfhUP0Pt8kDBFg

[6]　（2017）京 73 民初 1671 号民事判决书

[7]　（2017）京 73 民初 47 号民事裁定书

[8]　（2020）粤 03 民初 689 号民事裁定书

了中国法院对裁定全球许可费率的意愿，法院认为由法院裁判全球费率有助于整体效率提升，可以从本质上解决原、被告之间的纠纷，有效避免双方当事人在不同国家多次诉讼，也更符合 FRAND 原则的本意。此外，武汉市中级人民法院 2020 年 6 月 9 日受理了小米通讯技术有限公司等起诉交互数字公司等确定交互数字全球费率的案件，武汉中院认为"全球费率争议裁决有利于解决争议双方许可范围的选择和确定难题，有利于节约双方许可成本，减少诉累，具有极大合理性"[9]。

10.    在审理标准必要专利案件的民事诉讼程序中，当事人的诉讼权利可以得到充分保障，包括但不限于聘请律师、辩论的权利、聘请专家出庭作证、提交证据、提交意见和申请等。中国法院可接受的证据多种多样，包括当事人的陈述、书证、物证、视听资料、电子数据、证人证言、鉴定意见、勘验笔录，并且证据应当在法庭上出示，并由当事人互相质证[10]。在标准必要专利案件中，常见的证据包括专利侵权证据、技术专家对于专利有效性和是否侵权的专家意见、技术专家对于专利是否为标准必要专利的必要性分析意见、经济学专家出具的关于 FRAND 费率的经济分析意见、历史许可协议等。并且，中国法院设置了完善的证据保密制度，对涉及当事人商业秘密的证据，当事人可以申请法院予以保密处理不对案外人公开，对于某些特殊的保密证据不适宜被对方当事人知悉的，当事人也可以申请仅由当事人的代理律师阅看，上述程序安排可以充分保障当事人的商业秘密。

11.    中国实行两审终审制。标准必要专利案件的一审法院通常为对专利案件具有管辖权的中级人民法院，二审法院为最高人民法院。这意味着，如果武汉市中级人民法院作出一审判决，该判决并不立即生效，任何一方当事人均可以在上诉期内上诉至最高人民法院，最高人民法院会对案件事实认定、法律适用和程序问题进行全面审理，作出二审判决。一旦生效判决作出，意味着判决确定的标准必要专利许可条件对当事人均具有法律约束力。

**武汉诉讼**

12.    本人审阅了三星电子株式会社、三星（中国）投资有限公司以及三星（中国）投资有限公司武汉分公司 2020 年 12 月 7 日提交武汉中院的民事起诉状，我理解三星公司

---

[9] （2020）鄂 01 知民初 169 号之二民事裁定书

[10] 《民事诉讼法》第 63 条、68 条。

的诉讼请求包括：请求法院依照公平、合理、无歧视原则判决确定被告及其子公司所持有或控制的4G、5G标准必要专利对原告通信产品的全球许可条件，包括许可费率；以及，请求法院判令被告承担本案诉讼费用以及原告为维权而支付的合理开支，暂计为人民币1000万元。

13.　　　根据《民事诉讼法》有关送达的规定，应当由人民法院将原告的起诉状、证据、法院传票等诉讼文件送达被告。[11]根据我多年的司法经验，在中国民事诉讼制度下，原告没有义务通知被告起诉事实，也没有义务向被告主动提供起诉状和证据，即便原告选择主动通知被告，这样的通知在中国法下也不具有程序上的意义，不构成中国法下的送达，因为在中国诉讼法下送达是属于法院的职权。因此，实践中，据我了解，起诉后原告主动通知被告起诉事实，并不是一个常见情形。这一程序对于其他的法院文件来说也同样适用。通常来说，在整个民事诉讼程序中涉及到双方当事人提交的任何文件，他们都应当提交法院，首先由法院审查，并由法院决定是否有必要转交对方当事人。涉外民事诉讼程序中，中国法院对在中华人民共和国领域内没有住所的当事人送达诉讼文书，可以采用多种方式，包括但不限于公约送达、外交送达、邮寄送达、传真或电子邮件送达、公告送达等[12]。

14.　　　我了解到，三星电子在2020年12月17日通知了爱立信公司武汉诉讼。我认为三星对武汉诉讼的通知符合中国民事诉讼程序下的通常做法，三星可以选择通知或者不通知，也可以选择在任何时间点通知对方诉讼，这符合中国诉讼的通常实践。

**禁诉令**

15.　　　我阅读了三星电子株式会社、三星（中国）投资有限公司以及三星（中国）投资有限公司武汉分公司2020年12月14日提交武汉中院的行为保全申请书、12月22日提交的行为保全申请的补充说明，以及武汉中院2020年12月25日作出的（2020）鄂01

---

[11] 《民事诉讼法》第267条规定："人民法院对在中华人民共和国领域内没有住所的当事人送达诉讼文书，可以采用下列方式：……"，因此，在中国只有人民法院可以对当事人送达诉讼文件。

