# Declaration of Randall R. Rader

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ERICSSON INC. AND TELEFONAKTIEBOLAGET LM ERICSSON,<br><br>Plaintiffs,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO. LTD., SAMSUNG ELECTRONICS AMERICA, INC., AND SAMSUNG RESEARCH AMERICA,<br><br>Defendants | **Civil Action No. 2:20-cv-380-JRG** |

## DECLARATION OF RANDALL R. RADER

I, Randall R. Rader, do hereby declare as follows:

1. I am currently a principal at the Rader Group and was formerly Chief Judge of the United States Court of Appeals for the Federal Circuit. I have also taught intellectual property law at many law schools including Tsinghua University in Beijing. A copy of my CV is attached as Exhibit A to this declaration.

2. I provide this declaration in support of Samsung Electronics Co. Ltd., Samsung Electronics America, Inc., and Samsung Research America's Opposition to Ericsson Inc.'s Application for Anti-Interference Injunction Relating to Samsung's Lawsuit in China.

3. I provide herein my perspective of China's legal system, in particular its civil court system concerning intellectual property (IP) law and standard essential patents (SEPs), based on my over two decades of experience as a Circuit Judge handling IP matters, and my continuing experience and interactions with the China judicial system.

4. In connection with this declaration, I have reviewed the criticisms of the Chinese legal systems discussed in Ericsson's brief, as well as the pleadings associated with Samsung's lawsuit filed in the Wuhan Intermediate People's Court of China (the "China Action").

5. I was appointed to the United States Court of Appeals for the Federal Circuit as a Circuit Judge by President George H. W. Bush in 1990 and assumed the duties of Chief Judge on June 1, 2010, which position I held until I retired from the bench in 2014.

6. Prior to my service on the Federal Circuit, I served as a Federal Trial Judge on the United States Claims Court (now the U. S. Court of Federal Claims), to which I was appointed by President Ronald W. Reagan in 1988.

7. Before my appointment to the Court of Federal Claims, I served as Minority and Majority Chief Counsel to Subcommittees of the U.S. Senate Committee on the Judiciary from 1980 to 1988.

8. From 1975 to 1980, I served as Counsel in the House of Representatives for representatives serving on the Interior, Appropriations, and Ways and Means Committees.

9. After leaving the bench in 2014, I founded the Rader Group, initially focusing on arbitration, mediation, legal consulting, and legal education services. As relevant here, I have been for several years an Honorary Professor of law on the faculty of Tsinghua University in Beijing, arguably China's finest law school. Through my work at the University (where Chinese judges occasionally attend my lectures) and in connection with advising governments and private parties on IP policy and litigation, I have become familiar and interacted with the Chinese court system. Indeed, I have often met with top judicial officials at the Supreme People's Court, the IP Court in Beijing, and several of the specialized IP tribunals in various provinces, including opportunities to address Chinese judicial conferences. For that reason, I can comment on its handling of patent-related matters such as the China Action.

10. Since leaving the bench, I have also worked extensively with international companies on matters relating to Chinese intellectual property law, politics, and economics, including matters having both a global and United States component. In that capacity, I have some familiarity with China's laws, regulations, and rules concerning intellectual property, civil procedure, and cases involving standard essential patent issues and the reputation of the Chinese courts and the individual members of the judiciary who decide these matters.

2

11. One event illustrates my work with China's judiciary. Because I spearheaded the filing of the first amicus brief ever accepted by a Chinese court, the Supreme People's Court welcomed me to the hearing of the now-famous 2016 *Qiaodan (Michael Jordan)* trademark case. The *Qiaodan* decision has been given elevated "guiding case" status by the Supreme People's Court and anchors improved protections for trademark owners in China.

12. On several occasions and in different conferences and speaking events, members of the Chinese judiciary have openly asked me, "What can we do to ensure that our services remain attractive to foreign litigants and filers?" I view this as emblematic of China's desire to ensure that its IP judicial systems inspire global confidence.

