IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
Marshall Division

| | |
|---|---|
| ERICSSON INC., TELEFONAKTIEBOLAGET LM ERICSSON,<br><br>*Plaintiffs*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG RESEARCH AMERICA,<br><br>*Defendants*. | Civil Action No. 2:20-CV-00380-JRG |

**BRIEF OF AMICUS CURIAE THE HONORABLE PAUL R. MICHEL (RET.)
IN SUPPORT OF PLAINTIFFS' MOTION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii
I.   Interest of Amicus Curiae ............................................................................................. 1
II.  The Court Should Independently Assess Whether Ericsson's Suit Should Proceed ................ 2
     A.   The Chinese Court's Apparent Procedure Implicates Significant Due Process
          Concerns That May Adversely Affect U.S. Patent Rights ......................................... 3
     B.   Major Questions Remain About China's Intellectual Property Judicial System ......... 5
III. Conclusion ................................................................................................................... 7

## TABLE OF AUTHORITIES

**Cases**                                                                                                         **Page(s)**

*In re Ciprofloxacin Hydrochloride Antitrust Litigation*,
   544 F.3d 1323 (Fed. Cir. 2008) .................................................................................... 1

*In re Independent Service Organizations Litigation*,
   203 F.3d 1322 (Fed. Cir. 2000) .................................................................................... 1

*Nobelpharma AB v. Implant Innovations, Inc.*,
   141 F.3d 1059 (Fed. Cir. 1998) .................................................................................... 1

*FTC v. Qualcomm, Inc.*,
   969 F.3d 974 (9th Cir. 2020) ....................................................................................... 2

*TCL Communication Technology Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*,
   943 F.3d 1360 (Fed. Cir. 2019) .................................................................................... 1

**Other Authorities**

China IPR, *Wuhan and Anti-Suit Injunctions* (Dec. 28, 2020), at
   https://chinaipr.com/2020/12/28/wuhan-and-anti-suit-injunctions/ .......................... 6

David Kappos & Hon. Paul R. Michel,
   *The Smallest Salable Patent-Practicing Unit: Observations on its Origins,
   Development, and Future*, 32 Berkeley Tech. L.J. 1433 (2018) ................................ 1

Paul R. Michel & Matthew J. Dowd,
   *The Need for "Innovation Certainty" at the Crossroads of Patent and Antitrust Law*,
   CPI Antitrust Chronicle (Apr. 2017) ..................................................................... 1, 2

Paul R. Michel & Matthew J. Dowd,
   *From a Strong Property Right to a Fickle Government Franchise:
   The Transformation of the U.S. Patent System in Fifteen Years,*
   69 Drake L. Rev. 1 (forthcoming 2021) ...................................................................... 1

Paul R. Michel & John Battaglia,
   *Flaws in the Supreme Court's § 101 Precedent and Available Ways to Correct Them*,
   IPWatchdog.com (Apr. 27, 2020)................................................................................ 1

I.      **Interest of Amicus Curiae**

The Honorable Paul R. Michel (ret.) served on the U.S. Court of Appeals for the Federal Circuit for over twenty-two years.  From 2004 until his retirement in May 2010, he was the chief judge of the court.  During his twenty-two years of judicial service, he heard thousands of appeals and authored over 800 opinions, touching on all aspects of the court's jurisdiction, including patent law.[1]

While Judge Michel's work on the Federal Circuit often focused on patent law, the Federal Circuit regularly confronted related complex issues that implicate patent law issues, such as antitrust disputes.  *See, e.g.*, *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 544 F.3d 1323 (Fed. Cir. 2008); *In re Indep. Serv. Orgs. Litig.*, 203 F.3d 1322 (Fed. Cir. 2000); *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059 (Fed. Cir. 1998).  More recently, as the importance of standard essential patents has grown, the Federal Circuit has increasingly adjudicated cases involving FRAND disputes.  *See, e.g.*, *TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, 943 F.3d 1360 (Fed. Cir. 2019).

