# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

|  |  |
|---|---|
| ERICSSON INC. AND<br>TELEFONAKTIEBOLAGET LM ERICSSON,<br><br>      Plaintiff,<br><br>  vs.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br>AND SAMSUNG RESEARCH AMERICA,<br><br>      Defendants. | Civil Action No.  2:20-cv-380-JRG |

## ERICSSON'S REPLY IN SUPPORT OF ANTI-INTERFERENCE INJUNCTION RELATED TO SAMSUNG'S LAWSUIT FILED IN THE WUHAN INTERMEDIATE PEOPLE'S COURT OF CHINA

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ...................................................................................................... 3

   A.   This Court Should Enjoin Samsung's Threats To Its Jurisdiction. ..................... 3

      1.   This Court's Jurisdiction Does Not Threaten The Wuhan Court's Jurisdiction. ........... 5

      2.   This Court Should Take Steps To Protect Its Jurisdiction While Ericsson Seeks Relief In Wuhan. ................................................................................................ 6

      3.   The Wuhan Injunction Will Prevent Resolution Of The Parties' Dispute. .................... 7

      4.   The Fairness Of Chinese Courts Is Not At Issue In This Motion. ................................ 8

      5.   The Antisuit Injunctions Issued By Other U.S. Courts Do Not Support Samsung's Position. ................................................................................................. 8

      6.   Whether The Wuhan Court Is "First-Filed" Is Not Relevant. ..................................... 10

   B.   Ericsson's Requested Relief Is Appropriate And Narrowly Tailored. ........................... 11

   C.   Ericsson Inc. Has Standing. ......................................................................................... 14

III. CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Apple Inc. v. Motorola Mobility, Inc.*,
No. 11-CV-178-BBC, 2012 WL 7989412 (W.D. Wis. Nov. 8, 2012) ....................................8

*Bank of Am., N.A. v. UMB Fin. Servs., Inc.*,
618 F.3d 906 (8th Cir. 2010) ....................................14

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991)....................................12

*Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*,
651 F.2d 877 (3d Cir. 1981), *aff'd sub nom. Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982)....................................10

*Farguson v. MBank Houston, N.A.*,
808 F.2d 358 (5th Cir. 1986) ....................................15

*HTC v. Ericsson*,
407 F. Supp. 3d. 631 (E.D. Tex. 2019)....................................4

*I.J.A., Inc. v. Marine Holdings, Ltd.*,
524 F. Supp. 197 (E.D. Pa. 1981) ....................................11

*Iragorri v. United Techs. Corp.*,
274 F.3d 65 (2d Cir. 2001)....................................4

*Karaha Bodas Co. v. Perusahaan*,
264 F. Supp. 2d 470 (S.D. Tex. 2002), *rev'd on other grounds*, 335 F.3d 357 (5th Cir. 2003)....................................6, 12

*Laker Airways Ltd. v. Sabena*,
731 F.2d 909 (D.C. Cir. 1984) .................................... passim

*LG Display v. Obayashi*,
919 F. Supp. 2d 17 (D.D.C. 2013) ....................................11

*Microsoft v. Motorola*,
696 F.3d 872 (9th Cir. 2012) ....................................10

*Microsoft v. Motorola*,
795 F.3d 1024 (9th Cir. 2015) ....................................9

*Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*,
925 F.2d 1193 (9th Cir. 1991) ....................................3, 8

*Positive Software Sols., Inc. v. New Century Mortg. Corp.*,
    619 F.3d 458 ...................................................................................................13

*Quaak v. Klynveld*,
    361 F.3d 11 (1st Cir. 2004)............................................................................8

*Ronar, Inc. v. Wallace*,
    649 F. Supp. 310 (S.D.N.Y. 1986) ...............................................................11

*Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*,
    796 F.2d 821 (5th Cir. 1986) ..........................................................................4

*Teck Metals Ltd. v. Certain Underwriters at Lloyd's*,
    2009 WL 4716037 (E.D. Wash. Dec. 8, 2009) ...........................................8, 9

*Voda v. Cordis Corp.*,
    476 F.3d 887 (Fed. Cir. 2007)........................................................................8

# I.     INTRODUCTION

As the Court is already aware, Samsung filed its Wuhan suit without informing Ericsson, even a week after Ericsson informed Samsung of this case. As the Court is also aware, Samsung then secretly asked the Wuhan court to enjoin essentially all related actions worldwide. In its briefing, Samsung attributes the secrecy of its Wuhan proceedings to Chinese law, which, Samsung says, leaves service of documents in the hands of the Wuhan court.

