# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ERICSSON INC. AND TELEFONAKTIEBOLAGET LM ERICSSON,<br><br>Plaintiffs,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO. LTD., SAMSUNG ELECTRONICS AMERICA, INC., AND SAMSUNG RESEARCH AMERICA,<br><br>Defendants | Civil Action No. 2:20-cv-380-JRG |

**SAMSUNG'S SURREPLY IN OPPOSITION TO ERICSSON'S APPLICATION FOR ANTI-INTERFERENCE INJUNCTION RE: SAMSUNG'S LAWSUIT IN CHINA**

# TABLE OF CONTENTS

**INTRODUCTION** .................................................................................................................... 1
**ARGUMENT** ........................................................................................................................... 2
1. Ericsson Does Not Contest the Chinese Court's Jurisdiction, the Legality of Samsung's Filings, or the Availability of Legal Recourse in China. ....................................................... 2
2. There is No Threat to This Court's Jurisdiction. ................................................................. 4
3. Binding Precedent Recognizes the Importance of the First-Filed Rule in International Controversies of this Type. ................................................................................................... 8
4. Ericsson's Requested Injunction is Overbroad. ................................................................. 11
5. Ericsson Inc. Lacks Standing to Seek Relief on Behalf of its Co-Plaintiff Parent Company. ............................................................................................................................ 13
**CONCLUSION** ..................................................................................................................... 13

**INTRODUCTION**

Ericsson's briefs largely ignore or try to shift Ericsson's burden to support its request for the "extraordinary relief" of a preliminary injunction. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 366 (5th Cir. 2003). Ericsson casts aspersions at Samsung's filings in China, but its true complaint appears to be that Samsung moved first. Samsung and Ericsson are sophisticated multinational companies with a lengthy mutual history of licensing disputes that sometimes end amicably and sometimes include litigation. Here, as their worldwide cross-license neared expiration, both parties pursued *ex parte* processes in different courts. Samsung undisputedly did so first, in China, in a court with jurisdiction over Ericsson, and in full compliance with applicable law. And Samsung posted a substantial bond with the Chinese court, precisely to protect Ericsson's interests. The Chinese court has undisputed competence to resolve Ericsson's contractual obligations to ETSI and third party beneficiary Samsung that underlie the parties' global contract dispute. The Chinese action served the legitimate purpose of seeking to avoid unnecessary and piecemeal litigation around the world on the single issue of FRAND terms and conditions, including a FRAND rate—and that court's injunction likewise serves the tailored purpose of protecting its jurisdiction to do just that.

In *Unwired Planet*, a case in the UK Supreme Court, Ericsson touted a non-US court's ability to set a global rate, and forcefully contended that the alternative of piecemeal country-by-country litigation would be unworkable and unwise. *See* Exhibit 1 to this Surreply. In this case, Ericsson argues the opposite, contending that resolution in China of the parties' predicate contract dispute poses a threat to this Court's jurisdiction, and that this Court should not respect the Chinese court's order. Worse still, having now filed actions in the ITC, Germany, Belgium, and the Netherlands, Ericsson now seems poised to pursue the exact kind of world-wide piecemeal

litigation that prompted Samsung's initial filing of the Chinese action and which Samsung made in the hopes of efficiently resolving the dispute between the parties.

To be clear, there is no evidence that the Chinese court cannot legally set a worldwide rate, nor is there evidence that the Chinese court cannot fairly adjudicate the dispute before it. And although Ericsson contends that the legitimacy of the Chinese courts is not at issue, it offers no legal support for the relief it seeks, and ultimately depends on the apparent hope that this Court will declare (in substance or effect) the Chinese action illegitimate. Nor does the Chinese court's injunction somehow strip this Court of all jurisdiction—it is tailored to the core contract dispute, and by its terms does not prevent Ericsson from *asserting* patents in this Court, though it ultimately might have collateral effects on remedies. What is overbroad, however, is the remedy Ericsson seeks, which goes far beyond anything tailored to effectuating this Court's jurisdiction and which, through its indemnity provision, would create direct conflict with the Chinese court's ability to enforce its own orders—regardless of Samsung's compliance with this Court's orders. Ericsson's solution is essentially to ask this Court to compel Samsung to stand down in the China court. That is the opposite of comity and the opposite of the kind of efficient resolution Ericsson advocated for so passionately in *Unwired Planet*.

Respectfully, the Court should deny Ericsson's motion for injunction and dissolve the TRO.

