# Samsung's Hearing Presentation

January 7, 2021

Case No. 2:20-cv-380-JRG

1

# Samsung's Hearing Presentation

**1** Samsung's First Filed Global Rate Setting Action Will Resolve Key Dispute re SEP Licensing Royalties

**2** Legal Standard for Foreign Anti-Suit Injunction

**3** Global Dispute Resolution and Comity Favor Resolution of Key Dispute

**4** Ericsson's Proposed Injunction and Indemnification are Overbroad and Legally Defective



# Timeline Of Parties' SEP Licensing History

# Global Piecemeal Litigation In Other SEP Licensing Disputes

## Ericsson/TCL Litigation 11 Lawsuits in 7 jurisdictions

- **France**
- **UK**
- **Brazil**
- **Russia**
- **Argentina**
- **Germany**
- **US**

### *TCL v. Ericsson*

"In 2012, while the parties were still negotiating, Ericsson initiated a series of foreign litigations against TCL for alleged infringement of Ericsson's SEPs. Between October 2012 and late 2014, Ericsson filed at least 11 lawsuits against TCL and/or its affiliates in 6 different jurisdictions— France, the U.K., Brazil, Russia, Argentina, and Germany."

*TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, 2018 WL 4488286, at *2 (C.D. Cal. Sept. 14, 2018), *rev'd in part, vacated in part*, 943 F.3d 1360 (Fed. Cir. 2019)

## Ericsson/Apple Litigation Lawsuits in 4 jurisdictions

- **US**
- **UK**
- **Germany**
- **Netherlands**

**February 2015: Ericsson files against Apple in ITC and District Court**

**May 2015: Ericsson files against Apple in the UK, Germany, and Netherlands**



4



# Contractual Dispute Focused On Royalty For Licensing Ericsson SEPs

**Ericsson Proposal for a Global License**

## Ericsson's proposal

— Global patent cross-license with Samsung
— Ericsson's rates:
— 4G proposal: 0.8% of 4G user equipment net sales
— $4 per-unit cap and $0.95 per-unit floor possible
— 5G proposal: $5 per 5G/NR user equipment
— Early signing $1 discount possible
— Cross-license for infra has minimal financial impact on overall deal
— Cross-license signed no later than end of Q4 2020

Ericsson Proposal (July 20, 2020) at 22

**Samsung Willingness to License**

We would like to reiterate that Samsung is ready and willing to conclude a license agreement with Ericsson on its SEP portfolios for mobile telecommunication on fair, reasonable and non-discriminatory (FRAND) terms.

Best regards,

Jong Pil Hong
Vice President
Licensing team / IP Center
SAMSUNG ELECTRONICS CO., LTD.

Samsung Response (Aug. 7, 2020) at 1

6

# Samsung Affirmatively Sought Judicial Resolution Of Key Dispute

## Samsung China Complaint Seeking Global Rate-Setting

**Plaintiffs respectfully request the Court to:**

1. Determine the global licensing terms, including the royalty rates applicable for Plaintiffs' communication products in accordance with "Fair, Reasonable and Non-discriminatory" ("FRAND") principle for the licensing of all the 4G and 5G standard essential patents ("SEPs") held or controlled by the Defendants and its affiliates;

\*          \*          \*

Filed on December 7, 2020

Dkt. 26-2 and 3-4 at 2-3, 11

## On Dec. 7, 2020

Plaintiff 1: Samsung Electronics Co., Ltd.

Agent ad litem:

Plaintiff 2：Samsung (China) Investment Co., Ltd.

Agent ad litem:

Plaintiff 3: Samsung (China) Investment Co., Ltd. Wuhan Branch

Agent ad litem:

Dkt. 26-2 at 11

# Global Rate-Setting Is Appropriate Alternative To Piecemeal Litigation

- **China is one of two forums worldwide committed to determining global licensing rates**

- **China has conducted world-wide rate-setting, starting in *Oppo v. Sharp*:**

> held by Sharp for all OPPO's smart terminal products. Facing the jurisdictional objection filed by Sharp, for the first time, the court expressed the willingness of Chinese courts to decide the global royalty rates in its ruling[8]. The Intermediate People's Court of Shenzhen believed that the

*Kong Declaration at ¶ 9 (Dkt. 26-12)*

- **The UK has conducted world-wide rate-setting, starting in *Unwired Planet v. Huawei***

> "I conclude that a worldwide licence would not be contrary to competition law. Willing and reasonable parties would agree on a worldwide licence.  It is the FRAND licence for a portfolio like Unwired Planet's and an implementer like Huawei. Therefore, Unwired Planet are entitled to insist on it.  It follows that an insistence by Huawei on a licence with a UK only scope is not FRAND"

*Unwired Planet Int'l Ltd. v. Huawei Tech. Co., [2017] EWHC (Pat) 711 (Eng.) at ¶ 571, aff'd, [2018] EWCA (Civ) 2344*

8

# Ericsson Itself Advocated For Global Rate Setting In A Non-US Court

IN THE SUPREME COURT OF THE UNITED KINGDOM
ON APPEAL FROM THE COURT OF APPEAL
(CIVIL DIVISION)

UKSC 2018/0214;
UKSC 2019/0041 and
UKSC 2019/0042

BETWEEN:

(1) UNWIRED PLANET INTERNATIONAL LIMITED
(2) UNWIRED PLANET LLC

**Respondents**

and

(1) HUAWEI TECHNOLOGIES CO. LIMITED
(2) HUAWEI TECHNOLOGIES (UK) CO. LIMITED

**Appellants**

AND BETWEEN:

CONVERSANT WIRELESS LICENSING S.À.R.L.

**Respondent**

and

(1) HUAWEI TECHNOLOGIES CO. LIMITED
(2) HUAWEI TECHNOLOGIES (UK) CO. LIMITED
(3) ZTE CORPORATION
(4) ZTE (UK) LIMITED

**Appellants**

**WRITTEN SUBMISSIONS ON BEHALF OF
TELEFONAKTIEBOLAGET LM ERICSSON (PUBL)**

**(INTERVENER)**

1.  The following are the submissions of Telefonaktiebolaget LM Ericsson (publ)
("Ericsson") in relation to the appeal set out in Huawei's Notice of Appeal in case
UKSC 2018/0214, in respect of which Ericsson applied for permission to intervene by
written submissions, pursuant to Rule 26 of the Supreme Court Rules 2009, on 23
August 2019.

