# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ERICSSON INC., TELEFONAKTIEBOLAGET LM ERICSSON, §§§§§§§ *Plaintiffs*, § § v. § § SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG RESEARCH AMERICA, §§§§§§ *Defendants*. § | CIVIL ACTION NO. 2:20-CV-00380-JRG |

## MEMORANDUM OPINION AND PRELIMINARY INJUNCTION

Before the Court is the Emergency Application for Temporary Restraining Order and Anti-Interference Injunction Related to Samsung's Lawsuit Filed in the Wuhan Intermediate People's Court of China (the "Motion") brought by Plaintiffs Ericsson Inc. and Telefonaktiebolaget LM Ericsson (collectively, "Ericsson"). (Dkt. No. 11). Having considered the parties' oral arguments, and the briefing by the parties and *amici*, the Court finds that the Motion requesting a preliminary injunction should be and hereby is **GRANTED**.

### I. INTRODUCTION

On December 11, 2020, Ericsson filed a Complaint against Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Research America (collectively, "Samsung") alleging that Samsung breached its obligation to license its Standard Essential Patents ("SEPs") to Ericsson on fair, reasonable, and non-discriminatory ("FRAND")

terms in accordance with the obligation Samsung made to the European Telecommunications Standards Institute ("ETSI"), a standard development organization ("SDO"). (Dkt. No. 1).

Ericsson and Samsung develop and manufacture cellular technology and have substantial global patent portfolios. (Dkt. No. 11 at 2). Many of both Ericsson's and Samsung's patents are SEPs for the 2G, 3G, 4G, and 5G cellular standards. (*Id.*). In the past, Samsung and Ericsson have entered into global patent licenses, most recently in 2014 a cross-license to reciprocally use their SEPs. (*Id.* at 2–3). The 2014 agreement called for its expiration at the end of 2020. (Dkt. No. 43 at 32:22). Accordingly, over the past year the parties have negotiated terms of a renewed global cross-license. (Dkt. No. 11 at 3; Dkt. No. 26 at 3). Despite their efforts, the parties were unable to come to an agreement as the end of 2020 approached. (Dkt. No. 11 at 3; Dkt. No. 26 at 3). In light of the parties' lack of an agreement, on December 7, 2020[1] Samsung[2] filed a Civil Complaint in the Wuhan Intermediate People's Court of Hubei Province (the "Chinese Action") asking that court to:

> 1. Determine the global licensing terms, including the royalty rates applicable for [Samsung Electronics Co., Ltd., Samsung (China) Investment Co., Ltd., and Samsung (China) Investment Co., Ltd.'s] communication products in accordance with "Fair, Reasonable and Non-discriminatory" ("FRAND") principle for the licensing of all the 4G and 5G standard essential patents ("SEPs") held or controlled by [Telefonaktiebolaget LM Ericsson] and its affiliates;
> 2. Order [Telefonaktiebolaget LM Ericsson] to bear the litigation costs and the just and proper expenses incurred by [Samsung Electronics Co., Ltd., Samsung (China) Investment Co., Ltd., and Samsung (China) Investment Co., Ltd.] Wuhan Branch as a result of protecting its rights in these proceedings, which tentatively calculated are RMB 10 million.[3]

---

[1] Samsung alleges that it attempted to file its Complaint in China on December 4, 2020 but was unsuccessful. (Dkt. No. 26 at 3). The Court will refer to the date the Wuhan Intermediate People's Court of Hubei Province accepted the filing of Samsung's China Complaint—December 7, 2020.

[2] The Samsung entities here are different than those in the Chinese Action. However, Samsung Electronics Co. Ltd. is a party to both actions and is affiliated with every subsidiary in both actions. (Dkt. No. 26-2 at 5; Dkt. No. 17 at 5–6). As such, the Samsung parties in both the Chinese Action and this action are functionally the same. *Huawei Techs., Co. v. Samsung Elecs. Co.*, No. 3:16-CV-02787-WHO, 2018 WL 1784065, at *6 (N.D. Cal. Apr. 13, 2018).

[3] This quote, and all other quotes from all documents originally filed in China, are from certified EngleIsh translations of such filings. (Dkt. No. 26-2).