[12] 《民事诉讼法》第267条规定："人民法院对在中华人民共和国领域内没有住所的当事人送达诉讼文书，可以采用下列方式：（一）依照受送达人所在国与中华人民共和国缔结或者共同参加的国际条约中规定的方式送达；（二）通过外交途径送达；（三）对具有中华人民共和国国籍的受送达人，可以委托中华人民共和国驻受送达人所在国的使领馆代为送达；（四）向受送达人委托的有权代其接受送达的诉讼代理人送达；（五）向受送达人在中华人民共和国领域内设立的代表机构或者有权接受送达的分支机构、业务代办人送达；（六）受送达人所在国的法律允许邮寄送达的，可以邮寄送达，自邮寄之日起满三个月，送达回证没有退回，但根据各种情况足以认定已经送达的，期间届满之日视为送达（七）采用传真、电子邮件等能够确认受送达人收悉的方式送达；（八）不能用上述方式送达的，公告送达，自公告之日起满三个月，即视为送达。"

知民初 743 号民事裁定书。

16.　本案涉及的禁诉令制度在中国属于行为保全措施的一种，《民事诉讼法》第一百条规定："人民法院对于可能因当事人一方的行为或者其他原因，使判决难以执行或者造成当事人其他损害的案件，根据对方当事人的申请，可以裁定对其财产进行保全、责令其作出一定行为或者禁止其作出一定行为；当事人没有提出申请的，人民法院在必要时也可以裁定采取保全措施。"中国最高人民法院于 2020 年 8 月 28 日在华为公司诉康文森公司案中作出中国首例禁诉令性质的行为保全裁定[13]。根据上述规定及案例，禁诉令制度的目的是为了防止被申请人的域外行为可能阻碍中国法院案件审理或者造成中国法院裁判难以执行。

17.　我注意到三星在申请禁诉令的程序中向武汉中院提供了 5000 万元人民币存款担保以覆盖采取行为保全措施对爱立信可能造成的初步损失，并且已经向武汉中院书面承诺在爱立信遵守行为保全裁定期间，愿意以每月 750 万美元的标准应法院要求继续追加担保金额，这表明三星提供足额担保的善意，也显示了三星通过武汉诉讼解决纠纷的真诚意愿。

18.　此外，我也注意到三星递交行为保全申请时，并未通知爱立信；武汉中院在行为保全裁定作出前也没有听取爱立信的意见。根据中国民事诉讼的相关规定，当情况紧急或者询问被申请人可能影响保全措施的情况下，三星和法院的行为都是符合中国诉讼程序规定的。[14]这也很容易理解，举例而言，如果申请人在递交行为保全申请的同时就通知了被申请人，被申请人很可能采取其他行动阻碍中国法院对行为保全申请的审查。

19.　此外，我注意到爱立信似乎对于武汉中院在 12 月 25 日作出行为保全裁定有所抱怨。但武汉中院在这一天作出裁定并没有什么异常之处，在中国圣诞节并非法定节假日，12 月 25 日是周五，对于中国法院而言与正常的工作日无异。考虑到三星 12 月 23 日向武汉中院寄送了行为保全资信证明和承诺函，这对于中国法院而言三星在 12 月 23 日完成了行为保全的担保手续，武汉中院在 48 小时之内，即 12 月 25 日作出行为保全裁定是完全正常的，也符合《民事诉讼法》第一百条的规定。

---

[13]（2019）最高法知民终 732、733、734 号之一民事裁定书

[14]《最高人民法院关于审查知识产权纠纷行为保全案件适用法律若干问题的规定》第五条

20.    但这并不会影响被申请人的合法权益。被申请人对保全裁定不服的，如行为保全申请书中所述，可以自收到裁定书之日起五日内向作出裁定的人民法院申请复议，以充分地保护其合法权利和利益。人民法院应当在收到复议申请后十日内审查。裁定正确的，驳回当事人的申请；裁定不当的，变更或者撤销原裁定。[15]在复议程序中，当事人可以提交证据、聘请律师为其辩论，法院通常会举行听证，组织证据的举证和质证，听取当事人的意见。举例而言，在华为诉康文森案中，康文森于 2020 年 9 月 2 日向最高人民法院提出了复议申请，随后最高人民法院于 2020 年 9 月 4 日进行了开庭审理，双方代理人均参加了庭审。[16]在小米诉 InterDigital 案中，InterDigital 在武汉中院 9 月 23 日禁诉令裁定做出后几天内提出了复议申请（复议决定书中没有说明该申请的具体时间），之后武汉中院于 2020 年 10 月 16 日进行了开庭审理，双方代理人均参加了庭审。在庭审过程中 Interdigital 提交了 17 份证据，同时法院也让小米将此前提交给法院的禁诉令申请和相关证据提供给 InterDigital。[17]