13. In my view, there is no reason to give the Chinese court handling this global FRAND dispute any less deference than similar courts in the United States. China's court system in the IP area is led by experienced and sophisticated judges who will provide a full and fair opportunity to be heard. China is an appropriate and fair venue to decide an international contract and patent dispute like this one between Korean and Swedish companies. Based on my experience, including working directly with many of these judges and teaching intellectual property law in China, the suggestion in Ericsson's motion that it will not receive a fair hearing in China is incorrect.

14. Since China became a member of the World Trade Organization (WTO) on December 11, 2001, it has made a substantial effort to create a world-class legal and judicial system to which companies can turn to resolve their disputes. The world, and the United States in particular, has recognized these efforts and acknowledged the credibility of the Chinese courts as legitimate tribunals for the resolution of important commercial disputes. As a

result, United States courts now enforce and recognize final judgments from Chinese courts.

15. China has given priority to development of a system of intellectual property law, including patent laws and specialized courts. Indeed, China welcomes extensive innovation and transparency in its IP specialized courts to ensure that they are consistent with international standards and norms. China also seeks the role of world leadership in complex global IP disputes.

16. These efforts have proven successful. In recent years, China has become a world center for IP dispute resolution. It offers specialized IP trial courts and IP specialized tribunals dedicated to the adjudication of IP disputes. China also features competent intermediate courts and a "Federal Circuit-style" central appeal court for all IP disputes in the IP Division of the Supreme People's Court.

17. The court in Wuhan where Samsung filed is global rate setting action is one of these specialized tribunals acknowledged by the Supreme People's Court featuring competent judges with expertise in IP disputes.

18. I have read Ericsson's criticisms of the Chinese court system. Although the Chinese system for IP disputes clearly differs from our system in the United States, China has devoted resources and training to ensure that its IP courts achieve an unrivaled assessment of quality and fairness amongst Chinese courts. Having visited many of these courts, I can personally attest that their processes often grant faster and more complete access to the adjudication process than even some U.S. courts. Intellectual property cases, especially patent cases between international companies, as a rule receive praise and credit for high-quality adjudication in China by both parties as well as by legal commentators and observers.

19. In particular, Chinese IP courts have welcomed and resolved numerous cases involving rate-setting under FRAND standards. One study covering the period of 2011-2019 counted 160 cases accepted by Chinese courts related to standard essential patents. *See,* chinaipr.com*, 2020/07/13.* Those statistics compare favorably, if not exceeding outright, similar accountings in the world's leading national judicial systems.

20. I am most confident that the China Court at issue will apply the laws and rules appropriately and treat an international company like Ericsson quite fairly in a litigation against another international company like Samsung.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 1, 2021 in Springfield, Virginia.

*/s/* _____

# Exhibit A

# Randall R. Rader

7012 Flax Street ● Springfield, Va. 22152 ● 703/861-6078 ● E-Mail: randallrayrader@gmail.com

**Experience**

**Principal, The Rader Group, PLLC**                                            2014- present
- Presiding over major arbitration under UCC rules in Paris; presiding alone over 2 other arbitrations in the US
- Conducted mediations to settle ongoing litigation
- Joined law faculty at Tsinghua University
- Conducted full-credit courses at leading law schools in Washington, D.C., Seattle, Santa Clara, Bangkok, Seoul, Tokyo, Munich, and more
- Consulted with major corporations and law firms on IP policy and litigation
- Advised foreign governments on international IP standards
- Federico Award of U.S. Patent & Trademark Society 2019

**Chief Judge, United States Court of Appeals for the Federal Circuit**        2010-2014
- Led the Circuit through era of budget "sequestrations" and cuts without disruptions in service or programs
- Introduced electronic filing and case management
- Achieved efficiency by reorganizing the court's institutions and leadership
- Conducted joint judicial conferences in Tokyo, Beijing, London, and Seoul to advance international judicial cooperation
- Strengthened the Federal Circuit Bar Association; Created and Co-chaired Judges Committee, AIPLA
- Cooperated with District Courts to draft mock orders that reduce discovery expenses and unnecessary trial issues
- LESI gold medal 2014
- Linn Inn Lifetime Award 2014