Since his retirement from the Federal Circuit, Judge Michel has maintained an active role in the public dialogue about optimal policies governing intellectual property and U.S. innovation. *See, e.g.*, Paul R. Michel & Matthew J. Dowd, *From a Strong Property Right to a Fickle Government Franchise: The Transformation of the U.S. Patent System in Fifteen Years*, 69 Drake L. Rev. 1 (forthcoming 2021); Paul R. Michel & John Battaglia, *Flaws in the Supreme Court's § 101 Precedent and Available Ways to Correct Them*, IPWatchdog.com (Apr. 27, 2020); David Kappos & Hon. Paul R. Michel, *The Smallest Salable Patent-Practicing Unit: Observations on its Origins, Development, and Future*, 32 Berkeley Tech. L.J. 1433 (2018); Paul R. Michel &

---

[1] No party's counsel authored this brief in whole or in part, and no person or entity, other than Judge Michel and his counsel, contributed monetarily to this brief.

Matthew J. Dowd, *The Need for "Innovation Certainty" at the Crossroads of Patent and Antitrust Law*, CPI Antitrust Chronicle (Apr. 2017).  Judge Michel has also been invited to testify before Congress on substantive patent law issues that are critical to the Nation's economic health, most recently in June 2019.

Judge Michel is one of the nation's leading patent law experts, having a unique combination of judicial experience, legal expertise, and total absence of any financial conflicts of interest.  More recently, his amicus brief was favorably cited by the unanimous Ninth Circuit in a closely-watched antitrust case involving the licensing of standard essential patents.  *See FTC v. Qualcomm, Inc.*, 969 F.3d 974, 997, 999 n.20 (9th Cir. 2020).  His sole objective is to respectfully share his perspective as a true friend of the court to ensure that the U.S. patent system creates the optimal incentives for inventors, innovators, and investors—as it has traditionally done.

**II.    The Court Should Independently Assess Whether Ericsson's Suit Should Proceed**

Upon due consideration of the submissions to date, Judge Michel respectfully submits that this Court should independently assess whether it should maintain its jurisdiction and proceed with the FRAND dispute between Ericsson and Samsung.[2]  At this stage, too little information is available to fully assess whether the Wuhan court's apparent ex parte order is sufficient to order— and thus divest—a U.S. court from proceeding to adjudicate a live controversy that implicates global and U.S. patent rights.  Rather than simply acceding to the purportedly first-filed action, this Court ought to consider which forum will provide the most judicious outcome with respect to the asserted patent and FRAND rights.

---

[2] Judge Michel takes no current position on the ultimate merits of the patent litigation between the parties.  The litigation of the current dispute is in its infancy, and Judge Michel's brief focuses solely on whether a U.S. court should be precluded from adjudicating Plaintiffs' claims and any other issues relating to Plaintiffs' patents in the face of a foreign order that prohibits adjudicating the claims in the United States.

### A. The Chinese Court's Apparent Procedure Implicates Significant Due Process Concerns That May Adversely Affect U.S. Patent Rights

For the purposes of this brief, it is assumed that the procedures of the Wuhan court have been followed, as required by that court. Even accepting that the procedures were followed, there appear to be significant reasons to be concerned with a single, relatively unknown court in Wuhan divesting this Court—as well as every other non-Chinese court—of the authority to litigate a live FRAND dispute, at its earliest stages, that is within this Court's jurisdiction.

The Wuhan court's procedures appear designed to empower a party to obtain a world-wide injunction with no meaningful opportunity to be heard. And it is unclear if a party so enjoined has any meaningful opportunity to have such an injunction reconsidered or vacated, whether by the issuing court or an appellate court.