The Wuhan court filings Samsung recently produced tell a different story. In its "Application for Delaying Service," Samsung *specifically asked* the Wuhan court to deny Ericsson notice or an opportunity to be heard on its antisuit injunction—in Samsung's words, to "hold service"—before that injunction issued. Mathews Dec., Exs. 11–12.[1] Samsung did so *expressly* to deny non-Chinese courts a chance to preserve their jurisdiction. It told the Wuhan court that if courts around the world (Samsung named Germany, India, and the UK) knew of Samsung's injunction motion, they would take action to preserve their jurisdiction and issue the very relief Ericsson seeks here. *Id.* Now, Samsung insists it would offend international comity for this Court to issue the same relief that, less than three weeks ago, Samsung said would be readily forthcoming from other jurisdictions absent its secrecy.

As for why it filed its action in Wuhan, Samsung has no good answer. Samsung implies that *any* FRAND dispute can be litigated there, because China is a "manufacturing hub for much of the mobile industry" generally and "has become a frequent venue for cellular SEP disputes." Dkt. #26 at p. 7. But Samsung does not dispute that China is a much smaller market for both Ericsson and Samsung while the U.S. is both parties' largest market; that China was not a locus

---

[1] Cites to any declaration or exhibit refer to the declarations filed in support of the reply. Declarations or exhibits filed with Ericsson's motion are now cited by their docket number.

of their negotiations, while this District was; nor does Samsung dispute that this Court has jurisdiction. And while Samsung claims the Wuhan suit is "first-filed" seventeen times in its opposition, Samsung correctly told the Federal Circuit in 2018 that deferring to the "first-filed" action is not the rule for parallel international litigation.

Nevertheless, Samsung argues that Wuhan is the best place to resolve this dispute, because that court would provide a world-wide adjudication. However, Samsung has only asked the Wuhan court to adjudicate *Ericsson's* FRAND commitment for *Ericsson's* 4G and 5G patents, not Ericsson's 2G and 3G patents, and none of Samsung's SEPs. Ericsson's FRAND commitment is expressly conditioned on receiving a cross-license from Samsung, and the parties have only ever negotiated towards a cross-license. Maharaj Dec., ¶¶ 4, 6. Thus, as Samsung has structured it, the Wuhan suit could *never* resolve the parties' dispute because Samsung is not entitled to the one-way license that the Wuhan suit contemplates. This case, in which both parties' FRAND obligations are at issue, is the only one that can resolve the parties' dispute.

Ericsson brings this narrowly tailored motion to preserve the status quo and to allow this Court to determine its own jurisdiction. Federal courts have an obligation to exercise their jurisdiction concurrently with other foreign courts. Ericsson's proposed injunction does not prevent Samsung from asking this Court to abstain in deference to the Wuhan proceeding. If and when Samsung raises that request before this Court, it should be denied, because Wuhan has little connection to this dispute, and because the Wuhan suit cannot adjudicate U.S. patent infringement claims or the full scope of the FRAND claims in this case. But any such decision should be made by *this* Court, after full notice and an opportunity to be heard—not by a secret foreign proceeding. When, as here, a party uses a foreign court to try to block a U.S. court from exercising its concurrent jurisdiction, the U.S. court must protect its jurisdiction—just as

Samsung agrees other countries' courts would.

Finally, although Samsung suggests it would be extraordinary to order Samsung to indemnify Ericsson for fines from the Wuhan court, the only thing extraordinary is Samsung's challenge to this Court. Ericsson's injunctive request is narrowly tailored to address Samsung's remarkable conduct. Because the threat of exorbitant fines against Ericsson is the *mechanism* Samsung is using to effectively divest this Court's jurisdiction, restoring the status quo means that Ericsson must be shielded from these fines. If the Wuhan court imposes those fines *sua sponte*, Samsung has no one but itself to blame.