**ARGUMENT**

1. **Ericsson Does Not Contest the Chinese Court's Jurisdiction, the Legality of Samsung's Filings, or the Availability of Legal Recourse in China.**

Ericsson labels Samsung's filings in China as "secret" or "covert," Dkt. 30, at 1, 2, 6, 10, 11, 12, 13, but fails to support its suggestion that the procedures followed in China were in any way improper or make the resulting order illegitimate. Ericsson contends that Samsung sought to

"deny Ericsson notice or an opportunity to be heard," Dkt. 30 at 1, but on its face, the injunction order recites the procedure under which Ericsson may seek relief. Dkt. 26-9 (ASI order) at 13; Dkt. 26-12 (Prof. Kong decl.) ¶¶ 19-21. Ericsson does not contend that procedure is unavailable, inadequate, or actually denies Ericsson "notice or an opportunity to be heard." To be sure, the procedure followed in China was *ex parte* at the outset, much like TRO procedures in American courts, including the one Ericsson followed here, for the reasons that Ericsson gave for proceeding *ex parte*: "Ericsson did not confer this *ex parte* motion with anyone at Samsung…. Ericsson has reason to believe that providing advance notice of this Motion will cause Samsung to take immediate action … that could prevent Ericsson from further availing itself of this Court's jurisdiction prior to the resolution of this Motion." What Samsung did was no more "in secret" than Ericsson.

Again, Samsung and Ericsson are sophisticated companies with a lengthy history and a worldwide dispute over licensing rates that was ripening at the close of 2020 as their global cross-licenses approached expiration. Samsung obtained an anti-suit injunction in China by following the duly-adopted procedures of a legitimate judicial system, using a process that was *ex parte* at the outset. Ericsson, in turn, obtained an anti-anti-suit injunction from this Court through a process that was also *ex parte* at the outset. In China, Samsung gave no more notice than was legally required, given the parties' lengthy history and the concern that Ericsson would take advantage of any additional notice to proliferate this dispute—precisely as Ericsson has done.

In this Court, in initially seeking *ex parte* relief, Ericsson provided no more notice Samsung out of similar concerns. The certificate of conference attached to Ericsson's TRO application forthrightly states that Ericsson was concerned that Samsung would react to any additional notice from Ericsson, so Ericsson "did not confer this *ex parte* motion with anyone at Samsung" before

filing it.  Dkt. 11 at 19.  Absent any allegation that Samsung violated any law, or that Chinese procedures are inadequate or illegitimate, Ericsson's "secret" mantra cannot suffice to support its request for the extraordinary relief of an injunction.

**2.      There is No Threat to This Court's Jurisdiction.**

Running throughout Ericsson's reply is the theme that the Chinese court threatens to "deprive" or "divest" this Court's jurisdiction.  Ericsson contends that "Samsung's antisuit injunction is vexatious because it threatens the Court's jurisdiction."  That misunderstands both the scope of the anti-suit injunction and the nature of comity.  As Samsung's opposition explained, there is no jurisdictional threat afoot. Dkt. 26 at 9-10.  Ericsson voluntarily committed, in contracts governed by foreign law (including the French ETSI pledge), to license its standard-essential patents worldwide on FRAND terms.  The Chinese court properly has jurisdiction adjudicate the parties' dispute with respect to that commitment and determine a FRAND rate for Ericsson's SEPs. What Ericsson labels as "jurisdiction" is the point that contractual encumbrances on patent portfolios should be resolved *before* the patents are enforced elsewhere.  That is the reasoning American courts have consistently used to enter antisuit injunctions to pause enforcement while they resolve predicate contract claims.  *See, e.g.*, Dkt. 26 at 8-9; *Microsoft Corp v. Motorola, Inc.*, 696 F.3d 872, 885 (9th Cir. 2012) (Judge Robart's injunction proper where predicate contract action in the United States would "determine the propriety of the enforcement by Motorola of the injunctive relief obtained in Germany" on underlying patents).  And it is the reasoning the Chinese court applied here. Dkt. 26-9 (ASI order) at 7-8.