2.  Ericsson is a lead contributor to and architect for cellular standards – 2G, 3G, 4G and
now 5G. It is also a major vendor of standardised wireless technology, employing
around 95,000 individuals and selling in over 180 countries. Ericsson is thus a
significant licensor and licensee of patented standard-essential technology. More
details of Ericsson's business and its involvement in standards is set out in Ericsson's
application for permission to intervene under Rule 26, the substance of which is
repeated below for convenience.

## Ericsson submission to UK Court in SEP case involving Ericsson related entity Unwired Planet

Ground 1 (Global rate setting): In determining the appropriate rate for UK SEPs, was it right for the English court to set rates to be applied under all foreign patents in the patentee's portfolio?

26.   Moreover, Ericsson completely agrees with paragraph 110 of the judgment of the Court of Appeal, which refers to paragraph 544 of the judgment of Birss J and explains that, for a multi-jurisdictional portfolio and a licensee with a global business, licensing country by country would be "*needlessly inefficient because of the effort required to negotiate and agree so many licences and then keep track of so many different royalty calculations and payments*". Similarly, from the licensee's point of view, country-by-country licensing would entail the considerable administrative burden of managing and complying with a multitude of separate, potentially unsynchronised, obligations, such as regards reporting and payment, with potentially varying expiry and renewal dates. This simply would not work and therefore does not happen in practice.

Written Submissions on Behalf of Telefonaktiebolaget LM Ericsson in
Unwired Planet Int'l Ltd. v. Huawei Techs. Co. Ltd. at ¶¶ 17, 26

# Ericsson Itself Advocated For Global Rate Setting In A Non-US Court

IN THE SUPREME COURT OF THE UNITED KINGDOM
ON APPEAL FROM THE COURT OF APPEAL
(CIVIL DIVISION)

UKSC 2018/0214;
UKSC 2019/0041 and
UKSC 2019/0042

BETWEEN:

(1) UNWIRED PLANET INTERNATIONAL LIMITED
(2) UNWIRED PLANET LLC

Respondents

and

(1) HUAWEI TECHNOLOGIES CO. LIMITED
(2) HUAWEI TECHNOLOGIES (UK) CO. LIMITED

Appellants

AND BETWEEN:

CONVERSANT WIRELESS LICENSING S.À.R.L.

Respondent

and

(1) HUAWEI TECHNOLOGIES CO. LIMITED
(2) HUAWEI TECHNOLOGIES (UK) CO. LIMITED
(3) ZTE CORPORATION
(4) ZTE (UK) LIMITED

Appellants

WRITTEN SUBMISSIONS ON BEHALF OF
TELEFONAKTIEBOLAGET LM ERICSSON (PUBL)

(INTERVENER)

1.   The following are the submissions of Telefonaktiebolaget LM Ericsson (publ)
("Ericsson") in relation to the appeal set out in Huawei's Notice of Appeal in case
UKSC 2018/0214, in respect of which Ericsson applied for permission to intervene by
written submissions, pursuant to Rule 26 of the Supreme Court Rules 2009, on 23
August 2019.

2.   Ericsson is a lead contributor to and architect for cellular standards – 2G, 3G, 4G and
now 5G.  It is also a major vendor of standardised wireless technology, employing
around 95,000 individuals and selling in over 180 countries.  Ericsson is thus a
significant licensor and licensee of patented standard-essential technology.  More
details of Ericsson's business and its involvement in standards is set out in Ericsson's
application for permission to intervene under Rule 26, the substance of which is
repeated below for convenience.

---

Ground 1 (Global rate setting): In determining the appropriate rate for UK SEPs, was it right for the English court to set rates to be applied under all foreign patents in the patentee's portfolio?

28.   Ericsson considers that licensing of patent portfolios on a global basis is, to use the words of the CJEU in *Huawei v ZTE*, "*in accordance with recognized commercial practices in the field and in good faith.*"[2]

31.   Ericsson submits that, for the reasons set out above, a global portfolio licence in this matter is FRAND and Unwired Planet's offer of a global portfolio FRAND licence to Huawei fulfils its FRAND obligation for purposes of determining relief for patent infringement.  In contrast, a country-by-country licence offer in this matter would not be in line with industry practice, would be unworkable, and would frustrate the explicit policy objectives of the ETSI IPR Policy and the balance needed for industry to continue to thrive.

Written Submissions on Behalf of Telefonaktiebolaget LM Ericsson in
Unwired Planet Int'l Ltd. v. Huawei Techs. Co. Ltd. at ¶¶ 17, 28, 31

# Ericsson Itself Advocated For Global Rate Setting In A Non-US Court

IN THE SUPREME COURT OF THE UNITED KINGDOM
ON APPEAL FROM THE COURT OF APPEAL
(CIVIL DIVISION)

UKSC 2018/0214;
UKSC 2019/0041 and
UKSC 2019/0042

BETWEEN:

(1) UNWIRED PLANET INTERNATIONAL LIMITED
(2) UNWIRED PLANET LLC

Respondents

and

(1) HUAWEI TECHNOLOGIES CO. LIMITED
(2) HUAWEI TECHNOLOGIES (UK) CO. LIMITED

Appellants

AND BETWEEN:

CONVERSANT WIRELESS LICENSING S.À.R.L.

Respondent

and

(1) HUAWEI TECHNOLOGIES CO. LIMITED
(2) HUAWEI TECHNOLOGIES (UK) CO. LIMITED
(3) ZTE CORPORATION
(4) ZTE (UK) LIMITED

Appellants

WRITTEN SUBMISSIONS ON BEHALF OF
TELEFONAKTIEBOLAGET LM ERICSSON (PUBL)

(INTERVENER)

1.   The following are the submissions of Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") in relation to the appeal set out in Huawei's Notice of Appeal in case UKSC 2018/0214, in respect of which Ericsson applied for permission to intervene by written submissions, pursuant to Rule 26 of the Supreme Court Rules 2009, on 23 August 2019.

2.   Ericsson is a lead contributor to and architect for cellular standards – 2G, 3G, 4G and now 5G.  It is also a major vendor of standardised wireless technology, employing around 95,000 individuals and selling in over 180 countries.  Ericsson is thus a significant licensor and licensee of patented standard-essential technology.  More details of Ericsson's business and its involvement in standards is set out in Ericsson's application for permission to intervene under Rule 26, the substance of which is repeated below for convenience.

**Ground 1 (Global rate setting): In determining the appropriate rate for UK SEPs, was it right for the English court to set rates to be applied under all foreign patents in the patentee's portfolio?**

31.   Ericsson submits that, for the reasons set out above, a global portfolio licence in this matter is FRAND and Unwired Planet's offer of a global portfolio FRAND licence to Huawei fulfils its FRAND obligation for purposes of determining relief for patent infringement.  In contrast, a country-by-country licence offer in this matter would not be in line with industry practice, would be unworkable, and would frustrate the explicit policy objectives of the ETSI IPR Policy and the balance needed for industry to continue to thrive.