2

(Dkt. No. 26 at 3; Dkt. No. 26-2). No one provided notice to Ericsson of the Chinese Action when it was filed. (Dkt. No. 11 at 4; Dkt. No 26 at 4). On December 11, 2020, a panel of judges or the "collegiate panel" was assigned to preside over the Chinese Action. (Dkt. No. 26-10 at 7). Also on December 11, 2020, Ericsson filed the Complaint in this case. (Dkt. No. 1). Unaware of the Chinese Action, Ericsson notified Samsung of its Complaint in this Court that same day. (Dkt. No. 11 at 3; Dkt. No. 11-12 ¶ 4).

On December 14, 2020, Samsung filed a Behavior Preservation Application in the Wuhan Intermediate People's Court of Hubei Province (the "Wuhan Court") requesting that court to issue an anti-suit injunction ("ASI") against Ericsson to prevent it from seeking relief relating to its 4G and 5G SEPs anywhere else in the world. (Dkt. No. 30-4). Concurrently, Samsung filed an Application for Delaying Serving the Behavior Preservation Application further requesting the Wuhan Court to "hold the service of the relevant materials of the behavior preservation application of this case and the various notification thereof until the ruling of the behavior preservation comes into effect" based on the high probability that other courts, like this one, would likely take affirmative action to impede enforcement of the ASI in their jurisdiction. (Dkt. No. 30-2 at 2–3).

On December 17, 2020, Samsung notified Ericsson of the Chinese Action but did not provide Ericsson with any of the filings from the Chinese Action.[4] (Dkt. No. 11 at 4). On December 21, 2020, Samsung again urged the Wuhan Court to issue an anti-suit injunction and to do so within the week through a Supplemental Information from Samsung Regarding Act Preservation Application. (Dkt. No. 26-11). On December 22, 2020, fifteen days after Samsung's Civil Complaint was filed, and over a week after Samsung sought the ASI, Samsung provided only

---

[4] The proceedings in the Chinese Action are conducted solely through paper filings and not via electronic means. (Dkt. No. 11 at 4; Dkt. No. 11-12 ¶ 7). Therefore, Ericsson was unable to access such filings unless and until they were provided by Samsung or the Wuhan Court itself.

3

the Civil Complaint from the Chinese Action to Ericsson. (Dkt. No. 11-14). On December 23, 2020, Samsung provided the Wuhan Court with a Bank Certificate of Deposit and a Commitment Letter for a bond of RMB 50 million to provide security for the anti-suit injunction. (Dkt. No. 26-9 at 6). On December 25, 2020, the Wuhan Court issued an ASI enjoining Telefonaktiebolaget LM Ericsson and its affiliates from:

> (1) applying for any preliminary and permanent injunctive relief or administrative measures before any courts, customs offices, or administrative enforcement agencies either in China or other countries and regions or through any other procedures against Samsung Electronics Co., Ltd., Samsung (China) Investment Co., Ltd., Samsung (China) Investment Co., Ltd. Wuhan Branch and their affiliates, and other subjects which manufacture, use, offer to sell, sell or import Samsung telecommunications products, in terms of the 4G and 5G SEPs involved in this Case, and the Respondent and its affiliates shall immediately withdraw or suspend such claims that have already been filed;
> (2) . . . applying for the enforcement of any preliminary and permanent injunctive relief or administrative measures or that has been granted or is likely to be granted by any courts, customs offices, or administrative enforcement agencies either in China or any other countries and regions or through any other procedures against Samsung Electronics Co., Ltd., Samsung (China) Investment Co., Ltd., Samsung (China) Investment Co., Ltd. Wuhan Branch and their affiliates, and other subjects which manufacture, use, offer to sell, sell or import Samsung telecommunications products, in terms of the 4G and 5G SEPs involved in this Case;
> (3) . . . requesting any courts either in China or other countries and regions to adjudicate the licensing terms (including the royalty rate) or royalty amount in terms of the 4G and 5G SEPs involved in this Case and the Respondent and its affiliates shall immediately withdraw or suspend such claims that have already been filed;
> (4) . . . initiating any legal proceedings requesting to determine whether the Respondent and its affiliates have fulfilled their FRAND obligations in terms of the present negotiations for licensing the 4G and 5G SEPs involved in this Case before any courts either in China or other countries and regions, and the Respondent and its affiliates shall immediately withdraw or suspend such claims that have already been filed;
> (5) . . . requesting any courts either in China or other countries and regions to order Samsung Electronics Co., Ltd., Samsung (China) Investment Co., Ltd., and Samsung (China) Investment Co., Ltd. Wuhan Branch to withdraw this application for behavior preservation or to prevent Samsung Electronics Co., Ltd., Samsung (China) Investment Co., Ltd., and Samsung (China) Investment Co., Ltd. Wuhan Branch from applying for the enforcement of the behavior preservation ruling issued by this Court, and the Respondent and its affiliates shall immediately

>   withdraw or suspend such claims that are likely to be filed or have already been filed.