21.    综上，我认为三星申请行为保全的行为符合《民事诉讼法》第一百条以及《最高人民法院关于审查知识产权纠纷行为保全案件适用法律若干问题的规定》。

22.    附件是我的英文个人简历。

本人声明上述陈述均真实、正确，并愿意受到美国法律下伪证罪的约束。本声明签署于中国上海，日期为 2021 年 1 月 1 日。

签字
声明人：孔祥俊

---

[15] 《最高人民法院关于适用《中华人民共和国民事诉讼法》的解释》第一百七十一条

[16] （2019）最高法知民终 732、733、734 号之二民事裁定书

[17] （2020）鄂 01 知民初 169 号之二民事裁定书

<u>附件</u>

孔祥俊教授英文个人简历

KONG Xiangjun, Dean of KoGuan School of Law, Chair Professor of Shanghai Jiao Tong University, Dean of the Intellectual Property and Competition Law Academy, doctoral supervisor. He was selected as one of the fifth China National Top Ten Outstanding Young Jurists, the third China Outstanding Humanities and Social Scientists and "Top 50 World's Most Influential Persons in IP" for three times. He was a member of the Judicial Committee of the Supreme People's Court, Chief Judge of the Supreme People's Court IPR Tribunal, the Deputy Secretary of Sichuan Commission for Politics and Law and the Deputy President of the First Circuit Court of the Supreme People's Court. He acted as a member of Expert Database of the CPC Central Committee Organization Department, Vice President of China Intellectual Property Law Research Association and Vice President of the China Branch of International Intellectual Property Protection Association, senior researcher of Competition Law Research Center at Peking University and also a part-time professor, doctoral supervisor and post-doctoral co-supervisor at Renmin University of China and other universities.

**ACADEMIC ACHIEVEMENTS**

**Books**

*Commentary on Chinese Entertainment Law Cases, Law Press 2020*

*New Principles of Anti-Unfair Competition Law, Law Press 2019*

*Philosophy of Justice, China Legal Publishing House 2017*

*Legal interpretation and application method, China Legal Publishing House 2017*

*Judges on How they Decide, China Legal Publishing House 2017*

*Legal Ideas and Juridical Methods of Network Copyright Protection, China*

*Legal Publishing House 2015*

*Innovation and Upgrading of China's IPR Protection, Law Press 2014*

*Innovative Application of Anti-Unfair Competition Law, China Legal*

*Publishing House 2014*

*New Thinking of Judicial Protection of Intellectual Property - Frontier Issues*

*on Intellectual Property Right, China Legal Publishing House 2013*

*Fundamental Issues on Application of Intellectual Property Law: Philosophy*

*of Justice, Policy of Justice and Juridical Methods, China Legal Publishing House*

*2013*

*Fundamental Issues on Application of Trademark Law, China Legal*

*Publishing House 2012*

*Philosophy of Justice and Juridical Methods, the People's Court Press 2010*

**Papers**

*From Policy Governance to Rule Governance——Current Transformation*

*Issues of Intellectual Property Protection in my country，Research on China Market*

*Regulation,2020*

*Application of "Internet Article" to New Types of Network Service——From*

   *"Notice-and-Takedown" Rule to "Notice and Taking Necessary Measures", Journal*

*of Political Science and Law，2020*

*The New Trend of China Intellectual Property Protection——Review and*

*Prospect of China's Intellectual Property Protection in the Past 40 Years, Research*

*on China Market Regulation,2018*

*Rethinking and Prospects of Intellectual Property Protection in*

*China——Several Thinking Based on System and Idea, Intellectual Property, 2018*

*On the Basic Paradigm of Anti-unfair Competition, Jurist, 2018*

*On the Attribute and Attribution of the Legal Benefits of Packaging and Decoration of Commodity Names——Comment on the Case of "Red Pot Herbal Tea", Intellectual Property, 2017*

*Innovation on the Basis of Inheritance——Interpretation of the Newly Revised Anti-Unfair Competition Law, Research on China Market Regulation,2017*

*On the Competition Orientation of Anti-unfair Competition Law, Law Review, 2017*

*On Several Issues Concerning the Amendment of the Anti-Unfair Competition Law——Comment on "The People's Republic of China Anti-Unfair Competition Law (Revision Draft)", Oriental Law, 2017*

*On the Distinction, Significant and Distinguishing Features of Trademarks, Modern Jurisprudence, 2016*

*On Systematic Application of Trademark Law – Expansion based on Article 8 of Trademark Law, Intellectual Property, 2015*

*Discussion on Several Issues of Judicial Protection of Intellectual Property in China - Rethinking of Judicial Policy and Trend of Intellectual Property Right, Intellectual Property, 2015*

*Actively Creating "Upgraded Version" of Judicial Protection of Intellectual Property in China - New Thinking under Economic Globalization, New Scientific and Technological Revolution and Innovation-Driven Development Strategy, Intellectual Property, 2013*

*Judicial Innovation and Development of Anti-Unfair Competition Law – Written for the 20th Anniversary of Anti-Unfair Competition Law, Intellectual Property, 2013*

*On Eight Relations of Trademark Judicature in China - In Commemoration of the 30th Anniversary of Trademark Law, Intellectual Property, 2012*