**Circuit Judge, United States Court of Appeals for the Federal Circuit**      1990-2010
- Presided over cases every month for nearly 20 years – leading the court in nearly every statistical category through those decades
- Authored pivotal decisions in nearly every area of patent and trademark law
- Conducted jury trials as a District Judge sitting by designation in California, New York, Texas, Illinois, and more
- Presented keynote speeches often at notable conferences for AIPLA, IPO, FICPI, LES, and other IP associations
- Led dozens of international delegations to Asia, Africa, and Europe on missions involving IP or rule of law
- Jefferson Medal 2005; Sedona Lifetime Award 2009

**Federal Trial Judge, United States Claims Court (later Court of Federal Claims)**   1988-1990
- Managed backlogged docket from approximately 200 down to about 60 cases
- Led court in most statistical categories throughout time of service

Adjunct Professor of Patent Law and Comparative Patent Law                                  1992-Present

- Taught comprehensive class every semester (two classes a year) at U. of Va., Georgetown, or GWU
- Intensive one-week courses yearly at Munich and Beijing; two-day courses at Tokyo, Delhi, Taipei, London, and more
- Student-selected adjunct of the year, 2005, 2009; Fulbright Service Award; Honorary Degree, UNH law school, 2011; Berkeley academic of the year Award, 1998
- Keynote Speech, Graduation Ceremony, GWU Law School, 2013

**Chief Counsel (Majority and Minority), Senate Judiciary Committee Subcommittees         1980-1988**

- Contributed to Federal Courts Improvement Act, 1981; Bayh-Dole Act, 1981; Hatch-Waxman Act, 1984; Berne Convention Implementation Act, 1988, more
- Federal Bar Association Young Attorney award, 1987
- Counsel, House of Representatives, Interior and Ways and Means Committees                 1975-1980

**Education**
- B.S., Brigham Young University, 1974, Magna Cum Laude
- J.D., George Washington University Law School, 1978, With Honors

**Publications**

- <u>Cases and Materials on Patent Law</u>, Adelman, Rader, Thomas (co-authors), three editions
- <u>Patent Law in a Nutshell</u>, Adelman, Klacnik, Rader (co-authors), three editions; translated into Chinese;

**Skills**
- Speak conversational Russian and Finnish
- Tennis
- Perform with rock band DENOVO

2

Articles:  3

The State of Patent Litigation [article]

Federal Circuit Bar Journal, Vol. 21, Issue 3 (2012), pp. 331-346

Rader, Randall R. (Cited 138 times)

21 Fed. Cir. B.J. 331 (2011-2012)


Always at the Margin: Inequitable Conduct In Flux [comments]

A Review of Recent Decisions of the United States Court of Appeals for the Federal Circuit: Foreword

American University Law Review, Vol. 59, Issue 4 (April 2010), pp. 777-786

Rader, Randall R. (Cited 138 times)

59 Am. U. L. Rev. 777 (2009-2010)


Addressing the Elephant: The Potential Effects of the Patent Cases Pilot Program and Leahy-Smith America Invents Act [comments]

Afterword

American University Law Review, Vol. 62, Issue 4 (April 2013), pp. 1105-[iv]

Rader, Randall R. (Cited 138 times)

62 Am. U. L. Rev. 1105 (2012-2013)


Books:  7

Patent Law in Nutshell (Nutshells)

by Randall Rader and Benjamin Christoff | Jun 29, 2018


Cases and Materials on Patent Law (American Casebook Series)

by Martin Adelman, Randall Rader, et al. | Dec 28, 2018

Cases and Materials on Patent Law, 3d: 3rd (third) Edition Hardcover – January 5, 2010

Law, Policy and Monetization in Intellectual Property

by Mei-Hsin Wang Randall R. Rader, Thomas Voit, Kenichi Nagasawa, Kwang-Jun Kim | Mar 1, 2019

Cases and Materials on Patent Law, 4th (American Casebook Series)

by Martin J. Adelman, Randall R. Rader, et al. | Dec 23, 2014

Patent Law in a Nutshell (Nutshells)

by Martin J Adelman , Randall R. Rader, et al. | Dec 5, 2012

Law, Politics and Revenue Extraction on Intellectual Property

by Martin J. Adelman, Toshiaki Iimura, et al. | Mar 1, 2015