The timing of the Wuhan proceeding also lends credence to Ericsson's apparent concerns. According to the parties' submissions—which are taken as true for purposes of this amicus brief—Ericsson had no effective notice prior to a full injunction being issued. Samsung apparently filed suit on December 7, 2020, without any notice given to Ericsson. Four days later, on December 11, Ericsson notified Samsung of the present action. Then, on December 14, Samsung sought an anti-suit injunction—still without notice to Ericsson of the Wuhan case or the motion for an injunction. On December 17, Samsung apparently notified Ericsson of the suit, but still not the motion. Not until December 25, a legal holiday in the United States, was Ericsson first informed of the Wuhan court's issuance of the anti-suit injunction earlier the same day. It also appears that the Wuhan court never informed Ericsson about any of Samsung's submissions prior to issuing the injunction.

This timeline raises significant concerns about whether the Wuhan court's procedures provide a party such as Ericsson sufficient notice and due process. While high-stakes patent and

3

FRAND litigation will frequently involve—indeed, necessitate—swift moving actions, they must also ensure that the involved parties have ample opportunity to be heard before the court of first instance makes a decision that effectively precludes every other court throughout the world from being able to adjudicate a case—or even to consider the propriety of the injunction at all.  If that happens, competing sovereignties may well implement procedures that encourage a race to the bottom in terms of procedural protections of notice and process.

The concerns about procedural protections are, in part, why U.S. courts will generally not enjoin a party without providing the party an opportunity to be heard, typically through written submissions and an evidentiary hearing.  True, U.S. courts will issue a temporary restraining order ("TRO") upon ex parte application, but TROs are of limited duration.  After issuing a TRO, a U.S. court will then determine whether an injunction is proper after at least some development of the evidentiary record.  Indeed, that path is what this Court has implemented in this case.

But based on the available record (including the declaration of Prof. Kong Xiangjun), the Wuhan process is starkly different.  Prof. Kong explains that "the plaintiff is not obliged to notify the defendant of the fact of prosecution, nor is the plaintiff obliged to provide the defendant with the complaint and evidence it submitted."  ECF No. 26-12, at 6.  Indeed, Professor Kong explains that Samsung's non-notice to Ericsson "is in line with the common practice of Chinese litigation." *Id.* at 7.

Further, the Wuhan court appears to offer no opportunity for other interested parties to adequately weigh in on any decision to institute a FRAND proceeding.  As Samsung argues, the Wuhan court will purportedly have "the authority to set global FRAND rates without requiring all parties' consent." ECF No. 11, at 7-8.  This claimed authority may be all the more reason to ensure that proper notice and process are afforded to those who will be subject to a binding FRAND

4

decision.

Moreover, one could review these publicly available yet incomplete facts and reasonably conclude that Samsung took actions to affirmatively hide the Wuhan proceeding from Ericsson. While there may be nothing in the record at this point to suggest that Samsung was affirmatively hiding the Wuhan proceeding from Ericsson and there may not be any Wuhan court procedure requiring affirmative disclosure, as Professor Kong explains, Samsung's non-disclosure may be a relevant factor for this Court to consider. Injunctive relief, after all, is a question of equity. And issues of notice, timing, and course of dealings are routinely considered by courts when making decisions in equity.

Furthermore, FRAND litigations such as the present case concern immensely important issues that impact global intellectual property rights and valuations. There appears to be little reason for this Court to cede its authority to litigate a contract dispute involving patent licensing rates, including U.S. patent rights, at such an early stage. The factual record appears far from complete as to what occurred before the Wuhan court. Moreover, it appears quite feasible for both cases to proceed in parallel.

**B. Major Questions Remain About China's Intellectual Property Judicial System**

In the last handful of years, China has apparently made significant strides in its intellectual property system and its judicial system for enforcing such rights. But from what is known, serious questions remain about China's judicial system, particularly in the context of resolving major SEP FRAND disputes that will affect worldwide patent rights, including the rights of U.S. patent owners and consumers.

For instance, one of the articles Samsung itself cites suggests that there is uncertainty about the scope of relief the Wuhan court can grant. *See* ECF No. 26-8. Dated from September 2019, the article offers: "Chinese Courts only have jurisdiction on licensing conditions inside China.