## II.    ARGUMENT

### A.    This Court Should Enjoin Samsung's Threats To Its Jurisdiction.

When the courts of two different sovereigns each possess jurisdiction over a dispute, international comity instructs that both cases "proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other." *Laker Airways Ltd. v. Sabena*, 731 F.2d 909, 926–27 (D.C. Cir. 1984). Until preclusive judgment in a foreign proceeding, "federal courts have an obligation to exercise their jurisdiction concurrently with other [foreign] courts." *Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193, 1194 (9th Cir. 1991).[2] Parallel foreign cases are allowed to proceed, but, "where the foreign proceeding . . . attempts to carve out exclusive jurisdiction over concurrent actions, an injunction may be necessary to avoid the possibility of losing validly invoked jurisdiction." *Laker Airways*, 731 F.2d at 929.

Samsung agrees, as it told the Federal Circuit in 2018 in its case against Huawei:

---

[2] Under the circumstances, any judgment from the Wuhan court will not have preclusive effect in this case. However, that is not a ripe issue for the Court.

> [T]here is no doubt that the "need to protect the court's own jurisdiction" is a "clear policy that all federal courts recognize" . . . and that therefore "the need for an antisuit injunction crests" where "a party institutes a foreign action in a blatant attempt to evade the rightful authority of the forum court" . . . . [T]he district court should independently decide all the issues presented to it, unless the judgment of another forum precludes it from doing so.

Mathews Dec., Ex. 14 at p. 37.

Samsung's antisuit injunction is vexatious because it threatens the Court's jurisdiction. Under *Laker Airways* and *Unterweser*, this Court has the power to respond. The relief Ericsson requests is narrow: that Samsung should come to *this Court* explaining why this case should be stayed or why Ericsson should be barred from enforcing the full scope of its United States patent rights. Because Samsung had little chance of prevailing on such a motion, it made the decision to circumvent this Court entirely.[3]

Samsung does not dispute that this Court has jurisdiction over this case and does not seriously dispute that the United States, and this District specifically, have far more connection to this dispute than Wuhan. Rather, Samsung fires scattershot arguments to imply it would be arrogant for this Court to protect its jurisdiction, because to do so would call into question the legitimacy of Chinese courts. The legitimacy of Chinese courts is not at issue in this motion— only Samsung's bad behavior is. None of its arguments are availing.

---

[3] "*[F]orum non conveniens* is the only doctrine under which the Supreme Court has approved dismissal in favor of foreign courts." Restatement (Fourth) of Foreign Relations Law § 424 cmt (h) (2018). For this Court to dismiss under *forum non conveniens*, Samsung would have to show—among other things—a significant connection between China and this dispute. *See Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 831 (5th Cir. 1986). It cannot do so, and even if it could, that would not be enough; motions for *forum non conveniens* can be granted only out of "genuine concern with convenience," not to allow "forum-shopping." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 75 (2d Cir. 2001). This District has a strong connection to the parties (including multiple suits in 2006 and 2013) and many of the relevant FRAND issues in this case. *See HTC v. Ericsson,* 407 F. Supp. 3d. 631 (E.D. Tex. 2019).

1. **This Court's Jurisdiction Does Not Threaten The Wuhan Court's Jurisdiction.**

Samsung asserts that the Wuhan court's injunction is simply an "appropriate measure to protect [its] jurisdiction," but the Wuhan court's jurisdiction is not under threat. *See* Dkt. #26 at 11. Ericsson is only seeking—consistent with principles of international comity—that this Court vindicate *its* authority to exercise its jurisdiction concurrently with the Wuhan court. If Samsung was concerned with protecting the Wuhan court's jurisdiction, it could have asked for narrow, *defensive* relief like Ericsson is requesting here. It did not.[4]