The purpose of international comity among judicial proceedings is to avoid the conflict that might otherwise arise from dueling proceedings—and, as discussed below, that is part of why the first-filed principle is particularly important.  The Chinese court's injunction is narrowly tailored to the core contract dispute, and by its terms does not prevent Ericsson from *asserting*

4

patents in this Court, though it ultimately might have collateral effects on remedies. *Id.* at 11-13. Indeed, Samsung was clear in its filings in the Chinese court that "Samsung does not request this court to prohibit Ericsson from filing … patent infringement declaration cases, and therefore, it does not affect other courts' adjudicating any alleged validity and infringement issues of native patents." Dkt. 30-4 (Samsung's Behavior Preservation Application) at 14. Although a decision from the Chinese court would be relevant to the issue of remedies, its injunction does not preclude litigation of liability issues. Regardless, the logical sequencing of contractual encumbrances first and enforcement second is a common feature of global licensing disputes, and is in no way a threat to this Court's jurisdiction.

Ericsson disparages the Chinese action because "Samsung has only asked the Wuhan court to adjudicate Ericsson's FRAND commitment for Ericsson's 4G and 5G patents," as opposed to Samsung's patents or Ericsson's 2G or 3G patents. That is not a vice. The parties' *only* current global rate dispute concerns *4G and 5G standard-essential patents*, not 2G or 3G. The Chinese court can undisputedly resolve that global rate dispute, and is one of two jurisdictions equipped to do so, the other being the United Kingdom (UK). In *Unwired Planet*, Ericsson touted the UK Supreme Court's ability to set a global rate, and forcefully contended that the court *should* set global rates, and that the alternative of piecemeal country-by-country litigation would be unworkable and unwise. Exhibit 1 to this Surreply, Written Submission on Behalf of Telefonaktiebolaget LM Ericsson (Publ) at 10, *Unwired Planet Int'l Ltd. v. Huawei Tech. Co.*, [2017] EWHC (Pat) 711 (Eng.), *aff'd*, [2018] EWCA (Civ) 2344. In this case, Ericsson suggests the opposite about China, without explanation and without any *evidence* that the Chinese courts cannot determine global FRAND. Indeed, Ericsson leaves it to its amici to attack the Chinese courts—but they do so without any *evidence* or experience to substantiate their positions. In the

posture of this request for an extraordinary preliminary injunction that would raise serious international relations and comity concerns, they certainly offer nothing but speculation and innuendo, which cannot overcome Samsung's evidence.

Amicus Michel does not purport to have any particular knowledge of the Chinese legal system, nor of any facts beyond those in the briefs.[1] Based on the early stage of the case, and Michel's own unfamiliarity with the Chinese legal system, Michel expresses "concerns" about the pending proceedings in China,[2] and speculates at length about how the facts of this case and the Chinese court system "appear" to Michel, repeats that much is "unclear," and occasionally vouches for inferences urged in Ericsson's brief.[3] That is improper amicus practice, and the Court should not rely on it. *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970) ("[A]n amicus who argues facts should rarely be welcomed."); *Club v. FEMA*, 2007 WL 3472851, at *1 (S.D. Tex. Nov. 14, 2007) (quoting *id*, denying motion to file amicus brief); *cf. Straight Path IP Group, Inc. v. Cisco Sys., Inc.*, 411 F. Supp. 3d 1026, 1034-35 (N.D. Cal. 2019).

Amicus Mossoff likewise does not purport to have any personal experience with Chinese practice or procedure. Mossoff's brief repeats portions of a law review article he wrote, *Institutional Design in Patent Law: Property Rights or Regulatory Entitlements*, 92 S. Cal. L. Rev. 921 (2019), quotes repeatedly from Ericsson's motion, and makes new arguments against the

---

[1] Dkt. 29, at 3 ("At this stage, too little information is available to fully assess whether the Wuhan court's apparent ex parte order is sufficient to order—and thus divest—a U.S. court from proceeding to adjudicate a live controversy that implicates global and U.S. patent rights.").
[2] *See, e.g.*, Dkt. 29 at 3 (Stating, without citation, that "[t]he Wuhan court's procedures ***appear*** designed to empower a party to obtain a world-wide injunction with no meaningful opportunity to be heard. And ***it is unclear*** if a party so enjoined has any meaningful opportunity to have such an injunction reconsidered or vacated, whether by the issuing court or an appellate court").
[3] *See, e.g.*, Dkt. 29 (speculating, again without citation or specificity, that "one could review these publicly available yet incomplete facts and reasonably conclude that Samsung took actions to affirmatively hide the Wuhan proceeding from Ericsson").