Written Submissions on Behalf of Telefonaktiebolaget LM Ericsson in
Unwired Planet Int'l Ltd. v. Huawei Techs. Co. Ltd. at ¶¶ 17, 31

# Undisputed That China Action Will Go Forward & Set Global Rates

## Ericsson TRO Motion

Here, Ericsson seeks a more limited form of antisuit injunction. In this motion, Ericsson is not asking this Court to stop Samsung from proceeding in the Wuhan suit. Rather, Ericsson is

Ericsson Motion at 6 (Dkt. 11)

## Ericsson Submissions in China

- Ericsson requested transfer of Samsung's global rate setting action to the Beijing IP Court
- Ericsson did not contest jurisdiction or authority of a China court to resolve the parties' global dispute over licensing royalties for Ericsson SEPs

## Ericsson Reply

4.      The Fairness Of Chinese Courts Is Not At Issue In This Motion.

Samsung spends several pages and submits several declarations praising Chinese courts, but the quality of Chinese courts is not the point. Federal courts protect their jurisdiction from

Ericsson Reply at 8 (Dkt. 30)

## Litigation Came As No Surprise To Ericsson

**Ericsson told investors that approaching license renewals may include litigation**



Patent licensing continues to perform well based on our strong IPR portfolio, even though revenues decreased in the third quarter as one of our licensees experienced lower sales volumes. We are approaching several important contract renewals. We are confident in the value of our broad patent portfolio, including a strong position in 5G and will seek to maximize the net present value of our patent estate that has been built over time through our large R&D investments. Depending on timing of the agreement renewals, we may see gaps in IPR revenues in 2021 and 2022.

Ericsson's Third Quarter Report 2020 at 2

**Our ability to benefit from intellectual property rights (IPR), may be limited by the loss of patent licenses to or from third parties** Patent licensing agreements are generally multi-year and term based and the process for renewal of these licenses normally requires negotiations, particularly in conjunction with technology shifts and the introduction of new standards, such as 5G. Such renewals and negotiations may take time to resolve, sometimes involve litigation and may have material adverse impact on our business and financial position, including on the timing for and level of revenues from the IPR licensing contract portfolio.

Ericsson's Third Quarter Report 2020 at 11-12

13

# China Is Appropriate Forum For This Dispute

- **China court system is well-equipped to handle this dispute, and has rapidly become an international hub for IP and FRAND disputes**

In my view, there is no reason to give the Chinese court handling this global FRAND dispute any less deference than similar courts in the United States. China's court system in the IP area is led by experienced and sophisticated judges who will provide a full and fair opportunity to be heard. China is an appropriate and fair venue to decide an international contract and patent dispute like this one between Korean and Swedish companies. Based on my experience, including working directly with many of these judges and teaching intellectual property law in China, the suggestion in Ericsson's motion that it will not receive a fair hearing in China is incorrect.

Rader Declaration at ¶ 13 (Dkt. 26-13)

These efforts have proven successful. In recent years, China has become a world center for IP dispute resolution. It offers specialized IP trial courts and IP specialized tribunals dedicated to the adjudication of IP disputes. China also features competent intermediate courts and a "Federal Circuit-style" central appeal court for all IP disputes in the IP Division of the Supreme People's Court.

Rader Declaration at ¶ 16 (Dkt. 26-13)

In particular, Chinese IP courts have welcomed and resolved numerous cases involving rate-setting under FRAND standards. One study covering the period of 2011-2019 counted 160 cases accepted by Chinese courts related to standard essential patents. *See, chinaipr.com, 2020/07/13*. Those statistics compare favorably, if not exceeding outright, similar accountings in the world's leading national judicial systems.

Rader Declaration at ¶ 19 (Dkt. 26-13)

14

# Samsung Properly Followed Chinese Procedure And Practice

## Samsung followed Chinese Civil Procedure that court notifies defendant of suit

> 13.    According to the provisions of the *Civil Procedure Law* on service, the plaintiff's complaint, evidence, court summons and other litigation documents shall be served on the defendant by the people's court[11]. According to my years of judicial experience, under the Chinese civil litigation system, the plaintiff is not obliged to notify the defendant of the fact of prosecution, nor is the plaintiff obliged to provide the defendant with the complaint and evidence it submitted.  Even if the plaintiff chooses to notify the defendant, such notification has no procedural significance under Chinese law and does not constitute service under Chinese law, because service under Chinese litigation law belongs to the authority of the court.  Therefore, in practice, as far as I understand, it

Kong Declaration at ¶ 13 (Dkt. 26-12)

## Samsung followed Chinese procedure and practice throughout this action

> 21.    In summary, I believe that Samsung's application for behavior preservation complies with Article 100 of the *Civil Procedure Law* and the *Provisions of the Supreme People's Court on Several Issues Concerning the Application of Law in Reviewing the Injunction Cases involving Intellectual Property Disputes*.

Kong Declaration at ¶ 21 (Dkt. 26-12)

# Samsung's Hearing Presentation

**1**    Samsung's First Filed Global Rate Setting Action Will Resolve Key Dispute re SEP Licensing Royalties

**2**    Legal Standard for Foreign Anti-Suit Injunction

**3**    Global Dispute Resolution and Comity Favor Resolution of Key Dispute

**4**    Ericsson's Proposed Injunction and Indemnification are Overbroad and Legally Defective

# Fifth Circuit Standard Required For Foreign Anti-Suit Injunction

### *Karaha Bodas v. Perusahaan* (5th Cir. 2003)

We have cautioned, however, that a preliminary injunction is "an extraordinary remedy" which should only be granted if the party seeking the injunction has "clearly carried the burden of persuasion" on all four requirements.

\*          \*          \*

When a preliminary injunction takes the form of a foreign antisuit injunction, we are required to balance domestic judicial interests against concerns of international comity. In assessing whether an injunction is necessary, we weigh the need to "prevent vexatious or oppressive litigation" and to "protect the court's jurisdiction" against the need to defer to principles of international comity. We have noted, however, that notions of comity do not wholly dominate our analysis to the exclusion of these other concerns.

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 335 F.3d 357, 366 (5th Cir. 2003)

# *Unterweser* Factors Are Only Part Of Fifth Circuit's Test

### *Karaha Bodas v. Perusahaan* (5th Cir. 2003)

In assessing whether an injunction is necessary, we weigh the need to "prevent vexatious or oppressive litigation" and to "protect the court's jurisdiction" against the need to defer to principles of international comity. We have noted, however, that notions of comity do not wholly dominate our analysis to the exclusion of these other concerns.