(*Id.* at 12–14). The ASI is in effect for the duration of the Chinese Action and until a future judgment in that Action becomes effective. (*Id.*). If Ericsson violates the ASI the Wuhan Court states that it will "punish such violations in accordance with Chapter 10 of *Civil Procedure Law of the People's Republic of China*," which includes the levying of substantial fines. (*Id.* at 14 (italics in original)). In accordance with Samsung's request, the Wuhan Court gave Ericsson notice of the ASI after the ASI had issued. (Dkt. Nos. 11-1 ¶ 7, 11-8). Ericsson received such notice on December 25, 2020. (Dkt. No. 11-8).

On December 28, 2020, Ericsson came to this Court and requested an emergency *ex parte* temporary restraining order to prevent Samsung from interfering with this action or attempting to prevent Ericsson from asserting the full scope of its patent rights in the United States until the Court could hear argument on whether a preliminary injunction should issue. (Dkt. No. 11). At 10:00 a.m. on December 28, 2020, the Court granted Ericsson's Motion, issued a temporary restraining order, and set the Motion for a Preliminary Injunction for hearing on January 7, 2021. (Dkt. No. 14).[5]

## II.   LEGAL STANDARD

It is well established that a federal court is empowered to issue injunctions to protect its jurisdiction. *MWK Recruiting Inc. v. Jowers*, No. 19-51064, 2020 WL 6572570, at *2 (5th Cir. Nov. 6, 2020) (citing *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626 (5th Cir. 1996)).[6] A foreign

---

[5] Subsequently, on January 1, 2021, Ericsson filed its Amended Complaint asserting patent infringement of eight U.S. Patents. (Dkt. No. 17).

[6] Pursuant to Ericsson's Amended Complaint, this is now a case for both breach of contract and patent infringement. The United States Court of Appeals for the Federal Circuit has exclusive appellate jurisdiction over cases arising under the patent laws. 28 U.S.C. § 1295(a). However, for issues not unique to patent law, like the preliminary injunction requested here, the Federal Circuit applies the law of the regional circuit in which the appeal would otherwise lie. *Sanofi-Aventis Deutschland GmbH v. Genentech, Inc.*, 716 F.3d 586, 590 (Fed. Cir. 2013) (internal citations omitted).

anti-suit injunction is a special application of the general preliminary injunction rules, but "the suitability of such relief ultimately depends on considerations unique to anti-suit injunctions." *Id.* (quoting *Kahara Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 364 (5th Cir. 2003)). The Fifth Circuit has adopted a test—often referred to as the *Unterweser* factors—that weigh "the need to 'prevent vexatious or oppressive litigation' and to 'protect the court's jurisdiction' against the need to defer to principles of international comity." *Id.* (citing *Kaepa*, 76 F.3d at 627, and *MacPhail v. Oceaneering Int'l, Inc.*, 302 F.3d 274, 277 (5th Cir. 2002)). Pursuant to the *Unterweser* factors, an injunction against the prosecution of a foreign lawsuit may be appropriate when the foreign litigation would: (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's *in rem* or *quasi in rem* jurisdiction; or (4) cause prejudice or offend other equitable principles. *Id.* (citing *Kaepa*, 76 F.3d at 627 n.9 and *In re Unterweser Reederei, GmbH*, 428 F.2d 888, 890 (5th Cir. 1970)). In applying this test, the Fifth Circuit has rejected the approach taken by some other Circuits, which "elevates principles of international comity to the virtual exclusion of all other considerations." *Id.* (citing *Kaepa*, 76 F.3d at 627). Rather, the Fifth Circuit has noted that the "notions of comity do not wholly dominate the analysis to the exclusion of these other concerns." *Id.* (citing *Kahara Bodas*, 335 F.3d at 366) (alteration omitted).