5

However, the guidelines regulate that if there are no oppositions from either party or the oppositions are found to be unreasonable by the court, then the court in China may decide a global licensing rate." *Id.* at 3.  Perhaps the article is correct; perhaps not.

Samsung has also submitted declarations from Professor Kong and Judge Randall R. Rader (ret.) in support of its opposition.  Among Professor Kong's statements, he explains that, "[i]n China, a Chinese plaintiff does not win as a matter of course because the defendant is a foreigner." Kong Decl. ¶ 8.  It is notable that Samsung needs a declaration to assure this Court that a non-Chinese patent defendant has a fighting chance in a Chinese court.

With respect to Judge Rader's declaration, the Court may also want to note a different post from the same Internet blog cited in Judge Rader's declaration.  *See* Rader Decl. ¶ 19 (citing the blog chinaipr.com).  Another entry on the same blog adds apparent context to the Wuhan case:

> The facts alleged [about the Wuhan *Samsung v. Ericsson* case] do not present an unusual situation.  They are similar to other cases in China where the lack of transparency had been leveraged for strategic advantage and a case was prosecuted at an odd time in an odd court.  The Veeco case, for example, involved an injunction issued "without providing notice . . . and without hearing" in order to undermine a foreign proceeding.  The case was also filed at less well-known for court [sic] for semiconductor related litigation that had gained a recent reputation for issuing preliminary injunctions[.] As in the Samsung case, the Chinese court also had little relationship with either of the parties. Relief was also granted by the Chinese court against a US party within days of a US holiday.  A similar issue involving non-transparency arose with respect to the Inter Digital case.  Issues involving the actual date of filing of a "secretly" hidden case have also arisen from time to time, particularly under former civil procedure rules which permitted courts to avoid disclosing a filing of a case until 10 days after the case had been formally "established" and thereby led to suspicions of backdating of case filings.[3]

---

[3] China IPR, *Wuhan and Anti-Suit Injunctions* (Dec. 28, 2020), at https://chinaipr.com/2020/12/28/wuhan-and-anti-suit-injunctions/.

To be clear, Judge Michel does not purport to be an expert on Chinese patent law.  Rather, Judge Michel identifies publicly available information that appears to raise significant concerns—or at least competing views—about the sufficiency of the procedure invoked by Samsung and the Wuhan court.

This case represents a new era of global IP disputes, with parties racing to their preferred fora for litigating world-wide rates for patent licenses.  Important global disputes about critical intellectual property should not devolve into a mere question of who filed first.  More is at stake than the rote, formalistic application of the four factors of the *Unterweser* test.  While we must acknowledge the improvements the Chinese patent system has made, there appear to remain deep differences between the Chinese judicial system and the judicial systems of other major countries that have adjudicated FRAND disputes.

### III.  Conclusion

For the foregoing reasons, Amicus Curiae the Honorable Paul R. Michel (ret.) respectfully submits that this Court should grant the motion to extent necessary to preserve this Court's jurisdiction and authority to adjudicate the merits of the issues raised and any issues relating to U.S. patents.

|  |  |
|---|---|
| Dated: January 5, 2021 | Respectfully submitted, |
| OF COUNSEL:<br>Matthew J. Dowd<br>Dowd Scheffel PLLC<br>1717 Pennsylvania Avenue, NW<br>Suite 1025<br>Washington, D.C. 20006<br>(202) 559-9175<br>mdowd@dowdscheffel.com | By: */s/ Peter J. Corcoran III*<br>Peter J. Corcoran III<br>Texas Bar No. 24080038<br>Corcoran IP Law PLLC<br>4142 McKnight Road<br>Texarkana, TX 75503<br>(903) 701-2481<br>peter@corcoranip.com<br><br>Counsel for *Amicus Curiae*<br>Hon. Paul R. Michel (ret.) |

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of this document was served electronically on January 5, 2021, through this Court's CM/ECF system on all counsel of record who are registered to receive notices by email of electronic filings in this case.

*/s/ Peter J. Corcoran III*
Peter J. Corcoran III