Samsung cites to *Laker Airways* and *Karaha Bodas*, but neither case supports its position, and *Laker Airways* affirmatively undercuts it. Samsung claims that *Laker Airways* stands for the proposition that antisuit and anti-interference injunctions must be issued sparingly, because they "interfere with the jurisdiction of foreign courts and invite escalation." Dkt. #26 at p. 16. True— when such injunctions are offensive—but *Laker Airways affirmed* an anti-interference injunction to protect the district court's jurisdiction, where, as here, a foreign court took aim at ending U.S. proceedings. As *Laker Airways* recognized, *defensive* injunctions, like the one Ericsson seeks here, do not interfere with a foreign court's jurisdiction. *See Laker Airways*, 731 F.2d at 938 (comparing the effect of *defensive* anti-interference injunctions like Ericsson's with the effect of *offensive* antisuit injunctions like Samsung's).

Samsung's other case, *Karaha Bodas*, is entirely inapposite. *Karaha* involved a foreign arbitration under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards—an international *treaty*, signed by the U.S. and implemented by the Federal

_____

[4] Samsung sought an offensive injunction, not a defensive one, and the Wuhan court obliged. *See* Dkt. #26-9 at pp. 4–5 (listing Samsung's requested injunctive relief); Dkt. #26-9 at pp. 12–14 (listing the terms of the antisuit injunction).

Arbitration Act ("FAA"). 335 F.3d 357, 360, 365 (5th Cir. 2003). There, the district court issued an antisuit injunction prohibiting the appellant from prosecuting an action it initiated in an Indonesian court to annul a Swiss arbitration award and enjoin enforcement of the award. *Id.* The Fifth Circuit reversed because the only jurisdiction that the district court had left to defend was very narrow: The treaty "restricted [the district court] to enforcing or refusing to enforce the arbitral award," something that the Indonesian proceeding was not *yet* interfering with. *Id.* at 370. The scope of this Court's jurisdiction is not limited by treaty or the FAA.[5]

### 2. This Court Should Take Steps To Protect Its Jurisdiction While Ericsson Seeks Relief In Wuhan.

After successfully denying Ericsson a chance to be heard *anywhere* before the Wuhan court made its decision, Samsung now criticizes Ericsson for coming to this Court rather than the Wuhan court for relief. Yet Samsung cites no legal authority requiring that Ericsson petition the Wuhan court before asking this Court to protect its jurisdiction. Such a requirement would subject this Court's jurisdiction to the mercy of any foreign tribunal to which Samsung cared to go. In fact, most anti-interference injunctions are filed and granted *before* the foreign court even rules on the antisuit injunction, a fact Samsung acknowledged in its secrecy application to the Wuhan court. Mathews Dec. Exs. 11–12. The real issue is Samsung failed to "avail[] itself of the proper recourse under [U.S.] procedure" and seek a stay of Ericsson's action in favor of its Chinese action—instead, it "launched a collateral attack against" this Court's jurisdiction in China. Dkt. #26 at p. 9. In any event, Ericsson has filed papers in Wuhan seeking reconsideration

---

[5] Samsung also cites to *MacPhail v. Oceaneering Int'l, Inc.*, which is not relevant here. 302 F.3d 274, 276–78 (5th Cir. 2002) (vacating injunction where: (1) the domestic and foreign lawsuits were not duplicitous; (2) the parties had signed a release with a forum-selection clause giving *exclusive* jurisdiction of all disputes arising out of the settlement to a foreign court; and (3) the foreign court had *already approved the release and settlement*).

of the antisuit injunction and opposing jurisdiction in Wuhan.

### 3. The Wuhan Injunction Will Prevent Resolution Of The Parties' Dispute.

Samsung argues that the Wuhan antisuit injunction is narrow, and Ericsson can move forward on four of its claims here. Dkt. #26, at p. 14. To the contrary, the Wuhan injunction will prevent a complete resolution of this case.