quality and legitimacy of China's legal system. The Court and the parties are well able to consult Mossoff's article should they find it useful. Mossoff's arguments in this case, moreover, contradict Ericsson's position in the *Unwired Planet* proceedings in the United Kingdom. In ostensible support of Ericsson's changed position here, Mossoff takes issue with the practice Ericsson endorsed in *Unwired Planet* when it occurs in China. Mossoff's brief obscures more than it clarifies by contradicting positions Ericsson has taken elsewhere, and the Court should not rely on it. *Christopher M. v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d 1285, 1292 (5th Cir. 1991) ("[A]micus curiae … cannot raise an issue raised by neither of the parties absent exceptional circumstances."); *Am. College of Obstetricians & Gynecologists v. Thornburgh*, 699 F.2d 644, 645 (3d Cir. 1983) (denying motion by law professors to file amicus brief, where movants did not represent anyone "with a legally cognizable interest in the subject matter at issue, and give only their concern about the manner in which this court will interpret the law as the basis for their brief," and where "there is no indication that the parties to the law suit and those parties who have been granted leave to file a brief amicus curiae will not adequately present all relevant legal arguments").

Ericsson also states that this case "is the only one that can resolve the parties' dispute" because "both parties' FRAND obligations are at issue." (Dkt. 30 at 2). That argument is unsound. "Both parties' FRAND obligations" are only "at issue" in the limited sense that Ericsson's complaint raises claims about the parties' conduct during negotiations before their license expired. Ericsson does not ask this Court to set a worldwide or U.S. rate. Samsung's request to the Chinese court to set a worldwide rate does not threaten this Court's jurisdiction.

3. **Binding Precedent Recognizes the Importance of the First-Filed Rule in International Controversies of this Type.**

Ericsson's criticisms of the first-filed rule disregard Fifth Circuit precedent, which requires the court to consider "the need to defer to principles of international comity," and which recognizes that the question of which action was filed first is important to comity. *Karaha*, 335 F.3d at 366, 371; *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 (5th Cir. 1996).[4] Ericsson purports to distinguish *Karaha* and *Kaepa* on their facts, but *Karaha* explicitly invoked the principle and described *Kaepa* as "implicitly" applying it as well. *Karaha*, 335 F.3d at 371. Neither *precedential* decision from the Fifth Circuit can plausibly be limited to its facts. To be sure, where deference to a foreign court would create a strong conflict with U.S. public policy, as was the case in *Laker Airways, Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984), the first-filed rule is not dispositive.[5] But that concern is not implicated in the Chinese action, which Ericsson characterizes in its motion as a "private contract dispute." Ericsson gives no reason for this Court to deviate from applying the normal principles of international comity that would otherwise apply.

Indeed, Ericsson has no answer to the point that the first-filed rule helps to avoid escalation of conflicts between courts. *See, e.g.*, *Peck v. Jenness*, 48 U.S. 612, 624-25 (1849) ("if one may

---

[4] *See also, e.g.*, *The Salvore*, 36 F.2d 712, 714 (2d Cir. 1929); *Microsoft*, 696 F.3d at 887 ("The order in which the domestic and foreign suits were filed, although not dispositive, may be relevant to this determination depending on the particular circumstances."); *Huawei Techs. Co. v. Samsung Elecs. Co.*, 2018 WL 1784065 (N.D. Cal. Apr. 13, 2018) ("Since this action preceded the Chinese actions—if only by one day—enjoining the foreign action would not intolerably impact comity." (internal quotation marks omitted)).

[5] Ericsson cites a footnote from a Third Circuit case that appears to stand only for the proposition that a stricter "first filed rule" governing co-pending duplicative domestic suits does not apply to conflicts between suits in two different countries. Dkt. 30 at 10-11 (citing *Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877 887 n. 10 (3d Cir. 1981), *aff'd on other grounds*, 456 U.S. 694 (1982)). The Third Circuit's footnote does not overrule or conflict with *Karaha*, *Kaepa*, or similar decisions.

enjoin, the other may retort by injunction, and thus the parties be without remedy."); *Laker Airways, Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984) (similar, citing *id.*). Although domestic courts need not defer reflexively to any order a foreign court might issue, where the foreign court legitimately acquired jurisdiction first, its orders should not be disregarded without better reason and evidence than Ericsson offers. Ericsson contends that "international comity favors parallel proceedings," and that "Ericsson does not consent to the Chinese courts creating a licensing contract between Ericsson and Samsung." Dkt. 30 at 7. Neither is a sound basis for disregarding the Chinese court's injunction. Whatever might be said for "parallel proceedings" *in general*, American and foreign courts have frequently, reasonably concluded that where one court legitimately has jurisdiction over a predicate contractual claim between the parties, "parallel" claims for enforcement of the underlying claims should be paused. As just explained, that is what Judges Selna, Robart, and Orrick ordered in similar cases, what the Chinese court ordered here, and what Ericsson urged in the *Unwired Planet* case. Further, there is no issue of "Chinese courts creating a licensing contract." Ericsson's own complaint states that each party's FRAND pledges to standards organizations are enforceable contracts to which the other is a third-party beneficiary. Samsung's action in China seeks only to adjudicate Samsung rights under Ericsson's voluntary FRAND commitment.