In determining whether proceedings in another forum constitute vexatious or oppressive litigation, we have looked for the presence of several interrelated factors, including (1) "inequitable hardship" resulting from the foreign suit; (2) the foreign suit's ability to "frustrate and delay the speedy and efficient determination of the cause"; and (3) the extent to which the foreign suit is duplicitous of the litigation in the United States.

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 335 F.3d 357, 366 (5th Cir. 2003)

### *In re Unterweser* (5th Cir. 1970)

A court of equity has the traditional power to enjoin parties, properly before it, from litigating in another court. This power has been exercised where the foreign litigation would: (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) where the proceedings prejudice other equitable considerations.

*In re Unterweser Reederei, Gmbh,* 428 F.2d 888, 890 (5th Cir. 1970)

# Samsung's Hearing Presentation

**1** Samsung's First Filed Global Rate Setting Action Will Resolve Key Dispute re SEP Licensing Royalties

**2** Legal Standard for Foreign Anti-Suit Injunction

**3** Global Dispute Resolution and Comity Favor Resolution of Key Dispute

**4** Ericsson's Proposed Injunction and Indemnification are Overbroad and Legally Defective

## ASI Supports Targeted Effort to Resolve Dispute Without Piecemeal Global Litigation

### ASI prevents interference with resolving dispute by determining contractual global license royalties

The claims in the lawsuit in the present case are for the global licensing conditions (including royalty rates) for the portfolio of standard essential patents in dispute by and between the parties. Once the judgment takes effect, it will resolve all previous disputes by and between the parties with respect to the 4G and 5G patents of Ericsson in a package. On the premise that there is already a lawsuit in the present case, it is not necessary at all for Ericsson to separately file lawsuits in China or other countries and regions with respect to royalties or royalty rates globally or in a certain region, as they are just redundant requests for royalty rate rulings. The focus of disputes in

ASI Application at 10-11

In view of the above facts, there is a high likelihood that Ericsson will use one or more lawsuits seeking injunctions to force Samsung to accept licensing conditions that are not consistent with the FRAND principle. During the negotiating process, Samsung has always been subject to the realistic coercion whereby Ericsson will seek injunctive relief or file duplicative lawsuits, which is urgent. If Ericsson is not prohibited from

ASI Application at 5

## ASI Supports Targeted Effort to Resolve Dispute Without Piecemeal Global Litigation

### ASI applies only until resolution of contractual SEP royalty dispute

1. For the duration of this Case and until the judgement of this Case becomes effective, the Respondent and its affiliates are prohibited from applying for any preliminary and permanent injunctive relief or administrative measures before any courts, customs offices, or administrative enforcement agencies either in China or other countries and regions or through any other procedures against Samsung Electronics Co., Ltd., Samsung (China) Investment Co., Ltd., Samsung (China) Investment Co., Ltd. Wuhan Branch and their affiliates, and other subjects which manufacture, use, offer to sell, sell or import Samsung telecommunications products, in terms of the 4G and 5G SEPs involved in this Case, and the Respondent and its affiliates shall immediately withdraw or suspend such claims that have already been filed;

Dkt. 26-9 at 12-13

# ASI Supports Targeted Effort to Resolve Dispute Without Piecemeal Global Litigation

## ASI does not preclude patent actions

lawsuits) before the courts either in China or other countries and regions. Samsung does not request this court to prohibit Ericsson from filing any kinds of lawsuits other than the aforesaid ones, such as patent infringement declaration cases, and therefore, it does not affect other courts' adjudicating any alleged validity and infringement issues of native patents. Thus, the impact of the behavior preservation measures taken by this Court on the other cases filed by Ericsson before the courts either in China or other countries is very limited and within a proper extent.

Therefore, taking behavior preservation measures by this court against the Ericsson would not undermine the international comity principle.

Dkt. 30-4 at 15

22

## ASI Supports Targeted Effort to Resolve Dispute Without Piecemeal Global Litigation

### ASI does not preclude litigation of damages

patent rights to a certain extent, it will not lead to the fundamental loss of its rights. On the contrary, after the Applicants requested this Court to adjudicate the licensing terms of the relevant SEPs held by the Respondent in accordance with the FRAND principles, prohibiting the Respondent from seeking preliminary injunctions, permanent injunctions or administrative remedies will make the Applicants to be able to maintain the normal production and sales of their products, without prejudice to the rights of the Respondent to request the Applicants to pay the royalties and calculate the corresponding loss. In fact, if the Applicants can maintain or even expand the

Dkt. 26-9 at 10-11

23

## Multiple U.S. Courts Have Issued Similar ASIs For First-Filed SEP Rate Action

### *TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*

On June 29, 2015, the Court granted TCL's motion and enjoined the foreign litigation. (Docket No. 279-1, pp. 5-11.) In the Court's view, a stay of the foreign litigation would allow the parties to concentrate on the overriding FRAND issues. Moreover, during the course of this litigation, TCL agreed to be bound by the Court's determination of FRAND terms and conditions for a worldwide portfolio license, including a release payment for TCL's past unlicensed sales. This effectively mooted Ericsson's pending patent infringement claims against TCL in this Court and other courts around the world.

*TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, 2018 WL 4488286, at *4 (C.D. Cal. Sept. 14, 2018), rev'd in part, vacated in part, 943 F.3d 1360 (Fed. Cir. 2019)

– **U.S. case involved global rate setting for licensing Ericsson SEPs**

– **Ericsson filed SEP infringement actions in France, Brazil, Russia, Argentina, and Germany**

– **Court issued ASI against any other proceedings in other forums regarding the SEPs at issue**

# Multiple U.S. Courts Have Issued Similar ASIs For First-Filed SEP Rate Action

## *Microsoft Corp. v. Motorola, Inc.*

First, the district court concluded that the pending contract action before it would be dispositive of the German *patent* action, "because the European Patents at issue in the German Action were included in Motorola's October 29 Letter offering a worldwide license for Motorola's H.264 Standard-essential patents, and because Motorola contracted with the ITU to license the European Patents on RAND terms to all applicants on a worldwide basis."

*Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 880 (9th Cir. 2012)

– **U.S. case involved rate setting for licensing Motorola SEPs**

– **Motorola sought patent injunction in Germany due to SEP infringement**

– **Court issued ASI against enforcement of patent injunction pending resolution of contractual FRAND issues**

# Multiple Courts Issued ASIs For First-Filed SEP Rate Action To Go First

### *Huawei Techs., Co., Ltd. v. Samsung Elecs. Co., Ltd.*

But those undeniable and important differences are irrelevant to whether this action is dispositive of the foreign action. Both parties have presented me with a breach of contract claim based on the other's alleged failure to abide by its commitments to ETSI. ' Neither party disputes the other's right to enforce that contract as a third-party beneficiary. And the availability of injunctive relief for each party's SEPs depends on the breach of contract claims. As in Microsoft, "[t]he contractual umbrella over the patent claims" controls, *Microsoft II*, 696 F.3d at 883, and dictates that this action is dispositive of Huawei's Chinese actions. See id. ("In other words, the cross-license." See Opp'n at 17. The appropriate remedy for Huawei's breach of contract claim may very well be the injunctive relief issued by the Shenzhen court. But I must have the opportunity to adjudicate that claim without Samsung facing the threat of the Shenzhen court injunctions.

*Huawei Techs., Co., Ltd. v. Samsung Elecs. Co., Ltd.*, Case No. 3:16-cv-02787-WHO, Dkt. 280, Slip. op. at 13, 15 (N.D. Cal. Apr. 13, 2018)

– **U.S. case involved claims re contractual FRAND licensing**

– **After filing U.S. case, Huawei filed 8 SEP infringement actions in China, seeking patent injunctions**

– **Court issued ASI against enforcement of patent injunction pending resolution of contractual FRAND issues**

# Courts Consider Deference To First-Filed Action Between Foreign Actions

## *Huawei Techs., Co., Ltd. v. Samsung Elecs. Co., Ltd.*

Courts may also consider "[t]he order in which the domestic and foreign suits were filed" in evaluating the impact on comity. *See Microsoft II*, 696 F.3d at 887. As discussed, Huawei filed the Chinese actions the day after it filed the complaint here. Since this action preceded the Chinese actions—if only by one day— enjoining the foreign action would not "intolerably impact comity."

*Huawei Techs., Co., Ltd. v. Samsung Elecs. Co., Ltd.*, Case No. 3:16-cv-02787-WHO, Dkt. 280, Slip. op. at 12 (N.D. Cal. Apr. 13, 2018)

## *Microsoft Corp. v. Motorola, Inc.*

The threshold consideration for a foreign anti-suit injunction is "whether or not the parties and the issues are the same" in both the domestic and foreign actions, "and whether or not the first action is dispositive of the action to be enjoined."

*Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 882 (9th Cir. 2012)

27

# Patent Injunctions Particularly Disruptive To Rate Setting

## *Microsoft Corp. v. Motorola, Inc.* (9th Cir. 2012)

First, the district court concluded that the pending contract action before it would be dispositive of the German *patent* action, "because the European Patents at issue in the German Action were included in Motorola's October 29 Letter offering a worldwide license for Motorola's H.264 Standard-essential patents, and because Motorola contracted with the ITU to license the European Patents on RAND terms to all applicants on a worldwide basis." Second, the court determined that the German action raised "concerns against inconsistent judgments," and that "the timing of the filing of the German Action raises concerns of forum shopping and duplicative and vexatious litigation," particularly since "Motorola's commitments to the ITU involved approximately 100 Motorola-owned patents, yet Motorola invoked the German Action implicating only two ... of these patents and sought injunctive relief in Germany before [the district court] could adjudicate that precise issue." "In sum," the district court concluded, "Motorola's actions have frustrated [the district court's] ability to adjudicate issues properly before it," i.e., the propriety of injunctive relief in the RAND context.

*Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 880 (9th Cir. 2012)

28

# Global Rate-Setting In China Action Not Vexatious Or Oppressive To Ericsson

## Only question is determining amount of global royalties under contractual commitments

### Ericsson's proposal

— Global patent cross-license with Samsung

— Ericsson's rates:

— 4G proposal: 0.8% of 4G user equipment net sales
— $4 per-unit cap and $0.95 per-unit floor possible

— 5G proposal: $5 per 5G/NR user equipment
— Early signing $1 discount possible

We would like to reiterate that Samsung is ready and willing to conclude a license agreement with Ericsson on its SEP portfolios for mobile telecommunication on fair, reasonable and non-discriminatory (FRAND) terms.

Best regards,

Jong Pil Hong
Vice President
Licensing team / IP Center
SAMSUNG ELECTRONICS CO., LTD.

Ericsson Proposal (July 20, 2020) at 22

Samsung Response (Aug. 7, 2020) at 1

## That question will be answered by Samsung's China action

Plaintiffs respectfully request the Court to:

1. Determine the global licensing terms, including the royalty rates applicable for Plaintiffs' communication products in accordance with "Fair, Reasonable and Non-discriminatory" ("FRAND") principle for the licensing of all the 4G and 5G standard essential patents ("SEPs") held or controlled by the Defendants and its affiliates;

Dkt. 26-2 at 2-3

# Global Rate-Setting in China Action Not Vexatious Or Oppressive To Ericsson

IN THE SUPREME COURT OF THE UNITED KINGDOM
ON APPEAL FROM THE COURT OF APPEAL
(CIVIL DIVISION)

UKSC 2018/0214;
UKSC 2019/0041 and
UKSC 2019/0042

BETWEEN:

(1) UNWIRED PLANET INTERNATIONAL LIMITED
(2) UNWIRED PLANET LLC

Respondents

and

(1) HUAWEI TECHNOLOGIES CO. LIMITED
(2) HUAWEI TECHNOLOGIES (UK) CO. LIMITED

Appellants

AND BETWEEN:

CONVERSANT WIRELESS LICENSING S.À.R.L.

Respondent

and

(1) HUAWEI TECHNOLOGIES CO. LIMITED
(2) HUAWEI TECHNOLOGIES (UK) CO. LIMITED
(3) ZTE CORPORATION
(4) ZTE (UK) LIMITED

Appellants

WRITTEN SUBMISSIONS ON BEHALF OF
TELEFONAKTIEBOLAGET LM ERICSSON (PUBL)

(INTERVENER)

1. The following are the submissions of Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") in relation to the appeal set out in Huawei's Notice of Appeal in case UKSC 2018/0214, in respect of which Ericsson applied for permission to intervene by written submissions, pursuant to Rule 26 of the Supreme Court Rules 2009, on 23 August 2019.

2. Ericsson is a lead contributor to and architect for cellular standards – 2G, 3G, 4G and now 5G. It is also a major vendor of standardised wireless technology, employing around 95,000 individuals and selling in over 180 countries. Ericsson is thus a significant licensor and licensee of patented standard-essential technology. More details of Ericsson's business and its involvement in standards is set out in Ericsson's application for permission to intervene under Rule 26, the substance of which is repeated below for convenience.