To determine whether proceedings in another forum constitute "vexatious or oppressive" litigation that threatens the court's jurisdiction, the domestic court considers the following interrelated factors: (1) the inequitable hardship resulting from the foreign suit; (2) the foreign suit's ability to frustrate and delay the speedy and efficient determination of the cause; and (3) the extent to which the foreign suit is duplicative of the litigation in the United States. *Id.* (citing *Kaepa*, 76 F.3d at 627). "[T]he duplicative factor is about *legal*, not *factual*, similarity." *Id.* at *4

6

(emphasis in original). Suits are duplicative "where they involve the same or similar legal bases or identical claims." *Id.* (internal citations omitted).

As noted above, Ericsson is not seeking an anti-suit injunction to prevent the Chinese Action from proceeding. Rather, Ericsson is seeking an anti-anti-suit injunction (sometimes called an anti-interference injunction) to prevent Samsung from attempting to enforce the ASI and thereby interfering with this Court's exercise of its own jurisdiction. To this Court's knowledge, the Fifth Circuit has not provided guidance on the application of the *Unterweser* factors under these particular circumstances. Thus, while the test set forth above relates to the issuance of an anti-suit injunction, rather than an anti-interference injunction, it is nevertheless instructive and will be applied here. *See Teck Metals Ltd. v. Certain Underwriters at Lloyd's, London*, No. CV-05-411-LRS, 2009 WL 4716037, at *3 (E.D. Wash. Dec. 8, 2009).

### III.   DISCUSSION

#### 1. Standing

As an initial matter, Samsung alleges that Ericsson, Inc. does not have standing to seek relief on behalf of Telefonaktiebolaget LM Ericsson because Telefonaktiebolaget LM Ericsson is the defendant in the Chinese Action and is the only entity that would be fined as a result of the ASI. (Dkt. No. 26 at 15; Dkt. No. 37 at 13). Accordingly, Samsung argues there is no risk of irreparable harm to Ericsson, Inc. (Dkt. No. 26 at 15; Dkt. No. 37 at 13); *see Voda v. Cordis Corp.*, 536 F.3d 1311, 1329 (Fed. Cir. 2008). During the hearing on the Motion, counsel for Ericsson confirmed that the Motion and the requested anti-interference injunction are sought on behalf of both Ericsson, Inc. and Telefonaktiebolaget LM Ericsson. (Dkt. No. 43 at 9:9–12). Accordingly, this Court finds that Ericsson, Inc. and Telefonaktiebolaget LM Ericsson have standing to seek the requested relief.

2. *Unterweser* Factors

    a. *Frustration of a Policy of the Forum Issuing the Injunction*

The public interest strongly supports this Court's continued exercise of its jurisdiction. Allowing Samsung to enjoin Ericsson from asking this Court to adjudicate legally cognizable claims under United States law would frustrate this Court's compelling interest in ensuring that litigation within its legitimate jurisdiction proceed in this forum. Samsung argues that the ASI was a legitimate exercise of the Wuhan Court's jurisdiction as the first-filed action between Samsung and Ericsson for their worldwide rate dispute. (Dkt. No. 26 at 7). The order in which the suits were filed is not dispositive, and the issues before this Court and the issues before the Wuhan Court are different. *See Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 887 (9th Cir. 2012) (noting that the order in which the foreign and domestic suits are filed is not dispositive). Accordingly, both Courts can properly exercise jurisdiction over the respective causes of action brought before them. The purpose of an Article III Court is to be an impartial adjudicator of cases and controversies within its lawfully conferred jurisdiction. U.S. Const. art. III, § 2. To enforce the ASI in this case would frustrate the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conserv. Dist. v. U.S.*, 424 U.S. 800, 817 (1976).

    b. *Vexatious or Oppressive*

In the context of an anti-suit injunction, the Court analyzes whether the foreign litigation would be vexatious or oppressive. *MWK*, 2020 WL 6572570, at *2. However, here a dispute exists as to whether in the context of an anti-interference injunction the litigation should be analyzed from the posture of this Court or the foreign court. There appears to be no direct Fifth Circuit guidance on this issue. Accordingly, the Court will address whether both litigations are vexatious or oppressive from the posture of both jurisdictions under the factors set forth in *MWK* and *Kaepa*.

*Id.* (citing *Kaepa*, 76 F.3d at 627). Under either analysis, the Court finds that this factor supports the issuance of an anti-interference injunction.