All five FRAND counts in Ericsson's original complaint (and the first five counts in its amended complaint) implicate both Samsung and Ericsson's standard essential patents. The parties were engaged in cross-licensing negotiations and *never* negotiated towards a one-way license for Ericsson's essential patents. Maharaj Dec. ¶¶ 4–6. Ericsson expressly conditioned its contractual FRAND commitment on receiving a reciprocal license. *Id.*, Ex. E. Samsung's Wuhan complaint only puts at issue Ericsson's FRAND commitment, while ignoring the reciprocity requirement and Samsung's own FRAND commitments. Consequently, the Wuhan suit, and the antisuit injunction it spawned, will not and cannot resolve the parties' dispute because Ericsson owes Samsung no license without a cross-license. *See Laker Airways*, 731 F.2d at 930 (protecting U.S. court jurisdiction is "particularly true if the foreign forum did not offer the remedy sought in the domestic forum.").

Samsung also argues "there is no need for parallel patent actions involving the same SEPs," because it asked for a FRAND adjudication in China as to Ericsson's 4G and 5G essential patents, and has "agreed to be bound by the Chinese court's findings." But international comity favors parallel proceedings, and in any event, Samsung's consent is not enough. ***Ericsson does not consent to the Chinese courts creating a licensing contract between Ericsson and Samsung.*** Maharaj Dec. ¶ 7. Although national courts can evaluate negotiating conduct and licensing offers to determine whether FRAND has been breached, the Chinese courts will not

adjudicate Ericsson's U.S. patent infringement claims or render Ericsson's U.S. patents invalid, just as the reverse is true. *See Voda v. Cordis Corp.*, 476 F.3d 887, 901 (Fed. Cir. 2007); Zhipei Dec. ¶ 5. No court, whether here or in China, can simply create binding contracts for private parties without their express consent. *See Apple Inc. v. Motorola Mobility, Inc.*, No. 11-CV-178-BBC, 2012 WL 7989412, at *3 (W.D. Wis. Nov. 8, 2012); Zhipei Dec. ¶ 7.[6]

### 4.     The Fairness Of Chinese Courts Is Not At Issue In This Motion.

Samsung spends several pages and submits several declarations praising Chinese courts, but the quality of Chinese courts is not the point. Federal courts protect their jurisdiction from interference against courts in the United Kingdom and Canada, countries with very similar judicial systems to our own. *See, e.g.*, *Laker Airways*, 731 F.2d at 930 (UK courts); *see also Quaak v. Klynveld*, 361 F.3d 11, 14 (1st Cir. 2004) (Belgium courts); *Neuchatel*, 925 F.2d at 1194 (9th Cir. 1990) (Swiss courts); *Teck Metals Ltd. v. Certain Underwriters at Lloyd's*, 2009 WL 4716037, *1 (E.D. Wash. Dec. 8, 2009) (Canadian courts). Therefore, despite Samsung's statement two years ago that Chinese courts are "antithetical to the United States judicial system," lack "due process requirements," and are incapable of providing Samsung with a "full and fair FRAND determination," Dkt. #11 at p. 15, the question is not whether the Wuhan court is fair. The question is whether a foreign court can claim exclusive jurisdiction at the expense of this Court's authority to decide its own jurisdiction. It cannot.

### 5.     The Antisuit Injunctions Issued By Other U.S. Courts Do Not Support Samsung's Position.

Samsung asserts that this Court should acquiesce to the Wuhan antisuit injunction, because in various other cases, U.S. courts issued injunctions that Samsung claims are similar to

---

[6] Further, any enforcement of a Chinese judgment would be against assets located in China, i.e., Chinese patents. Zhipei Dec. ¶ 8.

the Wuhan injunction. Samsung is mistaken. None of the U.S. cases to which Samsung cites are remotely similar. All involved the consent of the enjoined party and only blocked enforcement of injunctions for a small number of patents.

In *TCL v. Ericsson*, the U.S. court only issued an antisuit injunction ***after*** both parties stipulated to a bilateral antisuit injunction and agreed the U.S. court would adjudicate a full cross-license between the parties.[7] None of those things occurred here.