Ericsson contends that so-called "defensive" injunctions do not implicate comity, and relies on *Laker* for support (Dkt. 30 at 5). *Laker* is 2-1 decision from the D.C. Circuit that arose in a vastly different posture and does not support Ericsson. *See* 731 F.2d at 956-59. As the *Laker* majority explained, that case "represent[ed] a *head-on collision* between the diametrically opposed antitrust policies of the United States and United Kingdom." *Id.* at 916 (emphasis added). The United States permits treble damages in antitrust actions. The United Kingdom does not, and

9

among other things actively opposes the availability of that remedy in other jurisdictions. In *Laker*, the United Kingdom passed legislation titled the "British Protection of Trading Interests Act" that authorizes the British executive to "require that any person conducting business in the United Kingdom *disobey all foreign orders and cease all compliance with the foreign judicial or regulatory provisions designated by the Secretary of State*." *Id.* at 920 (emphasis added). The British executive invoked that mandatory disobedience power against "United States antitrust measures," *id.*, and issued orders "prevent[ing] the British airline from complying with any requirements imposed by the United States District Court and prohibit[ing] the airlines from relying on their own commercial documents located within the United Kingdom to defend themselves against Laker's charges in the United States." *Id.* The British court upheld the validity of the British executive's disobedience order, issued an injunction accordingly, and acknowledged that it made the antitrust claims in the United States "wholly untriable." *Id.*

It is against that backdrop that the *Laker* majority deemed an American anti-interference injunction "purely *defensive*." *Id.* at 938. The British court's injunction was "purely *offensive*." It was "not designed to protect English jurisdiction," but instead sought "only to quash the practical power of the United States courts" to adjudicate antitrust claims over which it had jurisdiction:

> The district court's antisuit injunction was purely *defensive* — it seeks only to preserve the district court's ability to arrive at a final judgment adjudicating Laker's claims under United States law. This judgment would neither make any statement nor imply any views about the wisdom of British antitrust policy. In contrast, the English injunction is purely *offensive* — **it is not designed to protect English jurisdiction**, or to allow English courts to proceed to a judgment on the defendant's potential liability under English anticompetitive law free of foreign interference. **Rather, the English injunction seeks only to quash the practical power of the United States courts to adjudicate claims under United States law against defendants admittedly subject to the courts' adjudicatory jurisdiction.** The Court of Appeal itself recognized that there is no other forum available for resolution of Laker's claims.

10

*Id.* at 938 (bold emphasis added). The result, *Laker* explained, was "a clash between two governments asserting jurisdiction to prescribe law over a single series of transactions." *Id.* at 921.

The Chinese court's injunction bears no resemblance to the "purely offensive" injunction in *Laker*. In contrast, as already explained, the Chinese court's injunction *is* designed to protect the Chinese court's jurisdiction over the parties' global rate dispute—much like similar antisuit injunctions commonly issued in similar actions. There is no issue of a "direct clash between two governments asserting jurisdiction" over the same transactions; only a court with competent jurisdiction over the parties' global rate dispute protecting its jurisdiction by requiring predicate questions of contractual encumbrances to proceed before enforcement claims. Ericsson's requested injunction, by contrast, more closely resembles the "purely offensive" injunction in *Laker*.

Ericsson's remaining arguments accuse Samsung of "forum shopping" and contend that "as for why it filed its action in Wuhan, Samsung has no good answer." Again, Samsung's answer—which Ericsson ignores—is that in addition to having a substantial economic nexus to the parties' dispute, China's judiciary is one of two in the world that can resolve global rate disputes such as this one. Ericsson may prefer that another jurisdiction adjudicate its FRAND commitment—perhaps piecemeal, perhaps worldwide in the UK—but Ericsson does not dispute that it is properly subject to jurisdiction in China, and fails to justify the extraordinary relief of a preliminary injunction against lawful orders of that court.