## Only question is determining amount of global royalties under contractual commitments

28. Ericsson considers that licensing of patent portfolios on a global basis is, to use the words of the CJEU in *Huawei v ZTE*, "in accordance with recognized commercial practices in the field and in good faith."[2]

Written Submissions on Behalf of Telefonaktiebolaget LM Ericsson in
Unwired Planet Int'l Ltd. v. Huawei Techs. Co. Ltd. at ¶ 28

31. Ericsson submits that, for the reasons set out above, a global portfolio licence in this matter is FRAND and Unwired Planet's offer of a global portfolio FRAND licence to Huawei fulfils its FRAND obligation for purposes of determining relief for patent infringement. In contrast, a country-by-country licence offer in this matter would not be in line with industry practice, would be unworkable, and would frustrate the explicit policy objectives of the ETSI IPR Policy and the balance needed for industry to continue to thrive.

Written Submissions on Behalf of Telefonaktiebolaget LM Ericsson in
Unwired Planet Int'l Ltd. v. Huawei Techs. Co. Ltd. at ¶ 31

# China Action Not Vexatious Or Oppressive To Ericsson

**China ASI Order Provide Mechanism for Ericsson to Seek Relief in China**

The Applicants or the <mark>Respondent</mark> who disagrees with this ruling <u>may apply for</u> <u>reconsideration</u> once within five days upon receipt of this ruling, and the enforcement of this ruling shall not be suspended during the reconsideration period.

Dkt. 26-9 at 13



**December 25, 2020**
Court Serves Ericsson with ASI Order

**Dec 30, 2020**
Ericsson Response Deadline

**December 28, 2020**
Ericsson Seeks TRO before any response to Chinese ASI

**Dec 30, 2020**
Ericsson files Response to ASI

31

# China Action Not Vexatious Or Oppressive To Ericsson

## China ASI took into account similar factors as U.S. courts and Ericsson's procedural rights

property disputes. According to the above law and judicial interpretations, this Court will examine the Applicants' ASI application from the following aspects and decide whether to take the preservation measures applied by them: (1) whether there may be a situation in this Case where it is difficult to enforce the judgement of this Case due to the Respondent's conduct; (2) if the relevant preservation measures are not taken, whether the legitimate interests of the Applicants will suffer irreparable harms; (3) whether the harm to the Applicants without the relevant preservation measures exceeds the harm to the Respondent with such measures; (4) if the relevant preservation measures are taken, whether the public interests and the international civil litigation order will be harmed; (5) whether Applicants have provided proper security for the preservation measures they applied for.

Dkt. 26-9 at 7-8

20.     However, this will not affect the legal rights and interests of the respondent. If respondent disagrees with the preservation ruling, as set forth in the Behavior Preservation Ruling, the respondent can fully protect its legitimate rights and interests by applying for a reconsideration to the people's court that issued the ruling within five days upon receipt of the ruling. The people's court shall review the application within ten days after receiving the reconsideration application. If the ruling is correct, the party's application shall be rejected; if the ruling is improper, the original ruling shall be revised or revoked.[15] During the reconsideration procedures, the parties can submit evidence and hire lawyers to make arguments for them. The court usually holds a hearing, organizes the evidence production and cross-examination, and hears the opinions from both parties. For

Kong Declaration at ¶ 20 (Dkt. 26-12)

32

# China Action Not Vexatious Or Oppressive To Ericsson

## China action will provide fair resolution of key dispute on licensing royalties

13.    In my view, there is no reason to give the Chinese court handling this global FRAND dispute any less deference than similar courts in the United States.  China's court system in the IP area is led by experienced and sophisticated judges who will provide a full and fair opportunity to be heard.  China is an appropriate and fair venue to decide an international contract and patent dispute like this one between Korean and Swedish companies.  Based on my experience, including working directly with many of these judges and teaching intellectual property law in China, the suggestion in Ericsson's motion that it will not receive a fair hearing in China is incorrect.

Rader Declaration at ¶¶ 13, 20 (Dkt. 26-13)

## Ericsson does not argue otherwise

4.    The Fairness Of Chinese Courts Is Not At Issue In This Motion.

Samsung spends several pages and submits several declarations praising Chinese courts, but the quality of Chinese courts is not the point.  Federal courts protect their jurisdiction from

Ericsson Reply at 8 (Dkt. 30)

33

# China Action Not Vexatious Or Oppressive To Ericsson

**US Courts likewise defer global litigation of patent remedies pending resolution of contractual licensing dispute**

- *TCL v. Ericsson*, SACV 14-0341 JVS, Dkt. 284 (July 10, 2015) – enjoining actions in France, the UK, Brazil, Russia, Argentina, and Germany

- *Microsoft v. Motorola*, 696 F.3d 872, 880 (9th Cir. 2012) – enjoining an action in Germany

- *Huawei v. Samsung,* Case No. 3:16-cv-02787-WHO, Dkt. 280 (N.D. Cal. Apr. 13, 2018) – enjoining multiple actions in China

# China Action Does Not Threaten Jurisdiction Of This Court

## ASI Targeted to Resolve Dispute Without Piecemeal Global Litigation

The claims in the lawsuit in the present case are for the global licensing conditions (including royalty rates) for the portfolio of standard essential patents in dispute by and between the parties. Once the judgment takes effect, it will resolve all previous disputes by and between the parties with respect to the 4G and 5G patents of Ericsson in a package. On the premise that there is already a lawsuit in the present case, it is not necessary at all for Ericsson to separately file lawsuits in China or other countries and regions with respect to royalties or royalty rates globally or in a certain region, as they are just redundant requests for royalty rate rulings. The focus of disputes in

ASI Application at 10-11

# China Action Does Not Threaten Jurisdiction Of This Court

## ASI Flows From Ericsson's Voluntary Contractual SEP Licensing Commitment

**IPR LICENSING DECLARATION**

In accordance with Clause 6.1 of the ETSI IPR Policy the Declarant and/or its AFFILIATES hereby irrevocably declares the following (*check one box only, and subordinate box, where applicable*):

☑ To the extent that the IPR(s) disclosed in the attached *IPR Information Statement Annex* are or become, and remain ESSENTIAL in respect of the ETSI Work Item, STANDARD and/or TECHNICAL SPECIFICATION identified in the attached *IPR Information Statement Annex*, the Declarant and/or its AFFILIATES are (1) prepared to grant irrevocable licences under this/these IPR(s) on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy; and (2) will comply with Clause 6.1 bis of the ETSI IPR Policy.