### i. Inequitable Hardship Resulting from the Foreign Suit

Proceeding to enforce the ASI will impose an inequitable hardship on Ericsson because it will unfairly deprive Ericsson of the right to bring claims it is entitled to bring under United States law. Furthermore, the ASI was entered with no notice to Ericsson *at the request of Samsung*. (Dkt. No. 30-2). Without notice or an opportunity to be heard, Ericsson found itself enjoined from exercising its right to enforce legitimate causes of action under United States law pertaining to its 4G and 5G SEPs in the United States. The ASI imposes an inequitable hardship on Ericsson because the ASI's sweeping provisions deprive Ericsson of the right to attempt to obtain redress for claims it has the right to bring under the laws of the United States.

Samsung argues that the process for obtaining the ASI is no different than the process this Court used in issuing the *ex parte* temporary restraining order. It is not. Obtaining the ASI as Samsung did is more akin to issuing an *ex parte preliminary injunction*, not a temporary restraining order. A temporary restraining order, such as in this case, typically lasts fourteen days at most. *See* Fed. R. Civ. P. 65(b)(2). The ASI lasts through the ultimate conclusion of the Chinese Action, which could be years from now. (Dkt. No. 26-9 at 12–14). Additionally, before this Opinion and Preliminary Injunction was issued, Samsung had the opportunity to file multiple briefs and present oral argument for this Court to consider. (Dkt. Nos. 26, 34, 37, 43). Notably, the ASI is *only* dissolved if the respondent, Telefonaktiebolaget LM Ericsson, prevails on a motion to *reconsider* filed within five days in the Wuhan Court, completely shifting the burden to the responding party. *See* (Dkt. No. 26-9 at 14). In contrast, this Court's temporary restraining order is dissolved automatically *unless* Ericsson, as the petitioner, meets its burden and prevails in a motion for

preliminary injunction. Regardless of whether the procedure Samsung followed comported with Chinese law, Ericsson had none of the opportunities afforded to Samsung, and as a result would—but for this Court's preliminary injunction—be excluded from bringing causes of action in this forum where both parties have a significant presence. (Dkt. No. 11 at 1). Additionally, not only would enforcement of the ASI impede Ericsson's ability to bring lawful causes of action, it would unfairly but necessarily put Ericsson in a weaker negotiating position when it comes to cross licensing its 4G and 5G SEPs to both Samsung and others. Ericsson argues this was the real motivation behind the ASI. (Dkt. No. 11 at 2). This Court does not disagree.

Conversely, Samsung will not suffer inequitable hardship if litigation proceeds in both courts. In fact, Samsung's counsel agreed on the record in this Court that parallel actions are inevitable. (Dkt. No. 43 at 36:4–10). The United States is both Ericsson's and Samsung's largest market, and both Ericsson and Samsung have large offices, including relevant personnel involved in these licensing discussions, in the Eastern District of Texas. (Dkt. No. 11 at 1). When asked if this action was vexatious or oppressive to it, Samsung readily admitted it was not. (Dkt. No. 43 at 76:18–21). Accordingly, the Court finds that Ericsson would suffer inequitable hardship due to the enforcement of the ASI, while Samsung would not suffer inequitable hardship if this case is allowed to proceed.

            ii. The Foreign Suit's Ability to Frustrate and Delay the Speedy and Efficient Determination of the Cause

If unaddressed, the ASI[7] would frustrate and delay the speedy and efficient determination of legitimate causes of action before this Court. In fact, the ASI specifically prohibits their

---

[7] The Court analyzes the enforcement of the ASI because Ericsson seeks only to enjoin the enforcement of the ASI, not the entire Chinese Action.

10

adjudication.[8] Samsung furnished Ericsson's Complaint to the Wuhan Court and specifically asked for an injunction preventing this case from moving forward. (Dkt. Nos. 30-2, 30-3). If the ASI is given its full effect, it would lay claim to causes of action properly raised in this Court and *not raised in the Chinese Action*.

On the other hand, the causes of action here have no implication on the speedy and efficient determination of the issues raised before the Wuhan Court. The Wuhan Court can continue to adjudicate the claims that Samsung has brought before it, pursuant to its laws and its rules of civil procedure. This Court does not intend—nor does it wish—to frustrate or delay the speedy and efficient determination of the case brought in Wuhan. Without hesitation this Court equally insists that it be permitted to adjudicate the issues raised here pursuant to its own legitimate jurisdiction and without interference.