*Huawei v. Samsung,* as Samsung itself told the Federal Circuit,[8] was unique. There, Huawei simultaneously filed both a Chinese patent infringement suit *and* a U.S. breach of FRAND suit against Samsung. Mathews Dec., Ex. 14 at p. 12–13. The Chinese patent action finished first, which resulted in an injunction, subject to appeal. *Id.* at p. 20. Samsung sought, and the U.S. court issued, an injunction prohibiting Huawei from enforcing the Chinese patent injunctions. *Id.* at p. 22. Samsung argued the Chinese courts did not fully consider the global FRAND issues. *Id.* at p. 10–11. Samsung also argued that the circumstances were particularly odd since Huawei initiated both the U.S. and Chinese cases. *See id.* at p. 28. Unlike in *Huawei*, Ericsson did not initiate the suit in Wuhan and does not consent to the Wuhan court adjudicating a global FRAND rate. Nor is Ericsson using a two-patent action to sidestep a global FRAND adjudication.

*Microsoft v. Motorola* is also different for similar reasons. Motorola, the patent owner, acquiesced to the U.S. court adjudicating global RAND issues. *See Microsoft v. Motorola*, 795

---

[7] Mathews Dec., Ex. 15 at p. 11 ("[T]his Court determines that a bilateral preliminary anti-suit injunction is warranted based on the parties' mutual agreement.").
[8] Mathews Dec., Ex. 14 at p. 53.

F.3d 1024, 1038–39 (9th Cir. 2015).[9] While the case was proceeding, a German court issued injunctions related to patents that were part of the U.S. proceeding without considering whether Motorola complied with its RAND obligations. The U.S. court blocked enforcement of the German injunction. *See Microsoft v. Motorola*, 696 F.3d 872, 878–79 (9th Cir. 2012). Here, Ericsson has not acquiesced to a global adjudication, and Samsung would be able to raise FRAND defenses in any U.S. action.

Notably, Samsung does not cite one case where a U.S. court refused to take action to protect its own jurisdiction in the face of an antisuit injunction. On the other hand, courts in the UK, Germany, France, and India have all issued anti-interference orders protecting their own jurisdiction against antisuit injunctions like the one Samsung secretly obtained.[10] This is precisely *why* Samsung sought the injunction in secret: It knew non-Chinese courts would not abide such a brazen threat to decide their own jurisdiction. Mathews Dec., Exs. 11–12.

### 6. Whether The Wuhan Court Is "First-Filed" Is Not Relevant.

Finally, Samsung asserts that it is "long-settled" that a first-filed action receives deference. This is wrong. The first-filed rule applies only "when similar cases have been filed in ***different federal district courts*** . . . ." *Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877, 887 n.10 (3d Cir. 1981) (emphasis added), *aff'd sub nom. Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982). Indeed, "[t]he [first filed] rule has never been applied, and in fact it was never meant to apply where the two courts involved are ***not courts of the same sovereignty***." *Id.* (emphasis added). Samsung agrees. In 2018, it told the

---

[9] *See also* Mathews Dec., Ex. 17 at p. 23 ("COURT: [Motorola counsel] . . . told me that [Motorola] needed to do more discovery to set the RAND rate. . . .").

[10] Mathews Dec., Ex. 16 (issuing anti-interference order); Dkt. #11-2 (issuing anti-interference order); *see also, e.g.*, Mathews Dec., Ex. 18 (summarizing recent developments before the Paris High Court, the Munich Landgericht).

Federal Circuit that whether a foreign FRAND action was filed first "makes no difference as to the propriety of an anti-suit injunction" and that a U.S. court should "protect their exercise of jurisdiction" irrespective of pleadings timing. *See* Mathews Dec., Ex. 14 at p. 48.[11]

Samsung cites *Kaepa v. Achilles*, but it gets the case wrong. 76 F.3d 624, 626 (5th Cir. 1996). In *Kaepa*, the Fifth Circuit did not rely on the first-filed rule at all. Rather, the Fifth Circuit affirmed an antisuit injunction because the defendant filed a brand new lawsuit with identical claims in Japan, after a year of U.S. litigation and with trial approaching, for the sole purpose of derailing the efforts in the United States. *Id.* at 626.