4. **Ericsson's Requested Injunction is Overbroad.**

In a footnote, Ericsson appropriately withdraws any request for relief with respect to "foreign patent rights." Dkt. 30 at 14 n. 14. Ericsson's requested injunction nonetheless remains overbroad as to forums other than this Court, and as to the indemnity sanction. Even if one accepts Ericsson's unsupported contention that injunctive relief is required to protect this Court's

jurisdiction, there is no basis to limit positions Samsung may take in other courts or in tribunals such as the ITC. That aspect of the injunction exceeds any legal basis for injunctions to protect the *issuing court's own jurisdiction*, and it exceeds the principle that "[c]omity teaches that the sweep of the injunction should be no broader than necessary to avoid the harm on which the injunction is predicated." *Microsoft*, 696 F.3d at 887 (quoting *Laker*). If Ericsson believes that the Chinese court's injunction threatens other tribunals' jurisdiction, those other tribunals are the proper forum for those arguments, and for assessing the application of international comity on those actions. (Dkt. 26 at 14-15). Ericsson's reply does not answer this argument at all except to repeat that it believes its requested injunction is "narrowly tailored." (Dkt. 30 at 11-13). To the extent it applies to any other tribunals, it is not "narrowly tailored."

As to the indemnity injunction, Ericsson suggests a number of alternative measures the Court might take to achieve the same result, but Ericsson does not deny that the indemnity sanction encourages Ericsson to violate the Chinese court's order and to deprive the Chinese court of the power to do anything about it. And as to Samsung's showing that Ericsson's request would punish Samsung for fines not predicated on any further action from Samsung, Ericsson replies that "[i]f the Wuhan court imposes those fines *sua sponte*, Samsung has no one but itself to blame." (Dkt. 30 at 3). It is difficult to imagine a more direct affront to comity than the suggestion that filing a lawsuit in a Chinese court is by itself a sufficient basis for sanctions. Ericsson cites no precedent for that aspect of the injunction other than the reversed, narrower injunction in *Karaha*, and does not even try to explain why the better course is not to let Ericsson seek relief from the Chinese court directly. Ericsson's contention that the "fairness of Chinese courts is not at issue" cannot be squared with its request that this Court prospectively neuter the Chinese court's ability to enforce its orders through fines.

**5.  Ericsson Inc. Lacks Standing to Seek Relief on Behalf of its Co-Plaintiff Parent Company.**

The plaintiffs in this action are Telefonaktiebolaget LM Ericsson and its American affiliate Ericsson Inc.  Yet, only Ericsson *Inc*., has requested the TRO and preliminary injunction; the Swedish parent company co-plaintiff has chosen not to join.  Ericsson Inc. contends that it has standing because the Chinese court's injunction governs the Swedish parent "and its affiliates."  Ericsson Inc. ignores, however, that any fines would be levied against the Swedish parent, which is the only Ericsson party to the Chinese lawsuit.  Either Ericsson Inc.'s indemnification request is a nullity, or it is for relief on behalf of its Swedish parent who is a co-plaintiff in this case but who has inexplicably not joined Ericsson Inc.'s motion.  Ericsson Inc., moreover, does not seek relief only on behalf of itself.  It asks this Court to enjoin Samsung from enforcing the Chinese court's injunction against anyone—presumably including its Swedish parent.  A party seeking relief from a court bears the burden of demonstrating its standing to seek that relief.  Ericsson Inc. has not done so here.

## CONCLUSION

Ericsson's motion for an injunction should be denied and the TRO dissolved.


Dated:  January 6, 2021                                       Respectfully submitted,


                                                  */s/ Melissa R. Smith*
Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257
Email:  melissa@gillamsmithlaw.com

Gregory S. Arovas, P.C.

greg.arovas@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Edward C. Donovan, P.C.
edward.donovan@kirkland.com
F. Christopher Mizzo, P.C.
chris.mizzo@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave. N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200

David Rokach
david.rokach@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60645
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Kevin Hardy
kevinhardy@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP1300 I Street N.W.
Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Thomas D. Pease
thomaspease@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP51 Madison Ave., 22nd
Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Paul Zeineddin
pzeineddin@axinn.com
AXINN, VELTROP & HARKRIDER LLP

950 F. Street, N.W.
Washington, DC 20004
Telephone: (202) 912-4700
Facsimile: (202) 912-4701

*Attorneys for Samsung Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on January 6, 2021.

*/s/ Melissa R. Smith*