Ericsson ETSI Declaration at 1

"I conclude that a worldwide licence would not be contrary to competition law. Willing and reasonable parties would agree on a worldwide licence.  It is the FRAND licence for a portfolio like Unwired Planet's and an implementer like Huawei. Therefore, Unwired Planet are entitled to insist on it.  It follows that an insistence by Huawei on a licence with a UK only scope is not FRAND"

*Unwired Planet Int'l Ltd. v. Huawei Tech. Co.*, [2017] EWHC (Pat) 711 (Eng.) at ¶ 571, *aff'd*, [2018] EWCA (Civ) 2344

# China Action Does Not Threaten Jurisdiction Of This Court

## ASI prevents interference with resolving dispute by determining contractual global license royalties

The claims in the lawsuit in the present case are for the global licensing conditions (including royalty rates) for the portfolio of standard essential patents in dispute by and between the parties. Once the judgment takes effect, it will resolve all previous disputes by and between the parties with respect to the 4G and 5G patents of Ericsson in a package. On the premise that there is already a lawsuit in the present case, it is not necessary at all for Ericsson to separately file lawsuits in China or other countries and regions with respect to royalties or royalty rates globally or in a certain region, as they are just redundant requests for royalty rate rulings. The focus of disputes in

ASI Application at 10-11

In view of the above facts, there is a high likelihood that Ericsson will use one or more lawsuits seeking injunctions to force Samsung to accept licensing conditions that are not consistent with the FRAND principle. During the negotiating process, Samsung has always been subject to the realistic coercion whereby Ericsson will seek injunctive relief or file duplicative lawsuits, which is urgent. If Ericsson is not prohibited from

ASI Application at 5

# China Action Does Not Threaten Jurisdiction Of This Court

## ASI applies only until resolution of contractual SEP royalty dispute

1. For the duration of this Case and until the judgement of this Case becomes effective, the Respondent and its affiliates are prohibited from applying for any preliminary and permanent injunctive relief or administrative measures before any courts, customs offices, or administrative enforcement agencies either in China or other countries and regions or through any other procedures against Samsung Electronics Co., Ltd., Samsung (China) Investment Co., Ltd., Samsung (China) Investment Co., Ltd. Wuhan Branch and their affiliates, and other subjects which manufacture, use, offer to sell, sell or import Samsung telecommunications products, in terms of the 4G and 5G SEPs involved in this Case, and the Respondent and its affiliates shall immediately withdraw or suspend such claims that have already been filed;

2. For the duration of this Case and until the judgement of this Case becomes effective, the Respondent and its affiliates are prohibited from applying for the enforcement of any preliminary and permanent injunctive relief or administrative measures or that has been granted or is likely to be granted by any courts, customs offices, or administrative enforcement agencies either in China or any other countries and regions or through any other procedures against Samsung Electronics Co., Ltd., Samsung (China) Investment Co., Ltd., Samsung (China) Investment Co., Ltd. Wuhan Branch and their affiliates, and other subjects which manufacture, use, offer to sell, sell or import Samsung telecommunications products, in terms of the 4G and 5G SEPs involved in this Case;

3. For the duration of this Case and until the judgement of this Case becomes effective, the Respondent and its affiliates are prohibited from requesting any courts either in China or other countries and regions to adjudicate the licensing terms (including the royalty rate) or royalty amount in terms of the 4G and 5G SEPs involved in this Case and the Respondent and its affiliates shall immediately withdraw or suspend such claims that have already been filed;

4. For the duration of this Case and until the judgement of this Case becomes effective, the Respondent and its affiliates are prohibited from initiating any legal proceedings requesting to determine whether the Respondent and its affiliates have fulfilled their FRAND obligations in terms of the present negotiations for licensing the 4G and 5G SEPs involved in this Case before any courts either in China or other countries and regions, and the Respondent and its affiliates shall immediately withdraw or suspend such claims that have already been filed;

5. For the duration of this Case and until the judgement of this Case becomes effective, the Respondent and its affiliates are prohibited from requesting any courts either in China or other countries and regions to order Samsung Electronics Co., Ltd., Samsung (China) Investment Co., Ltd., and Samsung (China) Investment Co., Ltd. Wuhan Branch to withdraw this application for behavior preservation or to prevent Samsung Electronics Co., Ltd., Samsung (China) Investment Co., Ltd., and Samsung (China) Investment Co., Ltd. Wuhan Branch from applying for the enforcement of the behavior preservation ruling issued by this Court, and the Respondent and its affiliates shall immediately withdraw or suspend such claims that are likely to be filed or have already been filed;

Dkt. 26-9 at 12-13

38

# China Action Does Not Threaten Jurisdiction Of This Court

## ASI does not preclude patent actions

lawsuits) before the courts either in China or other countries and regions. Samsung does not request this court to prohibit Ericsson from filing any kinds of lawsuits other than the aforesaid ones, such as patent infringement declaration cases, and therefore, it does not affect other courts' adjudicating any alleged validity and infringement issues of native patents. Thus, the impact of the behavior preservation measures taken by this Court on the other cases filed by Ericsson before the courts either in China or other countries is very limited and within a proper extent.

Therefore, taking behavior preservation measures by this court against the Ericsson would not undermine the international comity principle.

Dkt. 30-4 at 15

# China Action Does Not Threaten Jurisdiction Of This Court

## ASI does not preclude litigation of damages

patent rights to a certain extent, it will not lead to the fundamental loss of its rights. On the contrary, after the Applicants requested this Court to adjudicate the licensing terms of the relevant SEPs held by the Respondent in accordance with the FRAND principles, prohibiting the Respondent from seeking preliminary injunctions, permanent injunctions or administrative remedies will make the Applicants to be able to maintain the normal production and sales of their products, without prejudice to the rights of the Respondent to request the Applicants to pay the royalties and calculate the corresponding loss. In fact, if the Applicants can maintain or even expand the

Dkt. 26-9 at 10-11

40

## China Action Permits Multiple Issues To Proceed Now In This Court

1. **FRAND actions regarding Samsung SEPs (Counts I, II, IV, and V in original Complaint)**

2. **Liability issues regarding infringement and validity for Ericsson SEPs**

3. **Damages related to asserted patents**

4. **Other patent remedies remain after rate setting, to the extent not resolved or moot**

# Comity Weighs Heavily In Favor Of Respecting China Action

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara* (5th Cir. 2003)

"The doctrine of comity contains a rule of 'local restraint' which guides courts reasonably to restrict the extraterritorial application of sovereign power. In this vein, we have impliedly recognized the importance of comity when a case implicates public international issues and when prior steps in resolving a dispute have taken place in international fora."