### iii. The Extent to Which the Foreign Suit and the Domestic Suit are Duplicative

The Chinese Action and this suit are not duplicative. As the Fifth Circuit has recently clarified, "the duplicative factor is about *legal*, not *factual*, similarity." *MWK*, 2020 WL 6572570 at *4 (emphasis in original). Suits are duplicative "where they involve the same or similar legal bases or identical claims." *Id.* (internal citations omitted). The Chinese Action and this suit may be factually similar but involve very separate legal questions.[9] Samsung asks the Wuhan Court to determine the global licensing terms, including the FRAND royalty rates applicable for Samsung's communication products implementing all of Ericsson's 4G and 5G SEPs. Ericsson, on the other hand, asks this Court to look at the parties' pre-suit negotiation conduct and determine whether the

---

[8] Samsung notes that not all causes of action before this Court are enjoined by the ASI. (Dkt. No. 43 at 78:2–7). While that may be true, the inability for this Court to hear one or many causes of action equally offends the efficient adjudication of such issues. Ericsson has a right to join "as many claims as it has" in one action. Fed. R. Civ. P. 18(a).
[9] By recognizing that these two questions are not one and the same, this Court is not commenting on whether it would or would not be ultimately willing to set a global FRAND rate. The question of whether a global FRAND rate should be set is not now before this Court.

11

parties breached or complied with their mutual FRAND obligations. The Wuhan Court is asked to provide a number. This Court is asked to evaluate conduct. The legal questions presented to each Court are different.[10]

### c. Threaten the Issuing Court's *In Rem* or Quasi In Rem *Jurisdiction*

This factor is not applicable. Although Ericsson brings claims for patent infringement and breach of contract, Samsung acknowledges the only claims within the scope of the ASI are Ericsson's breach of contract claims. (Dkt. No. 43 at 78:8–11). Breach of contract claims are *in personam* actions. *See Page v. JPMorgan Chase Bank, N.A.*, No. 4:13-CV-407-Y, 2013 WL 12198405, at *1 (N.D. Tex. Oct. 30, 2013). As such, this factor is not implicated.

### d. Cause Prejudice or Offend Other Equitable Principles

Issuance of an anti-interference injunction in this case will not cause prejudice to Samsung or offend other equitable principles. Through the ASI, Samsung attempts to prevent Ericsson from seeking injunctive relief relating to its 4G and 5G SEPs in any tribunal in the world except in the Wuhan Court. (Dkt. No. 26-9 at 12–13). However, on January 7, 2021, Samsung filed a Complaint in the United States International Trade Commission seeking injunctive relief *against* Ericsson for Ericsson's 4G and 5G compliant products based on alleged infringement of *Samsung's* 4G and 5G SEPs—seeking the very type of injunctive relief the ASI bars Ericsson from seeking. *See* Certain Wireless Communications Equipment and Components Thereof, Inv. No. 337-TA-3522 (Jan. 7,

---

[10] In fact, Ericsson argues that its FRAND obligation is subject to the express condition that Samsung grant a reciprocal license. (Dkt. No. 30 at 7). Therefore, Ericsson argues, the unilateral relief Samsung seeks in the Chinese Action may or may not be available. (*Id.*). Regardless of how this issue plays out on the merits, it demonstrates that it is far from certain that the question posed to the Wuhan Court will impact or interfere with the issues presented here. The Court does not currently express an opinion regarding whether any judgment from the Chinese Action would have a res judicata effect. To the extent, however, the Wuhan Court provides a global FRAND rate for Ericsson's 4G and 5G SEPs in isolation, such a rate is unlikely to obviate this Court's FRAND determinations because the causes of action here require this Court to consider offers and negotiations for a *cross-license* in which Samsung would make a balancing payment that inherently accounts for the value of *its own* 4G and 5G SEPs and not solely the value of Ericsson's 4G and 5G SEPs.

2021). If Samsung can seek redress of its claims through injunctive relief in the United States, it would be the height of inequity (and hypocrisy) to allow the ASI to tie Ericsson's hands from doing the same.

Additionally, the Court is persuaded that the financially significant penal provisions of the ASI create an inequitable disparity between the parties which prejudices Ericsson's right to assert lawful causes of action. Drawing from the well of its inherent authority, this Court should not allow Samsung to impose financial penalties against Ericsson for attempting to file the same claims that Samsung itself has filed without a counterbalance. The issues present before this Court, the Wuhan Court, the United States International Trade Commission, and elsewhere should be resolved on the merits and not based on unfair economic leverage gained through litigious gamesmanship. Equity demands no less.