Finally, the Court does not owe deference to a suit motivated by forum-shopping and a deliberate attempt to deprive this Court of its authority. The Court should not reward Samsung for being the first to file a secret suit in an inconvenient forum with minimal ties to the dispute.[12]

**B.    Ericsson's Requested Relief Is Appropriate And Narrowly Tailored.**

Samsung takes issue with Ericsson's request for indemnification, but the indemnification provision is a limited exercise of the Court's inherent authority to protect its jurisdiction. The *admitted* purpose of Samsung's secrecy motion was to deprive this Court of jurisdiction by preventing Ericsson from obtaining an anti-interference injunction before the antisuit injunction issued. Mathews Dec., Exs. 11–12. If not for Samsung's secrecy, Ericsson would have immediately sought an anti-interference injunction, making the indemnity provision

---

[11] Certainly, federal courts do not abstain in the face of a *newly* filed foreign case. "Where foreign litigation is in its incipiency, motions to stay the domestic action are properly denied. This is particularly true where the range of possible relief afforded by the two courts differs in scope." *I.J.A., Inc. v. Marine Holdings, Ltd.*, 524 F. Supp. 197, 199 (E.D. Pa. 1981); *see also LG Display v. Obayashi*, 919 F. Supp. 2d 17, 25 (D.D.C. 2013).

[12] Federal courts need not defer in the face of obvious forum-shopping. *See William Gluckin* 407 F.2d 177, 180 (2d Cir. 1969) ("The second example is where forum shopping alone motivated the choice of the situs for the first suit."); *see also Ronar, Inc. v. Wallace*, 649 F. Supp. 310 (S.D.N.Y. 1986).

unnecessary.[13] But now that Samsung executed its plan, it argues that the indemnity order is "legally defective" and that that it cannot be responsible if the Wuhan court imposes fines on Ericsson "*sua sponte*." Dkt. #26 at pp. 6, 17–19. In other words, Samsung thinks it has achieved a *fait accompli* and that this Court—not Samsung—must back down. That is not the law.

As the D.C. Circuit explained in *Laker*: "our law has not departed so far from common sense that it is reversible error for a court not to capitulate to a foreign judgment . . . designed to prevent the court from resolving legitimate claims placed before it." 731 F.2d at 939; *see also Karaha Bodas Co. v. Perusahaan*, 264 F. Supp. 2d 470, 477 (S.D. Tex. 2002), *rev'd on other grounds*, 335 F.3d 357 (5th Cir. 2003) (finding that "the indemnification provision of the temporary restraining order is fully justified and necessary" to prevent movant from being assessed a $500,000.00 per-day fine). It has "long been understood" that courts have certain implied powers "necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (affirming district court's issuance of sanctions totaling nearly $1 million under its inherent powers for a litigant's bad-faith conduct, which included an attempt to deprive the Court of jurisdiction through actions performed outside the confines of the district court). This implied power "transcends a court's equitable power" and serves the dual purpose of (1) "vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court," and (2) "mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy." *Id.* at 46 (alternations in original) (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)). It is hard to think of a greater threat to U.S. judicial authority than what Samsung did here.

Samsung relies on *Positive Software* and *Maxxam* for the premise that indemnities related

_____

[13] As Samsung told the Chinese court in its secrecy motion, any number of courts around the world would have granted Ericsson such relief. *See* Mathews Dec., Exs. 11–12.

to parallel proceedings are *per se* legally defective. Both cases are easily distinguishable because they concern sanctions related to parallel litigation that ***did not*** challenge the authority of the Court to adjudicate the underlying case. Of course, the exercise of inherent authority is available when "essential to preserve the authority of the court." *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (quoting *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 476 (5th Cir. 1996)).

Moreover, unlike in *Positive Software* and *Maxxam*, the indemnity provision is not a sanction for Samsung's conduct—however egregious—in the Wuhan suit. Rather, it the most narrowly tailored mechanism to safeguard the Court's jurisdiction from Samsung's antisuit injunction. It is necessary and appropriate under the circumstances only because Samsung secretly and deliberately took steps—*after* this case was filed in this District—to deprive this Court of jurisdiction and limit Ericsson's U.S. patent rights. Additionally, the Court should order Samsung to take all possible steps to withdraw the Wuhan antisuit injunction as it pertains to the United States, which would moot the indemnity issue entirely.

Finally, in the alternative, rather than require indemnity, the Court could bar Samsung from having any further involvement in the Wuhan suit unless and until any fine related to the antisuit injunction is lifted or indemnified. The purpose of such a conditional antisuit injunction is solely to protect this Court's jurisdiction. Ericsson did not propose this remedy originally, because it does not intend to use this Court to divest the Wuhan court of jurisdiction. But to the extent the Court is concerned about a monetary indemnity under the circumstances (which, as explained above, would be appropriate), the modified proposal is the next-most targeted

mechanism to protect the Court's jurisdiction and authority.[14]

### C.    Ericsson Inc. Has Standing.

Finally, Samsung's argument that Ericsson Inc. lacks standing to bring the instant motion is puzzling since the antisuit injunction purports to cover all Ericsson affiliates, including Ericsson Inc. *See* Dkt. #26-9 at 12–14 (enjoining "[Ericsson] and its affiliates . . . ."). Surely, Ericsson Inc. has standing to challenge an injunction purporting to govern its conduct. Moreover, the factual basis of Samsung's argument, that Ericsson Inc. does not own any Ericsson SEPs, is wrong. For example, Ericsson Inc. owns U.S. Patent No. 6,996,380, which was declared essential to the 4G standard on December 20, 2010. Maharaj Dec. ¶ 3, Ex. D; Ex. E at p. 3.

Samsung's argument further ignores that Ericsson Inc. sells standard compliant products in the United States; its employees participated extensively in Ericsson's FRAND negotiations with Samsung; and it would benefit from any FRAND agreement between the parties. The antisuit injunction harms Ericsson Inc. because it would force the parties to litigate *just Ericsson's* FRAND obligations to Samsung in China, while freezing Ericsson Inc.'s litigation to resolve the parties' mutual obligations here and obtain a license to Samsung's patents. Thus, Samsung's standing argument simply underscores the unfairness of its litigation strategy.

Finally, regardless of the Wuhan injunction's harm to any *party*, the Court can and should enjoin Samsung to prevent harm to the Court. "Courts have a *duty* to protect their legitimately conferred jurisdiction." *Laker Airways*, 731 F.2d at 927 (emphasis added). Further, the courts have "the inherent ability to" protect that jurisdiction by *sua sponte* "enjoining the parties from participating in" other proceedings that interfere with that jurisdiction. *See Bank of Am., N.A. v.*

---

[14] Samsung complains that the Court's injunction is overbroad insofar as it may cover Ericsson's assertion of foreign patent rights. Ericsson seeks only an injunction to protect its rights within the United States.

*UMB Fin. Servs., Inc.*, 618 F.3d 906, 914–15 (8th Cir. 2010); *see also Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 360 (5th Cir. 1986). So in addition to being meritless, Samsung's standing argument is beside the point.

## III.    CONCLUSION

Samsung cannot use a foreign court to covertly strip this Court's jurisdiction and then argue there is nothing that can be done about it. Article III courts have the power to act. Ericsson respectfully asks the Court to grant Ericsson's anti-interference injunction to vindicate this Court's jurisdiction and to protect United States patent rights from foreign interference.

Dated: January 5, 2021.                                         **McKool Smith, P.C.**

/s/ *Theodore Stevenson, III*
Theodore Stevenson, III
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
Nicholas Mathews
Texas State Bar No. 24085457
nmathews@McKoolSmith.com
**McKool Smith, P.C.**
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Christine Woodin
Texas State Bar No. 24199951
California Bar No. 295023
cwoodin@mckoolsmith.com
**McKool Smith, P.C.**
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone: (213) 694-1200
Telecopier: (213) 694-1234

Blake Bailey
Texas State Bar No. 24069329
bbailey@mckoolsmith.com
**McKool Smith, P.C.**
600 Travis Street, Suite 7000
Houston, TX 77002
Telephone: (713) 485-7300
Telecopier: (713) 485-7344

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@McKoolSmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@McKoolSmith.com
**McKool Smith, P.C.**
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (903) 923-9001

**ATTORNEYS FOR PLAINTIFFS**

**ERICSSON INC. AND
TELEFONAKTIEBOLAGET LM
ERICSSON**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on January 5, 2021.

/s/ *Nicholas Mathews*
Nicholas Mathews