When a preliminary injunction takes the form of a foreign antisuit injunction, we are required to balance domestic judicial interests against concerns of international comity. In assessing whether an injunction is necessary, we weigh the need to "prevent vexatious or oppressive litigation" and to "protect the court's jurisdiction" against the need to defer to principles of international comity. We have noted, however, that notions of comity do not wholly dominate our analysis to the exclusion of these other concerns.

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 335 F.3d 357, 366. 371 (5th Cir. 2003)

# Comity Weighs Heavily In Favor Of Respecting China Action

- **US Courts have held foreign courts should defer limited issues pending FRAND decision in US – just like China court did here**
  - *TCL v. Ericsson* – **no foreign litigation of any issues for Ericsson SEPs pending US rate setting**
  - *Microsoft v. Motorola* – **no enforcement of foreign patent injunction pending US FRAND decision**
  - *Huawei v. Samsung* – **no enforcement of foreign patent injunction pending US FRAND decision**

*Microsoft Corp. v. Motorola, Inc.* **(9th Cir. 2012)**

"We conclude that the district court did not abuse its discretion in determining that Microsoft's contract-based claims, including its claim that the RAND commitment precludes injunctive relief, would, if decided in favor of Microsoft, determine the propriety of the enforcement by Motorola of the injunctive relief obtained in Germany."

*Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 885 (9th Cir. 2012)

# Samsung's Hearing Presentation

**1** Samsung's First Filed Global Rate Setting Action Will Resolve Key Dispute re SEP Licensing Royalties

**2** Legal Standard for Foreign Anti-Suit Injunction

**3** Global Dispute Resolution and Comity Favor Resolution of Key Dispute

**4** Ericsson's Proposed Injunction and Indemnification are Overbroad and Legally Defective

# Injunction Cannot Extend Beyond Protecting Jurisdiction Of This Court

## *Karaha Bodas v. Perusahaan* (5th Cir. 2003)

"When a preliminary injunction takes the form of a foreign antisuit injunction, we are required to balance domestic judicial interests against concerns of international comity. In assessing whether an injunction is necessary, we weigh the need to 'prevent vexatious or oppressive litigation' and to 'protect the court's jurisdiction' against the need to defer to principles of international comity. We have noted, however, that notions of comity do not wholly dominate our analysis to the exclusion of these other concerns."

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 335 F.3d 357, 366 (5th Cir. 2003)

## *Infinite Financial v. Strukmyer* (N.D. Tex. 2014)

"Even when a motion for a preliminary injunction is predicated on a complaint, if the motion raises issues different from those presented in the complaint, the court has no jurisdiction over the motion"

*Infinite Fin. Sols., Inc. v. Strukmyer,* LLC, No. 3:14-CV-354-N, 2014 WL 12586282, at *9 (N.D. Tex. July 29, 2014)

# Injunction Sought By Ericsson Exceeds Scope Of This Court's Jurisdiction

**Injunction provision extends to new actions in other forums separate from this Court**

**Proposed Injunction**

B.   Make any request, claim, application, or motion further pursuing or enforcing an injunction from a foreign court—including but not limited to the Intermediate People's Court of Wuhan Municipality, Hubei Province, China—which would prohibit or otherwise limit in any way Ericsson Inc.'s, and all of its corporate parents, subsidiaries, and affiliates, ability to file suits or administrative actions to enforce or defend its United States patent rights.

Dkt. 14 at 2

46

# Injunction Sought By Ericsson Exceeds Scope Of Requested Relief In This Action

## Ericsson's Amended Complaint in This Court Does Not Seek SEP Injunctions

**PRAYER FOR RELIEF**

\*          \*          \*

(e)     adjudge and declare that Samsung infringes the Asserted Patents;

(f)     adjudge and declare that Samsung's infringement of the Asserted Patents was willful, and that Samsung's continued infringement of the Asserted Patents is willful;

(g)     an award of the amount of damages that Ericsson proves at trial and, as appropriate, exemplary damages;

Dkt. 17 at 60

- **Ericsson has Previously Sought SEP Exclusion Orders / Injunctions in the International Trade Commission**
  - 337-TA-583 – Ericsson suit against Samsung seeking SEP exclusion orders
  - 337-TA-862 – Ericsson suit against Samsung seeking SEP exclusion orders
  - 337-TA-953 – Ericsson suit against Apple seeking SEP exclusion orders

47

# Indemnification Should Not Reach More Broadly Than Injunction

## Proposed Injunction

A.  Make any request, claim, application, or motion further pursuing or enforcing an injunction from a foreign court—including but not limited to the Intermediate People's Court of Wuhan Municipality, Hubei Province, China—which would prohibit, deter, impose monetary fines on, or otherwise limit in any way Ericsson Inc.'s, and all of its corporate parents, subsidiaries, and affiliates, ability to fully and completely prosecute this action, request and enforce relief, or which would impair this Court's ability to adjudicate any and all matters in this lawsuit;

B.  Make any request, claim, application, or motion further pursuing or enforcing an injunction from a foreign court—including but not limited to the Intermediate People's Court of Wuhan Municipality, Hubei Province, China—which would prohibit or otherwise limit in any way Ericsson Inc.'s, and all of its corporate parents, subsidiaries, and affiliates, ability to file suits or administrative actions to enforce or defend its United States patent rights.

Dkt. 14 at 2

## Proposed Indemnification

IT IS FURTHER ORDERED THAT Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. and Samsung Research America shall (1) jointly and severally indemnify, within five business days, Ericsson Inc.'s, and all of its corporate parents, subsidiaries, and affiliates, for any fines imposed by the Intermediate People's Court of Wuhan Municipality, Hubei Province, China related to the Wuhan court's order of December 25, 2020, or any other orders that in any way contravene the prohibitions on Samsung contained in this Order; (2) send

Dkt. 14 at 2

- **Indemnification can be read as sanctioning Samsung for matters involving:**
  - Actions by China court in connection with non-US patent assertions by Ericsson
  - Unilateral actions by China court to enforce its orders
  - Samsung responses to Court orders and inquiries

48

# Fifth Circuit Law Constrains Monetary Sanctions Like Indemnification

## *Positive Software v. New Century Mortg.* **(5th Cir. 2010)**

"In *Maxxam*, we confirmed the limited reach of the court's inherent authority. . . . We reversed part of those sanctions on the ground that the inherent power does not extend to collateral proceedings that "do not threaten the court's own judicial authority or proceedings."

\*        \*        \*

Because Camiña's conduct was neither before the district court nor in direct defiance of its orders, the conduct is beyond the reach of the court's inherent authority to sanction."

*Positive Software Sols., Inc. v. New Century Mortg. Corp.,* 619 F.3d 458, 460–61 (5th Cir. 2010)