Furthermore, international comity is not offended by the issuance of an anti-interference injunction which seeks to preserve the ability for litigation to proceed in parallel. *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 926–27 (D.C. Cir. 1984). No international public policy or issue is implicated by this case: Ericsson and Samsung are private parties engaged in a global commercial struggle. *Kaepa*, 76 F.3d at 627. This Court is not instructing Samsung that it cannot continue to prosecute its claims in the Wuhan Court nor is this Court seeking to enjoin the furtherance of that proceeding. This Court believes it must act for the targeted purpose of allowing both suits to proceed without interference. Under these circumstances, this Court finds that an anti-interference injunction in no way threatens notions of international comity.

### 3. Ericsson's Requested Relief

Although, under the *Unterweser* factors, an anti-interference injunction is warranted in this case, the Court finds that some aspects of Ericsson's requested relief is too broad. Injunctive relief

13

is an extraordinary remedy that should be narrowly tailored to prevent irreparable harm. *MWK*, 2020 WL 6572570, at *2. Ericsson requests that this Court issue a preliminary anti-interference injunction ordering Samsung to: (1) not take actions in the Chinese Action that would interfere with this Court's jurisdiction over this matter; (2) not take actions in the Chinese Action that would deprive Ericsson, Inc. and all of its corporate parents, subsidiaries, and affiliates of its right to assert the full scope of its U.S. patent rights; (3) promptly send documents filed in the Chinese Action to Ericsson; and (4) withdraw the ASI as to the U.S., or indemnify Ericsson against any fines levied against Ericsson due to the ASI, or bar Samsung from participating any further in the Chinese Action unless and until any fine related to the ASI is lifted.

As this Court has previously stated, this Court does not seek to insert itself into matters of Chinese law or civil procedure, but simply to preserve its jurisdiction over the causes of action properly before it. Accordingly, the Court declines to order Samsung to withdraw the ASI, bar Samsung from participating in the Chinese Action, or require Samsung to promptly send documents filed in the Chinese Action to Ericsson. Although this Court maintains a public docket equally accessible by electronic means to both parties and the public, it is not for this Court to require Samsung to operate in a foreign jurisdiction as though it were here. Furthermore, this Court will not order Samsung to make any formal motion in the Chinese Action or seek to interfere with it participating therein. That said, this Court affirmatively finds that a tailored indemnification provision will adequately address this Court's concern that Samsung may seek the imposition of substantial fines in the Chinese Action for the purpose of creating economic leverage against Ericsson to achieve practically what it may not be able to obtain legally. This Court finds that a narrowly focused indemnification provision will ensure that both proceedings can progress on the merits without the risk of unbalanced economic pressure being imposed by one party on another.

## IV. CONCLUSION

Accordingly, in light of the foregoing, effective **10:00 a.m. CT, January 11, 2021** and until the judgment of this Court is final, the Court hereby **ORDERS AND ENJOINS** Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Research America to:

(1) Take no action in the Chinese Action that would interfere with this Court's jurisdiction to determine whether Ericsson[11] or Samsung have met or breached their FRAND obligations as they relate to both Ericsson and Samsung's 4G and 5G SEPs, or that would interfere with any other cause of action before this Court;

(2) Take no action in the Chinese Action that would deprive Ericsson or all of its corporate parents, subsidiaries, and affiliates of their rights to assert the full scope of their U.S. patent rights before any Article III Court, customs office, or administrative agency in the United States; and

(3) Jointly and severally indemnify Ericsson from and against any and all fines or other penal assessments levied against and actually incurred by Ericsson pursuant to the enforcement of the ASI, either on the motion of Samsung, *sua sponte* by the Wuhan Court, or otherwise, as such pertains, and only as such pertains, to actions Ericsson has taken or takes in the future in the United States to lawfully litigate or adjudicate claims relating to the 4G and 5G SEPs identified or involved in this case.

Pursuant to Fed. R. Civ. P. 65(c), the Court finds that the proper amount of security for this anti-interference injunction is **Zero United States Dollars ($0)**. *See Kaepa*, 76 F.3d at 628.

---

[11] Ericsson was previously defined as Ericsson, Inc. and Telefonaktiebolaget LM Ericsson. *See infra* at 1.

**So ORDERED and SIGNED this 11th day of January, 2021.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE